IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SOPHIA HARTLEY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UNIVERSITY OF CHICAGO MEDICAL CENTER and META PLATFORMS, INC.,

Defendants.

No. 1:22-cv-05891

**DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

In Support of its Motion to Dismiss (the "Motion") the putative class action complaint (the "Complaint") of Plaintiff Sophia Hartley ("Plaintiff"), Defendant University of Chicago Medical Center ("UCMC") states as follows:

## I. INTRODUCTION

On October 25, 2022, Plaintiff filed the Complaint against UCMC and Meta Platforms, Inc. ("Meta"). The Complaint is comprised of five counts. Only Counts I (styled "Violation of the Electronic Communications Act ("ECPA", also known as the "Wiretap Act") 18 U.S.C. § 2510 *et seq*."), IV (styled "Breach of Implied Duty of Confidentiality"), and V (styled "Invasion of Privacy—Intrusion Upon Seclusion") are alleged against UCMC and are the subject of the Motion.

Plaintiff's purported claims against UCMC are not about wiretapping, eavesdropping, or an invasion of privacy. As alleged by Plaintiff, UCMC possesses Plaintiff's personal information for one reason—Plaintiff voluntarily provided it to UCMC. Plaintiff's allegations pertain to the alleged *disclosure* of information and not the improper *collection* of it. However, Plaintiff

repeatedly attempts to force a square peg into a round hole by asserting claims which require the improper and surreptitious collection of information. Plaintiff cannot establish these essential elements. Indeed, she makes no such allegations against UCMC, and instead has pled herself out of such claims. As a result, Plaintiff's purported claims against UCMC should be dismissed.

## II. SUMMARY OF THE ALLEGATIONS AGAINST UCMC

Plaintiff alleges that she resides outside of Illinois (in Wisconsin) and has been a patient of UCMC, an Illinois not-for-profit medical service provider, since 2019. (Compl. ¶¶ 21–22.) According to Plaintiff, UCMC maintains certain web properties referred to as "Patient Portals" which allow UCMC's "patients to communicate" with UCMC regarding "particular providers and medical conditions." (*Id*. ¶¶ 24–25.)

Plaintiff asserts that UCMC "deployed Facebook's Meta Pixel"—"an invisible tool that tracks consumers' actions on Facebook advertisers' website and reports them to Facebook"—on its Patient Portals. (*Id*. ¶¶ 30, 38.) Plaintiff further alleges that her personally identifiable patient information and protected health information was transmitted to Meta via the Meta Pixel "whenever a patient uses [UCMC's] Patient Portals." (*Id*. ¶ 30.) This is the gravamen of Plaintiff's purported claims.

## III. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of a complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plausibility standard is not met "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."

*Iqbal*, 556 U.S. at 679. "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Korber v. Bundesrepublik Deutschland*¸ 2012 WL 13057859, at *3 (N.D. Ill. Sept. 30, 2012) (quoting *Twombly*, 550 U.S. at 555); *see also Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

### A. Count I of the Complaint Should Be Dismissed

Plaintiff fails to state a violation of the ECPA, which is often referred to as the Wiretap Act. As the name Wiretap Act implies, the ECPA is designed to "protect against the unauthorized interception of electronic communications." *Ameritech Corp. v. McCann*, 297 F.3d 582, 583 (7th Cir. 2002) (quotation omitted). The ECPA makes it unlawful to "intentionally intercept[ ] [or] endeavor [ ] to intercept . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The ECPA also prohibits disclosure or use of the contents of an unlawfully intercepted communication. *Id.* § 2511(1)(c), (d). Plaintiff appears to attempt to allege violations for: (i) interception (18 U.S.C. § 2511(1)(a)); (ii) disclosure (18 U.S.C. § 2511(1)(c)); (iii) use (18 U.S.C. § 2511(1)(d)); and (iv) divulging the contents of a communication (18 U.S.C. § 2511(3)(a)). (Compl. ¶¶ 75–79.) Plaintiff's ECPA claim in Count I should be dismissed because her allegations fail to show that UCMC: (i) intercepted a communication and (ii) provides an electronic communication service as required for a divulging claim.

#### 1. Plaintiff Has Not Alleged that UCMC Intercepted an Electronic Communication

The thrust of Plaintiff's claim under Section 2511(1) of the Wiretap Act is that UCMC allegedly disclosed Plaintiff's personal information to Meta. (Compl. ¶ 1.) Plaintiff alleges that disclosure of information to Meta, via the Meta Pixel, occurs once a patient uses a Patient Portal to communicate with UCMC. (*Id.* ¶ 40.) However, in order to assert any claim under Section

2511(1), Plaintiff must first allege that UCMC "intercepted" an electronic communication.[1] *See* 18 U.S.C. § 2511(1)(c) ("disclosure" requires "the interception of a wire, oral, or electronic communication"); 18 U.S.C. § 2511(1)(d) (same). Put simply, "there is a certain temporal sequence of events that must occur before a person can be liable for disclosure or use." *Valentine v. WideOpen W. Fin., LLC*, 2013 WL 5423846, at *6 (N.D. Ill. Sept. 27, 2013). The term "'intercept' means the 'aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.'" *Zak v. Bose Corp.*, 2020 WL 2762552, at *2 (N.D. Ill. May 27, 2020) (quoting 18 U.S.C. § 2510(4)). Plaintiff has not alleged (and cannot allege) that UCMC "intercepted" an electronic communication.

#### a. UCMC Cannot Intercept Communications to Which It Is a Party

ECPA Section 2511(2)(d) states that it is not unlawful for a person to intercept an electronic communication "where such person is a party to the communication." "Tautologically, a communication will always consist of at least two parties: the speaker and/or sender, and at least one intended recipient." *In re Google Cookie Placement*, 806 F.3d at 143. In this context, UCMC was unquestionably a party to the communications Plaintiff claims were intercepted. Plaintiff alleges that she knowingly communicated with UCMC, via the Patient Portals. (Compl. ¶ 52.) Given the content of the communications, this concession is not surprising. Specifically, Plaintiff alleges that the content of the communications related to Plaintiff's healthcare (*id*.), and UCMC was Plaintiff's healthcare provider (*id*. ¶ 50). Under such circumstances, UCMC "acted as no more than the second party to a communication. This is not an interception as defined by the

[1] "A plaintiff pleads a prima facie case under the [ECPA] by showing that the defendant '(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device.'" *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 135 (3d Cir. 2015) (quoting *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 18 (1st Cir. 2003)).

[ECPA]." *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001); *Zak*, 2020 WL 2762552, at *2 ("A person who takes part in a conversation or whose presence is known to other participants is a party to the communication."); *U. S. v. Pasha*, 332 F.2d 193, 198 (7th Cir. 1964) (holding that "the impersonation of the intended receiver is not an interception within the meaning of the [Communications Act of 1934]"); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (The ECPA "does not make it unlawful for a person to intercept . . . [an ]electronic communication if the person is a party to the communication") (internal quotations and citations omitted); *Jurgens v. Build.com, Inc.*, 2017 WL 5277679, at *5 (E.D. Mo. Nov. 13, 2017) (same).

**b. Plaintiff Has Not Alleged the Primary Purpose of UCMC's Alleged "Interception" Was Criminal or Tortious**

The ECPA exemption afforded a party to a communication is not absolute. The ECPA provides that "a person who is a party to the communication . . . may intercept that communication as long as it is not 'for the purpose of committing any criminal or tortious act.'" *Zak*, 2020 WL 2762552, at *2 (quoting 18 U.S.C. § 2511(2)(d)); *see also Angelo v. Moriarty*, 2016 WL 640525, at *5 (N.D. Ill. Feb. 18, 2016) (holding that to state a claim against a party to a communication, the plaintiff must allege that the defendant "either broke the law or committed a tort"). Here, then, in order for the ECPA to apply to Plaintiff's alleged communications with UCMC, the "primary" purpose of the interception must be to commit a crime or tort. *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (quoting *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 518 (S.D.N.Y. 2001)) (denying a motion for class certification and noting that "[a]lleged interceptions fall within the tort or crime exception only where the 'primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously'"); *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *12-13 (N.D. Cal. Dec.

22, 2022) (citation omitted) (denying motion for a preliminary injunction because the "plaintiffs must allege that either the 'primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously'"). Indeed, "[s]ection 2511(2)(d)'s legislative history and caselaw make clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort." *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 515; *see also Thomas v. Pearl*, 998 F.2d 447, 451 (7th Cir. 1993) (holding that the plaintiff "must show that [the defendant] either intended to break the law or commit a tort against him in order to prove a violation of the federal statute").

Plaintiff's allegations pay lip service to the ECPA's crime and tort provisions. Plaintiff alleges that UCMC "intercepted" the content of the communications for the "purpose of disclosing and, profiting from, Plaintiff's" communications. (Compl. ¶¶ 80–81.) However, the Court need not accept these conclusory allegations for at least three reasons.

First, Plaintiff's allegations regarding UCMC's "purpose" are made without any factual support. Bare legal conclusions are not entitled to the presumption of truth when weighing a motion to dismiss. *Minard v. Wal-Mart Stores, Inc.*, 2016 WL 9211678, at *2 (N.D. Ill. Apr. 12, 2016) ("Neither conclusory legal statements nor abstract recitations of the elements of a cause of action add to the notice that Rule 8 demands, so they do not help a complaint survive a Rule 12(b)(6) motion.").

Second, Plaintiff's general conclusions regarding UCMC's alleged "purpose" directly contradict the more specific allegations in the Complaint. While Plaintiff conclusorily alleges that UCMC's "purpose" was to disclose and sell Plaintiff's information (Compl. ¶¶ 80–81), Plaintiff more pointedly alleges that the Patient Portals are "maintain[ed] . . . for [UCMC's] patients to

communicate with" UCMC "about bill payment, doctors, services, treatments, conditions, and appointments." (*Id*. ¶¶ 24, 28.) Plaintiff also emphasizes the functionality of the Patient Portals by noting that the portals include options entitled "'communicate with your doctor,' 'access your test results,' and 'schedule an appointment.'" (*Id*. ¶ 26.) Plaintiff describes her own experience using the Patient Portals "to schedule appointments, view test results, access her doctor's notes, message doctors and nurses, review medications, and make payments for medical services." (*Id*. ¶ 52.)

Although still conclusory, these latter and more "specific allegations carry more weight than any general allegations." *Curtis-Joseph v. Richardson*, 2010 WL 11546038, at *3 (N.D. Ill. Feb. 8, 2010). Plaintiff's allegations establish that the purpose of her communications with UCMC was for her to obtain and for UCMC to provide medical care. Providing medical care is neither illegal nor tortious, and Plaintiff does not allege otherwise. As a result, Plaintiff has pled herself out of the narrow exception in Section 2511(2)(d) of the ECPA. *See Carmona v. The Professionals, Inc.*, 2017 WL 1365590, at *3 (N.D. Ill. Apr. 14, 2017) ("[P]laintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.") (quotation omitted).

Third, "pleading rules do not tolerate factual inconsistencies in a complaint . . . ." *Bilecki v. Cty. of Will*, 2017 WL 36465, at *4 (N.D. Ill. Jan. 4, 2017) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008)). Therefore, the Court can and should dismiss Plaintiff's Count I based on the internal inconsistencies alone. *See U.S. ex rel. Hubert v. Bd. of Educ. of Chi.*, 2018 WL 6248827, at *6 (N.D. Ill. Nov. 29, 2018) (dismissing with prejudice a complaint which contained "inconsistent facts as to [a] specific point").

Plaintiff has failed to state a claim for interception under the ECPA. Her allegations plainly assert that UCMC was a party to the communications at issue. Those same allegations fail to show that UCMC's participation as a party to the communications was for criminal or tortious purposes. To the contrary, Plaintiff has alleged that the primary purpose of her communications with UCMC was medical care. Accordingly, Plaintiff's claim for violation of the ECPA fails.

**2. <u>UCMC Does Not Provide an Electronic Communication Service</u>**

To state a claim for divulging the contents of a communication under Section 2511(3)(a) of the ECPA, Plaintiff must allege that UCMC provides an "an electronic communication service to the public." 18 U.S.C. § 2511(3)(a). The ECPA "defines electronic communication service as any service which provides to users thereof the ability to send or receive wire or electronic communications." *Andersen Consulting LLP v. UOP*, 991 F. Supp. 1041, 1042 (N.D. Ill. 1998) (citation and quotation omitted).[2] Critically, a defendant "does not become an 'electronic communication service' provider simply because it maintains a website that allows for the transmission of electronic communications between itself and its customers." *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005); *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d at 511 n.20 (finding that "electronic communication service" providers include internet service providers and "the telecommunications companies whose cables and phone lines carry the traffic"). Rather, in order to qualify as an electronic communication service, the service must not only provide "the ability to send or receive," but must also include some capability to transmit electronic communications among *third parties*. *Kaufman v. Nest Seekers, LLC*, 2006 WL 2807177, at *6 (S.D.N.Y. Sept. 26, 2006) ("An on-line business which

[2] *Andersen* concerned a claim under Title II of the ECPA, known as the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.* However, the definition of "electronic communication service" is the same as the definition under Title I of the ECPA. *See* 18 U.S.C. § 2510(15) (defining "electronic communication service"); 18 U.S.C. § 2711(1) (adopting the same definition).

provides its customers, as part of its commercial offerings, the means by which the customers may engage in private electronic communications with third-parties may constitute a facility through which electronic communication service is provided."); *Crowley*, 166 F. Supp. 2d at 1270 (holding that an online merchant with a website that only allows customers to send electronic communications directly to the merchant does not provide electronic communication services within the contemplation of the SCA).

Plaintiff alleges that UCMC's "Patient Portals are an electronic communication service" under the ECPA. (Compl. ¶ 74.) But, as noted above, this Court need not accept such bare conclusions. *Minard*, 2016 WL 9211678, at *2. And scraping Plaintiff's conclusions away, all that is left is Plaintiff's single allegation that the "Patient Portals" are maintained by UCMC and used by "patients to communicate with [UCMC]." (Compl. ¶ 24.) This allegation fails to state that UCMC provides an electronic communication service.

Further, Plaintiff does not allege that the "Patient Portals" have the capability to enable communications with third parties. To the contrary, Plaintiff alleges only that the "Patient Portals" allow for communications between Plaintiff (a patient) and UCMC (the healthcare provider) regarding healthcare. (*Id.* ¶¶ 24, 52.) This allegation does not render UCMC "the provider of an electronic communication service" which requires that UCMC be "the provider of the underlying service which transports the data, such as an internet service provider or a telecommunications company whose cables and phone lines carry internet traffic . . . ." *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 524 (N.D. Ill. 2011). As alleged, UCMC is merely "the provider of a product or service which facilitates the data transport." *Id.* This does not elevate UCMC to an electronic communication service provider. *See Dyer v. Northwest Airlines Corps*., 334 F. Supp. 2d 1196, 1199 (D.N.D. 2004) ("However, businesses offering their traditional products and

services online through a website are not providing an 'electronic communication service.'"); *see also Andersen Consulting*, 991 F. Supp. at 1043 (distinguishing a user from a provider and holding that the defendant did not offer an electronic communication service despite providing the plaintiff with access to the defendant's internal e-mail system).

### B. **The Breach of Implied Duty of Confidentiality Claim Fails Because Plaintiff Does Not – and Cannot – Allege the Existence of an Implied Contract or Actual Monetary Damages**

Under Illinois law, the elements of a breach of an implied contract claim are the same as the elements of a breach of an express contract claim. *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 996 (7th Cir. 2007). The elements are: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Archey v. Osmose Utils. Servs., Inc.*, 2022 WL 3543469, at *2 (N.D. Ill. Aug. 18, 2022). While an implied contract contains "all necessary elements of a binding agreement; it differs from other contracts . . . in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." *A.E.I. Music Network, Inc. v. Bus. Computs., Inc.*, 290 F.3d 952, 956 (7th Cir. 2002) (citation and quotation omitted). Plaintiff's breach of implied duty of confidentiality claim fails for at least *three* reasons.

First, Plaintiff fails to allege the existence of a valid implied contract because she makes no allegations regarding any conduct on the part of UCMC which created an implied contract. Instead, Plaintiff merely alleges that she was a patient and received healthcare services from UCMC. (Compl. ¶¶ 50–52, 100.) Based on these allegations, Plaintiff alleges the bare conclusion that UCMC "agreed to keep Plaintiff's . . . information confidential." (*Id.* ¶ 101.) These scant conclusions allege *no conduct* by UCMC and thus, Plaintiff fails to allege the meeting of the minds necessary to create an implied contractual obligation. *See Ciszewski v. Denny's Corp.*, 2010 WL

1418582, at *4 (N.D. Ill. Apr. 7, 2010) (granting a motion to dismiss a breach of implied contract claim because the plaintiff failed to allege all elements of the claim); *Landale Signs and Neon, Ltd. v. Runnion Equip. Co.*, 2016 WL 7409916, at *7 (N.D. Ill. Dec. 22, 2016) (granting a motion to dismiss and holding that "[a] 'meeting of the minds' is a fundamental prerequisite to a claim for breach of implied contract"); *see also iMotorsports, Inc. v. Vanderhall Motor Works, Inc.*, 2022 IL App (2d) 210785, ¶¶ 32-33 (same). Simply stated, "a conclusory allegation that there was an agreement is not sufficient to suggest that [the plaintiff] and [the defendant] had the necessary mutual assent and formed an agreement concerning [a term that was allegedly breached]." *Vann v. Dolly, Inc.*, 2019 WL 1785589, at *3 (N.D. Ill. Apr. 24, 2019) (citation and quotation omitted).

Second, Plaintiff does not allege the existence of any consideration, let alone adequate consideration, which would create an implied contractual obligation. In an attempt to manufacture a contractual obligation, Plaintiff points to pre-existing legal obligations created by HIPAA and the Illinois Medical Patients' Rights Act ("MPRA"). (Compl. ¶¶ 104–106.) However, "where a party does what it is already legally obligated to do, there is no consideration because there has been no detriment." *Johnson v. Maki & Assocs., Inc.*, 682 N.E.2d 1196, 1199 (Ill. App. Ct. 1997). In other words, "valid consideration, on the part of *both parties*, is one of the essential requirements for the formation of a contract, and" such "consideration cannot flow from an act performed pursuant to [a] preexisting legal duty . . . ." *Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*, 83 N.E.3d 1027, 1044 (Ill. App. Ct. 2017) (emphasis in original). Thus, the obligation to comply with HIPAA or the MPRA is not adequate consideration to create an implied contract. *See Archey*, 2022 WL 3543469, at *3 (holding "that an independent statutory duty does not mean that a contractual obligation exists because [the defendant] would be bound by the statute, regardless of contract").

In a further attempt to manufacture a contractual obligation,[3] Plaintiff cites *Geisberger v. Willuhn* in the Complaint for the flawed proposition that an implied duty of confidentiality, "akin to an implied contract," is present in every healthcare provider and patient relationship. (Compl. ¶ 102.) Plaintiff's legal analysis is flawed in multiple respects.

As an initial matter, the Illinois Appellate Court in *Geisberger* affirmed the trial court's dismissal of the plaintiff's breach of implied contract claim. 390 N.E.2d 945, 948 (Ill. App. Ct. 1979). Moreover, the *Geisberger* analysis of the breach of implied contract claim is limited to a scant one paragraph, where the Court affirmed dismissal because disclosing the plaintiff's name did not constitute a disclosure of his "mental or physical condition." *Id*. Finally, Plaintiff's allegation that HIPAA and the MPRA create implied contractual obligations is directly contradicted by the Illinois Appellate Court's holding in *Johnson*, some 18 years after *Geisberger*. *See Johnson*, 682 N.E.2d at 1199-1200 (overturning the trial court and finding that the "cancellation agreement lacked consideration and was therefore invalid"). "Plaintiff cannot create a private right of action for violations of HIPAA by recasting her claims as common law, implied contract claims." *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017); *see also Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 575 (N.D. Ill. 2020) (noting that neither HIPAA nor the MPRA "provide a private right of action").

Third, Plaintiff fails to allege that she has suffered any injury resulting from the alleged breach of the implied contract. A breach of implied contract claim must plead actual monetary

---

[3] Although not referenced in Plaintiff's breach of implied duty claim, earlier in the Complaint, Plaintiff makes a passing reference to a statement made by UCMC regarding the "Student Wellness Center." (Compl. ¶ 29.) To the extent Plaintiff relies on this allegation as a basis for an implied contractual obligation, such an argument fails. *See Austin-Spearman v. AARP & AARP Servs. Inc.*, 119 F. Supp. 3d 1, 11–12 (D.D.C. 2015) ("[I]t is well established that not all promises rise to the level of binding contractual obligations. For example, a promise that is offered freely and equally to all people—without regard to who has provided consideration and who has not—is not a contract.") (citation omitted).

damages. *See Moyer v. Michaels Stores, Inc.*, 2014 WL 3511500, at *7 (N.D. Ill. July 14, 2014) (dismissing a breach of implied contract claim where the plaintiffs failed to plead actual economic damages). At best, Plaintiff alleges, in wholly conclusory fashion, that she has "suffered and will continue to suffer damages and injuries[.]" (Compl. ¶ 120.) Such a vague allegation of an injury, totally divorced from the purported breach of the implied contract, is not sufficient. *See Moyer*, 2014 WL 3511500, at *7 (holding that a plaintiff must allege "actual monetary damage" to plead a viable breach of implied contract claim under Illinois law); *In re Ill. Bell Tel. Link-Up II*, 994 N.E.2d 553, 558 (Ill. App. Ct. 2013) ("Damages are an essential element of a breach of contract action and a claimant's failure to [plead or] prove damages entitles the defendant to judgment as a matter of law.").

### C. The Invasion of Privacy—Intrusion Upon Seclusion Claim Fails Because Plaintiff Does Not Allege Offensive Prying or that She Has Experienced Anguish and Suffering

The elements of an intrusion upon seclusion claim in Illinois are: "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004). The core of this tort is "the offensive prying into the private domain of another." *Lovgren v. Citizens First Nat'l Bank*, 534 N.E.2d 987, 989 (Ill. 1989); *see also Black v. Wrigley*, 2017 WL 8186996, at *12–13 (N.D. Ill. Dec. 8, 2017) (dismissing an intrusion upon seclusion claim because the plaintiff did not allege that the defendant "engaged in prying of that sort"). Plaintiff's invasion of privacy claim fails for at least *two* reasons.

First, Plaintiff concedes that she voluntarily and knowingly provided her medical information to UCMC while receiving medical treatment. (Compl. ¶ 52.) This concession is fatal to Plaintiff's claim. A defendant cannot be liable for disregarding, invading or otherwise intruding

upon a person's privacy rights where, as here, the plaintiff voluntarily provided the information. *See Johnson v. Northshore Univ. Healthsys., Healthport, Inc.*, 2011 WL 10069086, at *4–5 (Ill. App. Ct. Mar. 31, 2011) (affirming dismissal of intrusion upon seclusion claim where the plaintiff voluntarily supplied information to health care provider, which in turn disclosed health information to a third party); *Harman v. Gist*, 2003 WL 22053591, at *7 (N.D. Ill. Sept. 2, 2003) (dismissing an invasion of privacy claim where the plaintiff voluntarily left a voice message which was transcribed and shared); *Dwyer v. Am. Express Co.*, 652 N.E.2d 1351, 1354 (Ill. App. Ct. 1995) (affirming dismissal of invasion of privacy claim and stating "[w]e cannot hold that a defendant has committed an unauthorized intrusion by compiling the information voluntarily given to it and then renting its compilation"); *Miller v. Motorola, Inc.*, 560 N.E.2d 900, 904 (Ill. App. Ct. 1990) (dismissing an invasion of privacy claim because the plaintiff voluntarily provided the information that was disseminated).

With no intrusion into her private affairs, Plaintiff appears to attempt to state a claim based on the alleged *disclosure* of her personal information by UCMC. However, as with Plaintiff's ECPA claim, the mere alleged disclosure of information does not give rise to an intrusion upon seclusion claim. *See Lovgren*, 126 Ill. 2d at 416–17 ("The basis of the tort is not publication or publicity."); *Thomas*, 998 F.2d at 452 ("[A] plaintiff fails to state a claim for invaded seclusion if the harm flows from publication rather than the intrusion."); *Russell v. Am. Broad. Co., Inc.*, 1995 WL 330920, at *8 (N.D. Ill. May 31, 1995) (dismissing an intrusion upon seclusion claim where the alleged harm resulted from "the publication" of the film and "not the filming itself."); *Angelo*, 2016 WL 640525, at *5 (dismissing intrusion upon seclusion claim because the plaintiffs pled that publication of allegedly private conversations caused their injury, not the prying itself).

Second, Plaintiff fails to properly allege any damages as a result of UCMC's purported actions. (Compl. ¶ 120.) A conclusory allegation of injury that is unsupported by facts is "not sufficient to plausibly suggest that [the plaintiff] is entitled to relief based on a claim of intrusion upon seclusion." *McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1015 (N.D. Ill. 2012); *see also Spiegel v. McClintic*, 2017 WL 4283727, at *9 (N.D. Ill. Sept. 27, 2017) (dismissing intrusion upon seclusion claim because the plaintiff failed "to allege facts in support" of claimed injuries); *Heffron v. Green Tree Servicing, LLC*, 2016 WL 47915, at *6 (N.D. Ill. Jan. 5, 2016) (dismissing intrusion upon seclusion claim for failure to state a claim and noting the plaintiff did not plausibly allege how intrusion caused anguish and suffering); *Shea v. Winnebago Cty. Sheriff's Off.*, 2014 WL 4449605, at *7 (N.D. Ill. Sept. 10, 2014) (dismissing purported intrusion claim because, among other things, the plaintiff's anguish and suffering allegations were conclusory).

## V. CONCLUSION

For all of the foregoing reasons, Defendant University of Chicago Medical Center respectfully submits that this Court should grant its Motion and dismiss Plaintiff's Class Action Complaint as to it, with prejudice.

Respectfully submitted,

UNIVERSITY OF CHICAGO MEDICAL CENTER

By: s/ Joseph A. Strubbe
One of Its Attorneys

Joseph A. Strubbe
Chad A. Schiefelbein
Zachary J. Watters
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 312 609 7500

Dated: February 6, 2023

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ryan F. Stephan
James B. Zouras
Mohammed A. Rathur
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
Phone: (312)233-1550
Fax: (312)233-1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
mrathur@stephanzouras.com

Lauren R. Goldman
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Phone: (212) 351-4000
lgoldman@gibsondunn.com

Matthew L. Kutcher
Cooley LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
Phone: (312) 881-6500
Fax: (312) 881-6598
mkutcher@cooley.com

on February 6, 2023

*/s/ Joseph A. Strubbe*
Joseph A. Strubbe