IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOPHIA HARTLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF CHICAGO MEDICAL CENTER and META PLATFORMS, INC.,<br><br>Defendants. | No. 1:22-cv-05891 |

**DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

**I. INTRODUCTION** .......... **1**

**II. SUMMARY OF THE ALLEGATIONS AGAINST UCMC** .......... **2**

**III. PROCEDURAL BACKGROUND** .......... **2**

**IV. LEGAL STANDARD** .......... **2**

**V. ARGUMENT** .......... **3**

A. Count I of the Complaint Should Be Dismissed .......... 3

1. Plaintiff Has Not Alleged That UCMC Intercepted an Electronic Communication .......... 4

a. UCMC Cannot Intercept Communications to Which It Is a Party .......... 4

b. Plaintiff Has Not Alleged the Primary Purpose of UCMC's Alleged "Interception" Was Criminal or Tortious .......... 6

2. UCMC Does Not Provide an Electronic Communication Service .......... 9

B. The Breach of Implied Duty of Confidentiality Claim Fails Because Plaintiff Cannot Allege the Existence of an Implied Contract or Actual Monetary Damages .......... 11

C. The Invasion of Privacy—Intrusion Upon Seclusion Claim Fails Because Plaintiff Does Not Allege Offensive Prying or That She Has Experienced Anguish and Suffering .......... 17

**VI. CONCLUSION** .......... **19**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.E.I. Music Network, Inc. v. Bus. Computs., Inc.*,
290 F.3d 952, 956 (7th Cir. 2002) ....................11

*Ameritech Corp. v. McCann*,
297 F.3d 582 (7th Cir. 2002) ....................3

*Andersen Consulting LLP v. UOP*,
991 F. Supp. 1041 (N.D. Ill. 1998) ....................9, 11

*Angelo v. Moriarty*,
2016 WL 640525 (N.D. Ill. Feb. 18, 2016) ....................6, 18

*Archey v. Osmose Utils. Servs., Inc.*,
2022 WL 3543469 (N.D. Ill. Aug. 18, 2022) ....................11, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................2, 3

*Attias v. CareFirst, Inc.*,
365 F. Supp. 3d 1 (D.D.C. 2019)....................16

*Austin-Spearman v. AARP & AARP Servs. Inc.*,
119 F. Supp. 3d 1 (D.D.C. 2015)....................12, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007)....................2, 3

*Bilecki v. Cty. of Will*,
2017 WL 36465 (N.D. Ill. Jan. 4, 2017)....................8

*Black v. Wrigley*,
2017 WL 8186996 (N.D. Ill. Dec. 8, 2017)....................17

*Bonilla v. Ancestry.com Operations Inc.*,
574 F. Supp. 3d 582 (N.D. Ill. 2021) ....................18

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) ....................14

*Busse v. Motorola, Inc.*,
813 N.E.2d 1013 (Ill. App. Ct. 2004) ....................16

*Carmona v. The Professionals, Inc.*,
2017 WL 1365590 (N.D. Ill. Apr. 14, 2017) ........ 8

*Chrysler Corp. v. Brown*,
441 U.S. 281, 302 n.31 (1979) ........ 7

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ........ 5, 9

*Curtis-Joseph v. Richardson*,
2010 WL 11546038 (N.D. Ill. Feb. 8, 2010) ........ 8

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) ........ 14, 15

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........ 6, 9

*Dwyer v. Am. Express Co.*,
652 N.E.2d 1351 (Ill. App. Ct. 1995) ........ 17

*Dyer v. Northwest Airlines Corps.*,
334 F. Supp. 2d 1196 (D.N.D. 2004) ........ 11

*Geisberger v. Willuhn*,
390 N.E.2d 945 (Ill. App. Ct. 1979) ........ 14

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) ........ 4

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ........ 6

*Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*,
570 F.3d 811 (7th Cir. 2009) ........ 2

*Harman v. Gist*,
2003 WL 22053591 (N.D. Ill. Sept. 2, 2003) ........ 17

*Heffron v. Green Tree Servicing, LLC*,
2016 WL 47915 (N.D. Ill. Jan. 5, 2016) ........ 18

*U.S. ex rel. Hubert v. Bd. of Educ. of Chi.*,
2018 WL 6248827 (N.D. Ill. Nov. 29, 2018) ........ 8

*In re Ill. Bell Tel. Link-Up II*,
994 N.E.2d 553 (Ill. App. Ct. 2013) ........ 16

*iMotorsports, Inc. v. Vanderhall Motor Works, Inc.*,
2022 IL App (2d) 210785 ........................................................................12

*Innovation Ventures, LLC v. Nutrition Sci. Labs., LLC*,
912 F.3d 316 (6th Cir. 2018) ........................................................................15

*J.R. v. Walgreens Boots Alliance, Inc.*,
2021 WL 4859603 (4th Cir. Oct. 19, 2021)........................................................13

*In re JetBlue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ..................................................................9

*Johnson v. Maki & Assocs., Inc.*,
682 N.E.2d 1196 (Ill. App. Ct. 1997) ..........................................................13, 14

*Johnson v. Northshore Univ. Healthsys., Healthport, Inc.*,
2011 WL 10069086 (Ill. App. Ct. Mar. 31, 2011).................................................17

*Jurgens v. Build.com, Inc.*,
2017 WL 5277679 (E.D. Mo. Nov. 13, 2017)..........................................................5

*K.A. by and through B.W. v. Children's Mercy Hosp.*,
2019 WL 13207485 (W.D. Mo. May 17, 2019) ..................................................12, 14

*Kaufman v. Nest Seekers, LLC*,
2006 WL 2807177 (S.D.N.Y. Sept. 26, 2006)...........................................................9

*Kurowski v. Rush Sys. for Health*,
2023 WL 2349606 (N.D. Ill. Mar. 3, 2023).......................................................*passim*

*Landale Signs and Neon, Ltd. v. Runnion Equip. Co.*,
2016 WL 7409916 (N.D. Ill. Dec. 22, 2016)........................................................12

*Lincoln v. Vigil*,
508 U.S. 182 (1993)...............................................................................................7

*Lovgren v. Citizens First Nat'l Bank*,
534 N.E.2d 987, 989 (Ill. 1989) ..........................................................................17

*Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*,
83 N.E.3d 1027 (Ill. App. Ct. 2017) ....................................................................13

*MC Baldwin Fin. Co. v. Dimaggio, Rosario, & Veraja, LLC*,
845 N.E.2d 22 (Ill. App. Ct. 2006) .......................................................................15

*In re: Mednax Servs., Inc.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022) ...........................................................12, 13

*In re Meta Pixel Healthcare Litig.*,
2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ....................6

*In re Michaels Stores Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011) ....................11

*Miller v. Motorola, Inc.*,
560 N.E.2d 900 (Ill. App. Ct. 1990) ....................17

*Minard v. Wal-Mart Stores, Inc.*,
2016 WL 9211678 (N.D. Ill. Apr. 12, 2016) ....................7, 10

*Moyer v. Michaels Stores, Inc.*,
2014 WL 3511500 (N.D. Ill. July 14, 2014) ....................15, 16

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ....................5

*Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*,
486 F.3d 989 (7th Cir. 2007) ....................11

*Parks v. Wells Fargo Home Mortg., Inc.*,
398 F.3d 937 (7th Cir. 2005) ....................16

*In re Pharmatrak, Inc. Privacy Litig.*,
329 F.3d 9, 18 (1st Cir. 2003) ....................4

*Russell v. Am. Broad. Co., Inc.*,
1995 WL 330920 (N.D. Ill. May 31, 1995) ....................18

*In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig.*,
45 F. Supp. 3d 14 (D.D.C. 2014) ....................16

*Tamayo v. Blagojevich*,
526 F.3d 1074, 1086 (7th Cir. 2008) ....................8

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) ....................6, 18

*U.S. v. Pasha*,
332 F.2d 193 (7th Cir. 1964) ....................5

*Valentine v. WideOpen W. Fin., LLC*,
2013 WL 5423846 (N.D. Ill. Sept. 27, 2013) ....................4

*Vann v. Dolly, Inc.*,
2019 WL 1785589 (N.D. Ill. Apr. 24, 2019) ....................13

*Zak v. Bose Corp.*,
2020 WL 2762552 (N.D. Ill. May 27, 2020) ....................4, 5, 6

**Statutes**

18 U.S.C. § 2510(4) ....................4

18 U.S.C. § 2510(15) ....................9

18 U.S.C. § 2510 *et seq* ....................1

18 U.S.C. § 2511(1) ....................3, 4

18 U.S.C. § 2511(1)(a) ....................3

18 U.S.C. § 2511(1)(c) ....................3, 4

18 U.S.C. § 2511(1)(d) ....................3, 4

18 U.S.C. § 2511(2)(d) ....................4, 6, 8

18 U.S.C. § 2511(3)(a) ....................3, 9

18 U.S.C. § 2701, *et seq* ....................9

18 U.S.C. § 2711(1) ....................9

**Other Authorities**

FED. R. CIV. P. 8 ....................7

FED. R. CIV. P. 12(b)(6) ....................2, 7

In support of its Motion to Dismiss (the "Motion") the first amended class action complaint (the "Amended Complaint") of Plaintiff Sophia Hartley ("Plaintiff"), Defendant University of Chicago Medical Center ("UCMC") states as follows:

## I. INTRODUCTION

The Amended Complaint marks Plaintiff's second attempt to allege claims against UCMC based on information that *Plaintiff voluntarily provided* to UCMC. Despite the voluntary nature of Plaintiff's disclosures, Plaintiff purports to state claims for: (i) "Violation of the Electronic Communications Privacy Act ("ECPA") 18 U.S.C. § 2510 *et seq*." (Count I), (ii) "Breach of Implied Duty of Confidentiality" (Count IV), and (iii) "Invasion of Privacy—Intrusion Upon Seclusion" (Count V).[1] The Amended Complaint fails entirely to cure the fatal defects of Plaintiff's original Complaint, which Plaintiff withdrew after being served with UCMC's prior motion to dismiss.

Instead, the Amended Complaint attempts to end run the legal deficiencies of the original by merely injecting even more legal and factual conclusions.[2] Plaintiff's new conclusory allegations lack well-pleaded facts and do nothing to address the critical flaw that Plaintiff has alleged only *disclosure* of information, and not the improper *collection* of it, wiretapping, eavesdropping, or invasion of privacy. Plaintiff's repeated attempts to force a square peg into a round hole by asserting claims which require the improper and surreptitious collection of information must fail, as she cannot and has not pled these essential elements against UCMC. As

[1] The other two counts are directed at Defendant Meta Platforms, Inc., which has been severed from this case.

[2] As an aid to the Court, UCMC has attached as **Exhibit 1** a redline of the body of the Amended Complaint showing the changes Plaintiff made as compared to her original Complaint. Citations to specific paragraphs in the Amended Complaint are to Exhibit 1 attached hereto using the citation "Ex. 1 ¶ __."

a result, Plaintiff's purported claims against UCMC are flawed and defective and should be dismissed, with prejudice.

## II. SUMMARY OF THE ALLEGATIONS AGAINST UCMC

Plaintiff alleges that she has been a patient of UCMC, an Illinois not-for-profit medical service provider, since 2019. (Ex. 1. ¶¶ 24–25.) According to Plaintiff, UCMC maintains certain "web properties" which allow UCMC's "patients to communicate" with UCMC regarding "particular providers and medical conditions." (*Id.* ¶¶ 27–31.)

Plaintiff asserts that UCMC "deployed Facebook's Meta Pixel"—"an invisible tool that tracks consumers' actions on Facebook advertisers' websites and reports them to Facebook"—on its web properties. (*Id.* ¶¶ 35, 43.) Plaintiff further alleges that her personally identifiable patient information and protected health information were transmitted to Meta via the Meta Pixel "whenever a patient uses [UCMC's] web properties." (*Id.* ¶ 35.) This is the gravamen of Plaintiff's purported claims against UCMC.

## III. PROCEDURAL BACKGROUND

On October 25, 2022, Plaintiff filed her original Complaint. (Dkt. No. 2.) Thereafter, on February 6, 2023, UCMC filed its motion to dismiss and supporting memorandum. (Dkt. Nos. 27-28.) On March 2, 2023, Plaintiff filed an agreed motion for leave to file her Amended Complaint. (Dkt No. 31.) On March 3, 2023, the Court granted Plaintiff's motion and noted that UCMC's motion to dismiss was "withdrawn without prejudice [and] with leave to re-file." (Dkt. No. 32.)

## IV. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of a complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plausibility standard is not met "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 678). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## V. ARGUMENT

### A. <u>Count I of the Complaint Should Be Dismissed</u>

Plaintiff fails to state a violation of the ECPA, which is often referred to as the Wiretap Act. As the name "Wiretap Act" implies, the ECPA is designed to "protect against the unauthorized interception of electronic communications." *Ameritech Corp. v. McCann*, 297 F.3d 582, 583 (7th Cir. 2002) (quotation omitted). The ECPA makes it unlawful to "intentionally intercept[ ] [or] endeavor [ ] to intercept . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The ECPA also prohibits disclosure or use of the contents of an unlawfully intercepted communication. *Id.* § 2511(1)(c), (d). Plaintiff appears to attempt to allege violations for: (i) interception (18 U.S.C. § 2511(1)(a)); (ii) disclosure (18 U.S.C. § 2511(1)(c)); (iii) use (18 U.S.C. § 2511(1)(d)); and (iv) divulging the contents of a communication (18 U.S.C. § 2511(3)(a)). (Ex. 1 ¶¶ 80–84.) Plaintiff's ECPA claim should be dismissed because her allegations fail to show that UCMC: (i) intercepted a communication and (ii) provides an electronic communication service—both of which are required to state a divulging claim.

### 1. Plaintiff Has Not Alleged That UCMC Intercepted an Electronic Communication

The thrust of Plaintiff's claim under Section 2511(1) of the Wiretap Act is that UCMC allegedly disclosed Plaintiff's personal information to Meta. (*Id.* ¶ 1.) Plaintiff alleges that disclosure of information to Meta, via the Meta Pixel, occurs once a patient uses a web property to communicate with UCMC. (*Id.* ¶ 45.) However, in order to assert any claim under Section 2511(1), Plaintiff must first allege that UCMC "intercepted" an electronic communication.[3] *See* 18 U.S.C. § 2511(1)(c) (holding that "disclosure" requires "the interception of a wire, oral, or electronic communication"); 18 U.S.C. § 2511(1)(d) (same). Put simply, "there is a certain temporal sequence of events that must occur before a person can be liable for disclosure or use." *Valentine v. WideOpen W. Fin., LLC*, 2013 WL 5423846, at *6 (N.D. Ill. Sept. 27, 2013). The term "'intercept' means the 'aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.'" *Zak v. Bose Corp.*, 2020 WL 2762552, at *2 (N.D. Ill. May 27, 2020) (quoting 18 U.S.C. § 2510(4)). Plaintiff has not alleged (and cannot allege) that UCMC "intercepted" an electronic communication.

#### a. UCMC Cannot Intercept Communications to Which It Is a Party

ECPA Section 2511(2)(d) states that it is not unlawful for a person to intercept an electronic communication "where such person is a party to the communication." "Tautologically, a communication will always consist of at least two parties: the speaker and/or sender, and at least one intended recipient." *In re Google Cookie Placement*, 806 F.3d at 143 (dismissing ECPA claim

[3] "A plaintiff pleads a prima facie case under the [ECPA] by showing that the defendant '(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device.'" *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 135 (3d Cir. 2015) (quoting *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 18 (1st Cir. 2003)).

because tracking cookies placed by advertising providers made the advertiser the intended recipient of the electronic transmission). Here, UCMC was unquestionably a party to the communications Plaintiff claims were intercepted, as she alleges that she knowingly communicated with UCMC, via the web properties. (Ex. 1 ¶ 57.) Given that Plaintiff alleges that the content of the communications related to Plaintiff's healthcare (*id.*), and that UCMC was Plaintiff's healthcare provider (*id.* ¶ 55), this fatal concession is not surprising.

A recent decision by Judge Kennelly in the Northern District, in accordance with long established precedent, underscores the application of the "party exception" to an ECPA claim where, as here, a patient communicates with a healthcare provider. In *Kurowski v. Rush System for Health*, the court found that a patient could not state an ECPA claim based on her alleged use of her healthcare provider's website because the healthcare provider was the intended recipient of the communication and thus could not have intercepted the communication. 2023 WL 2349606, at *4 (N.D. Ill. Mar. 3, 2023) ("The Court concludes that [the healthcare provider]—and not Facebook, Google, or Bidtellect—was the intended recipient of the allegedly intercepted communications here. [The healthcare provider] is therefore a party to those communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred."). Similar to the healthcare provider in *Kurowski*, UCMC "acted as no more than the second party to a communication. This is not an interception as defined by the [ECPA]." *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001); *Zak*, 2020 WL 2762552, at *2 ("A person who takes part in a conversation or whose presence is known to other participants is a party to the communication."); *U.S. v. Pasha*, 332 F.2d 193, 198 (7th Cir. 1964) (holding that "the impersonation of the intended receiver is not an interception within the meaning of the [Communications Act of 1934]"); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d

262, 274 (3d Cir. 2016) (holding that the ECPA "does not make it unlawful for a person to intercept . . . [an ]electronic communication if the person is a party to the communication") (internal quotations and citations omitted); *Jurgens v. Build.com, Inc.*, 2017 WL 5277679, at *5 (E.D. Mo. Nov. 13, 2017) (same).

**b. Plaintiff Has Not Alleged the Primary Purpose of UCMC's Alleged "Interception" Was Criminal or Tortious**

The ECPA exemption afforded a party to a communication is not absolute. The ECPA provides that "a person who is a party to the communication . . . may intercept that communication as long as it is not 'for the purpose of committing any criminal or tortious act.'" *Zak*, 2020 WL 2762552, at *2 (quoting 18 U.S.C. § 2511(2)(d)); *see also Angelo v. Moriarty*, 2016 WL 640525, at *5 (N.D. Ill. Feb. 18, 2016) (holding that to state a claim against a party to a communication, the plaintiff must allege that the defendant "either broke the law or committed a tort"). Here, then, in order for the ECPA to apply to Plaintiff's alleged communications with UCMC, the "primary" purpose of the interception must be to commit a crime or tort. *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (quoting *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 518 (S.D.N.Y. 2001)) (denying a motion for class certification and noting that "[a]lleged interceptions fall within the tort or crime exception only where the 'primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously'"); *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *12-13 (N.D. Cal. Dec. 22, 2022) (citation omitted) (denying motion for a preliminary injunction because the "plaintiffs must allege that either the 'primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously'"). Indeed, "Section 2511(2)(d)'s legislative history and caselaw make clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime

or tort." *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 515; *see also Thomas v. Pearl*, 998 F.2d 447, 451 (7th Cir. 1993) (holding that the plaintiff "must show that [the defendant] either intended to break the law or commit a tort against him in order to prove a violation of the federal statute").

In her original Complaint, Plaintiff paid lip service to the ECPA's crime and tort provisions by alleging the unsupported conclusion that UCMC "intercepted" the content of the communications for the "purpose of disclosing and, profiting from, Plaintiff's" communications. (Ex. 1 ¶¶ 85–86.) In her Amended Complaint, Plaintiff now includes the equally unsupported legal conclusion that UCMC's alleged conduct is "a federal crime." (*Id.* ¶ 18.) The Court need not accept these conclusory allegations for at least three reasons.

First, both Plaintiff's allegations regarding UCMC's "purpose" and her unsupported characterization of UCMC's alleged conduct as criminal are made without any factual support.[4] Bare legal conclusions are not entitled to the presumption of truth when weighing a motion to dismiss. *Minard v. Wal-Mart Stores, Inc.*, 2016 WL 9211678, at *2 (N.D. Ill. Apr. 12, 2016) ("Neither conclusory legal statements nor abstract recitations of the elements of a cause of action add to the notice that Rule 8 demands, so they do not help a complaint survive a Rule 12(b)(6) motion.").

[4] Although not referenced in any of her claims, Plaintiff makes two allegations regarding a "recently issued" HHS bulletin concerning the use of online tracking technologies by HIPAA-covered entities. (Ex. 1 ¶¶ 16-17.) Any argument premised on the HHS bulletin is fatally flawed because "such regulatory guidance only applies prospectively." *Kurowski*, 2023 WL 2349606, at *5 (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979)); *see also Lincoln v. Vigil*, 508 U.S. 182, 197 (1993) (internal quotations omitted) (holding that general statements of policy are "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power"). Moreover, general statements of policy, such as the HHS bulletin, "do not have the force and effect of law." *Chrysler Corp.*, 441 U.S. at 302 n.31.

Second, Plaintiff's general conclusions regarding UCMC's alleged "purpose" directly contradict the more specific allegations in her Complaint. Contrary to Plaintiff's conclusory allegations that UCMC's "purpose" was to disclose and sell Plaintiff's information (Ex. 1 ¶¶ 85–86), Plaintiff more pointedly alleges that the web properties are "maintain[ed] . . . for [UCMC's] patients to communicate with" UCMC "about bill payment, doctors, services, treatments, conditions, and appointments." (*Id.* ¶¶ 27, 33.) Plaintiff also emphasizes the functionality of the web properties by noting that the portals include options entitled "'communicate with your doctor,' 'access your test results,' and 'schedule an appointment.'" (*Id.* ¶ 31.) Plaintiff describes her own experience using the web properties "to schedule appointments, view test results, access her doctor's notes, message doctors and nurses, review medications, and make payments for medical services." (*Id.* ¶ 57.)

Although still conclusory, these latter and more "specific allegations carry more weight than any general allegations." *Curtis-Joseph v. Richardson*, 2010 WL 11546038, at *3 (N.D. Ill. Feb. 8, 2010). Accordingly, Plaintiff's allegations establish that the purpose of her communications with UCMC was for her to obtain and for UCMC to provide medical care. Providing medical care is neither illegal nor tortious, and Plaintiff does not (and cannot) allege otherwise. As a result, Plaintiff has pled herself out of the narrow exception in Section 2511(2)(d) of the ECPA. *See Carmona v. The Professionals, Inc.*, 2017 WL 1365590, at *3 (N.D. Ill. Apr. 14, 2017) ("[P]laintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.") (quotation omitted).

Third, "pleading rules do not tolerate factual inconsistencies in a complaint . . . ." *Bilecki v. Cty. of Will*, 2017 WL 36465, at *4 (N.D. Ill. Jan. 4, 2017) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008)). This Court can and should dismiss Plaintiff's Count I based on

the internal inconsistencies alone. *See U.S. ex rel. Hubert v. Bd. of Educ. of Chi.*, 2018 WL 6248827, at *6 (N.D. Ill. Nov. 29, 2018) (dismissing with prejudice a complaint which contained "inconsistent facts as to [a] specific point").

Plaintiff has failed to state a claim for interception under the ECPA. Her allegations plainly assert that UCMC was a party to the communications at issue. Those same allegations fail to show that UCMC's participation as a party to the communications was for criminal or tortious purposes. To the contrary, Plaintiff has alleged that the primary purpose of her communications with UCMC was medical care. Accordingly, Plaintiff's claim for violation of the ECPA fails.

**2. UCMC Does Not Provide an Electronic Communication Service**

To state a claim for divulging the contents of a communication under Section 2511(3)(a) of the ECPA, Plaintiff must allege that UCMC provides an "an electronic communication service to the public." 18 U.S.C. § 2511(3)(a). The ECPA "defines electronic communication service as any service which provides to users thereof the ability to send or receive wire or electronic communications." *Andersen Consulting LLP v. UOP*, 991 F. Supp. 1041, 1042 (N.D. Ill. 1998) (citation and quotation omitted).[5] Critically, a defendant "does not become an 'electronic communication service' provider simply because it maintains a website that allows for the transmission of electronic communications between itself and its customers." *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005); *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d at 511 n.20 (finding that "electronic communication service" providers include internet service providers and "the telecommunications companies whose cables and phone lines carry the traffic"). Rather, in order to qualify as an electronic communication

---

[5] *Andersen* concerned a claim under Title II of the ECPA, known as the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq*. However, the definition of "electronic communication service" is the same as the definition under Title I of the ECPA. *See* 18 U.S.C. § 2510(15) (defining "electronic communication service"); 18 U.S.C. § 2711(1) (adopting the same definition).

service, the service must not only provide "the ability to send or receive," but must also include some capability to transmit electronic communications among *third parties*. *Kaufman v. Nest Seekers, LLC*, 2006 WL 2807177, at *6 (S.D.N.Y. Sept. 26, 2006) ("An on-line business which provides its customers, as part of its commercial offerings, the means by which the customers may engage in private electronic communications with third-parties may constitute a facility through which electronic communication service is provided."); *Crowley*, 166 F. Supp. 2d at 1270 (holding that an online merchant with a website that only allows customers to send electronic communications directly to the merchant does not provide electronic communication services within the contemplation of the SCA).

Plaintiff attempts to bolster her allegation that UCMC's "web properties are an electronic communication service under the ECPA" by asserting in the Amended Complaint that the web properties provided an "electronic communication messaging service." (Ex. 1 ¶ 79.) However, Plaintiff's attempt is insufficient and amounts to nothing more than a regurgitation of her earlier allegation – the "web properties" are maintained by UCMC and used by "patients to communicate with [UCMC]." (*Id.* ¶ 27.) As noted above, this Court need not accept Plaintiff's bare legal conclusion. *Minard*, 2016 WL 9211678, at *2. The insufficiency of Plaintiff's single, albeit repetitive, allegation that patients communicate with UCMC through the web properties is underscored by *Kurowski*. There, the plaintiff alleged that, "by providing access to the MyChart patient portal—which allows patients to communicate directly with their providers—[the health care provider] acts as an electronic communication service." 2023 WL 2349606, at *5. The *Kurowski* court rejected that argument and held that a healthcare provider "cannot plausibly be considered an electronic communications service provider within the meaning of the [ECPA]." *Id.* at *6. Plaintiff's near identical allegations regarding UCMC's web properties (*see* Ex. 1 ¶ 31

(alleging that the "MyChart" web property "allows [UCMC's] patients to communicate with [UCMC]")) are similarly deficient and fail to allege that UCMC provides an electronic communication service.

Plaintiff also fails to allege that the "web properties" have the capability to enable communications with third parties. To the contrary, Plaintiff alleges only that the "web properties" allow for communications between Plaintiff (a patient) and UCMC (the healthcare provider) regarding healthcare. (*Id.* ¶¶ 27, 57.) But to be "the provider of an electronic communication service," UCMC must be "the provider of the underlying service which transports the data, such as an internet service provider or a telecommunications company whose cables and phone lines carry internet traffic . . . ." *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 524 (N.D. Ill. 2011). As alleged, though, UCMC is merely "the provider of a product or service which facilitates the data transport." *Id.* This does not elevate UCMC to an electronic communication service provider. *See Dyer v. Northwest Airlines Corps*., 334 F. Supp. 2d 1196, 1199 (D.N.D. 2004) ("However, businesses offering their traditional products and services online through a website are not providing an 'electronic communication service.'"); *see also Andersen Consulting*, 991 F. Supp. at 1043 (distinguishing a user from a provider and holding that the defendant did not offer an electronic communication service despite providing the plaintiff with access to the defendant's internal e-mail system). Simply put, "hospital systems such as [UCMC] are not in the electronic communications business." *Kurowski*, 2023 WL 2349606, at *6.

### B. <u>The Breach of Implied Duty of Confidentiality Claim Fails Because Plaintiff Cannot Allege the Existence of an Implied Contract or Actual Monetary Damages</u>

Under Illinois law, the elements of a breach of an implied contract claim are the same as the elements of a breach of an express contract claim. *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 996 (7th Cir. 2007). The elements are: "(1) the existence of a

valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Archey v. Osmose Utils. Servs., Inc.*, 2022 WL 3543469, at *2 (N.D. Ill. Aug. 18, 2022). While an implied contract contains "all necessary elements of a binding agreement; it differs from other contracts . . . in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." *A.E.I. Music Network, Inc. v. Bus. Computs., Inc.*, 290 F.3d 952, 956 (7th Cir. 2002) (citation and quotation omitted). Plaintiff's breach of implied duty of confidentiality claim fails for at least *three* reasons.

First, Plaintiff fails to allege the existence of a valid implied contract because she makes no allegations regarding any conduct on the part of UCMC which created an implied contract. Instead, Plaintiff bases her claim on two allegations: (i) she was a patient and received healthcare services from UCMC (Ex. 1 ¶¶ 55–57, 105) and (ii) UCMC's "HIPAA Notice of Privacy Policies" issued to all patients of UCMC (*id.* ¶ 112). Based on these allegations, Plaintiff concludes that UCMC "agreed to keep Plaintiff's . . . information confidential." (*Id.* ¶ 106.) However, "it is well established that not all promises rise to the level of binding contractual obligations. For example, a promise that is offered freely and equally to all people—without regard to who has provided consideration and who has not—is not a contract." *Austin-Spearman v. AARP & AARP Servs. Inc.*, 119 F. Supp. 3d 1, 11–12 (D.D.C. 2015) (citation omitted). As alleged by Plaintiff, UCMC's "HIPAA Notice of Privacy Policies" is posted on UCMC's website (Ex. 1 ¶ 112 n.11), offered to all people, and thus cannot create an implied contract. *See In re: Mednax Servs., Inc.*, 603 F. Supp. 3d 1183, 1221-22 (S.D. Fla. 2022) (holding that a "privacy notice" provided by defendants is not sufficient to allege "the mutual assent and meeting of the minds required to form an implied contract for data security services"); *K.A. by and through B.W. v. Children's Mercy Hosp.*, 2019

WL 13207485, at *6 (W.D. Mo. May 17, 2019) (granting a motion to dismiss where "there are no assertions showing [d]efendant's Notice of Privacy Practices, which is posted on its website, created a contractual relationship between Plaintiff and Defendant"); *Landale Signs and Neon, Ltd. v. Runnion Equip. Co.*, 2016 WL 7409916, at *7 (N.D. Ill. Dec. 22, 2016) (granting a motion to dismiss and holding that "[a] 'meeting of the minds' is a fundamental prerequisite to a claim for breach of implied contract"); *see also iMotorsports, Inc. v. Vanderhall Motor Works, Inc.*, 2022 IL App (2d) 210785, ¶¶ 32–33 (same). In short, "a conclusory allegation that there was an agreement is not sufficient to suggest that [the plaintiff] and [the defendant] had the necessary mutual assent and formed an agreement concerning [a term that was allegedly breached]." *Vann v. Dolly, Inc.*, 2019 WL 1785589, at *3 (N.D. Ill. Apr. 24, 2019) (citation and quotation omitted).

Second, Plaintiff does not allege the existence of any consideration, let alone adequate consideration, which would create an implied contractual obligation. In an attempt to manufacture a contractual obligation, Plaintiff points to preexisting legal obligations created by HIPAA and the Illinois Medical Patients' Rights Act ("MPRA"). (Ex. 1 ¶¶ 109–11.) However, "where a party does what it is already legally obligated to do, there is no consideration because there has been no detriment." *Johnson v. Maki & Assocs., Inc.*, 682 N.E.2d 1196, 1199 (Ill. App. Ct. 1997). In other words, "valid consideration, on the part of *both parties*, is one of the essential requirements for the formation of a contract, and" such "consideration cannot flow from an act performed pursuant to [a] preexisting legal duty . . . ." *Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*, 83 N.E.3d 1027, 1044 (Ill. App. Ct. 2017) (emphasis in original). Thus, the obligation to comply with HIPAA or the MPRA is not adequate consideration to create an implied contract. *See J.R. v. Walgreens Boots Alliance, Inc.*, 2021 WL 4859603, at *5 (4th Cir. Oct. 19, 2021) (noting that a defendant's notice of privacy policy "merely informs patients of what it is 'required by law' to do and

'provide[s] notice of [defendant's] "legal duties and privacy practices with respect to"'" personal identifying information); *Archey*, 2022 WL 3543469, at *3 (holding "that an independent statutory duty does not mean that a contractual obligation exists because [the defendant] would be bound by the statute, regardless of contract"); *In re: Mednax Servs., Inc.*, 603 F. Supp. 3d at 1122 ("Because [d]efendants are required by law to adhere to HIPAA without receiving any consideration from [p]laintiffs or any other patient, these provisions cannot create contractual obligations.").

In a further attempt to manufacture a contractual obligation,[6] Plaintiff cites *Geisberger v. Willuhn* in the Amended Complaint for the flawed proposition that an implied duty of confidentiality, "akin to an implied contract," is present in every healthcare provider and patient relationship. (Ex. 1 ¶ 102.) Plaintiff's reliance on *Geisberger* should be rejected for several reasons.

As an initial matter, the Illinois Appellate Court in *Geisberger* affirmed the trial court's dismissal of the plaintiff's breach of implied contract claim. 390 N.E.2d 945, 948 (Ill. App. Ct. 1979). Moreover, the *Geisberger* analysis of the breach of implied contract claim is limited to a scant one paragraph, where the Court affirmed dismissal because disclosing the plaintiff's name did not constitute a disclosure of his "mental or physical condition." *Id*. Finally, Plaintiff's allegation that HIPAA and the MPRA create implied contractual obligations is directly contradicted by the Illinois Appellate Court's holding in *Johnson*, some 18 years after *Geisberger*. *See Johnson*, 682 N.E.2d at 1199-1200 (overturning the trial court and finding that the

[6] Although not referenced in Plaintiff's breach of implied duty claim, earlier in the Amended Complaint Plaintiff makes a passing reference to an alleged statement by UCMC regarding the "Student Wellness Center" Notice of Privacy Policies. (Ex. 1 ¶ 34.) To the extent Plaintiff relies on this allegation as a basis for an implied contractual obligation, such an argument fails as outlined above. *Austin-Spearman*, 119 F. Supp. 3d at 11–12.

"cancellation agreement lacked consideration and was therefore invalid"). "Plaintiff cannot create a private right of action for violations of HIPAA by recasting her claims as common law, implied contract claims." *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017); *K.A.*, 2019 WL 13207485, at *6 ("A preexisting legal obligation or duty [created by HIPAA] does not constitute valid consideration."); *see also Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 575 (N.D. Ill. 2020) (noting that neither HIPAA nor the MPRA "provide a private right of action").

Third, Plaintiff does not properly allege actual monetary damages as required to state a claim for breach of an implied contract. *See Moyer v. Michaels Stores, Inc.*, 2014 WL 3511500, at *7 (N.D. Ill. July 14, 2014) (dismissing a breach of implied contract claim where the plaintiffs failed to plead actual economic damages). Plaintiff claims three damage types: (i) loss of royalty because she is entitled to part of the "revenue" or "value" UCMC allegedly received (Ex. 1 ¶¶ 115(a), (b)); (ii) that she overpaid (*id.* ¶ 115(c) (alleging Plaintiff did not receive "the full value of the medical services for which [she] paid")); and (iii) "emotional harm" (*id.* ¶ 115(d)). None of Plaintiff's theories have merit.

Plaintiff's royalty claim fails because no Illinois court has awarded a reasonable royalty for breach of contract. Courts uniformly find that "an estimated reasonable royalty is not an appropriate theory" for damages in a contract case absent a patent, copyright infringement, or trade secret claim (none of which are present here). *See e.g. Innovation Ventures, LLC v. Nutrition Sci. Labs., LLC*, 912 F.3d 316, 346 (6th Cir. 2018); *see also Dinerstein*, 484 F. Supp. 3d at 592 (rejecting a royalty based theory and finding that the plaintiff "has not plausibly alleged that he has any such [intellectual property] right in his" personal health information). Plaintiff's overpayment theory also fails because a plaintiff is not allowed to seek recovery for "overpayment"

while at the same time seeking actual damages for breach of contract. Under Illinois law, "the alternative remedies of restitution and damages" are "facially inconsistent," *MC Baldwin Fin. Co. v. Dimaggio, Rosario, & Veraja, LLC*, 845 N.E.2d 22, 23 (Ill. App. Ct. 2006), because an "action for restitution generally requires rescission and disaffirmance of the contract," *id*. at 33, but an "action for damages is consistent with affirmation of the contract," *id*. (internal and external citations omitted).[7] Finally, Plaintiff's "emotional harm" theory fails because Illinois law does not recognize emotional distress damages for breaches of contract, "except where the breach was wanton or reckless and caused bodily harm, or where defendant had reason to know, when the contract was made, that its breach would cause mental suffering for reasons other than mere pecuniary loss." *Parks v. Wells Fargo Home Mortg., Inc.*, 398 F.3d 937, 940-41 (7th Cir. 2005) (quotation omitted). Plaintiff makes no such allegations here, and her overall failure to plead viable damages is fatal to her breach of implied duty claim. *See Moyer*, 2014 WL 3511500, at *7 (holding that a plaintiff must allege "actual monetary damage" to plead a viable breach of implied contract claim under Illinois law); *In re Ill. Bell Tel. Link-Up II*, 994 N.E.2d 553, 558 (Ill. App. Ct. 2013) ("Damages are an essential element of a breach of contract action and a claimant's failure to [plead or] prove damages entitles the defendant to judgment as a matter of law.").

[7] Other courts have found an "overpayment" damages theory to be insufficient. *See Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 13 (D.D.C. 2019) (citations and quotation marks omitted) (rejecting the plaintiffs' theory that they were denied the benefit of their bargain by "broadly alleg[ing] that some indeterminate amount of their health insurance premiums went towards providing data security" and "alleg[ing] only in a conclusory fashion that the services they received were of a diminished value") (citations omitted); *In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C. 2014) ("To the extent that Plaintiffs claim that some indeterminate part of their premiums went toward paying for security measures, such a claim is too flimsy to support standing. . . . Plaintiffs have not alleged facts that show that the market value of their insurance coverage (plus security services) was somehow less than what they paid. Nothing in the Complaint makes a plausible case that Plaintiffs were cheated out of their premiums.").

### C. **The Invasion of Privacy—Intrusion Upon Seclusion Claim Fails Because Plaintiff Does Not Allege Offensive Prying or That She Has Experienced Anguish and Suffering**

The elements of an intrusion upon seclusion claim in Illinois are: "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004). The core of this tort is "the offensive prying into the private domain of another." *Lovgren v. Citizens First Nat'l Bank*, 534 N.E.2d 987, 989 (Ill. 1989); *see also Black v. Wrigley*, 2017 WL 8186996, at *12–13 (N.D. Ill. Dec. 8, 2017) (dismissing an intrusion upon seclusion claim because the plaintiff did not allege that the defendant "engaged in prying of that sort"). Plaintiff's invasion of privacy claim fails for at least two reasons.

First, Plaintiff concedes that she voluntarily and knowingly provided her medical information to UCMC while receiving medical treatment. (Ex. 1 ¶ 57.) This concession is fatal to Plaintiff's claim. A defendant cannot be liable for disregarding, invading or otherwise intruding upon a person's privacy rights where, as here, the plaintiff voluntarily provided the information. *See Kurowski*, 2023 WL 2349606, at *9 (dismissing intrusion upon seclusion claim based upon "voluntary communications with defendant that were allegedly disclosed."); *Johnson v. Northshore Univ. Healthsys., Healthport, Inc.*, 2011 WL 10069086, at *4–5 (Ill. App. Ct. Mar. 31, 2011) (affirming dismissal of intrusion upon seclusion claim where the plaintiff voluntarily supplied information to health care provider, which in turn disclosed health information to a third party); *Harman v. Gist*, 2003 WL 22053591, at *7 (N.D. Ill. Sept. 2, 2003) (dismissing an invasion of privacy claim where the plaintiff voluntarily left a voice message which was transcribed and shared); *Dwyer v. Am. Express Co.*, 652 N.E.2d 1351, 1354 (Ill. App. Ct. 1995) (affirming dismissal of invasion of privacy claim and stating "[w]e cannot hold that a defendant has

committed an unauthorized intrusion by compiling the information voluntarily given to it and then renting its compilation"); *Miller v. Motorola, Inc.*, 560 N.E.2d 900, 904 (Ill. App. Ct. 1990) (dismissing an invasion of privacy claim because the plaintiff voluntarily provided the information that was disseminated).

With no intrusion into her private affairs, Plaintiff attempts to shoehorn a claim based on the alleged *disclosure* of her personal information by UCMC. However, as with Plaintiff's ECPA claim, the mere alleged disclosure of information does not give rise to an intrusion upon seclusion claim. *See Kurowski*, 2023 WL 2349606, at *9 ("[D]isclosures of private information do not support a claim for unauthorized intrusion.") (citations omitted); *Lovgren*, 534 N.E.2d at 989 ("The basis of the tort is not publication or publicity."); *Thomas*, 998 F.2d at 452 ("[A] plaintiff fails to state a claim for invaded seclusion if the harm flows from publication rather than the intrusion."); *Russell v. Am. Broad. Co., Inc.*, 1995 WL 330920, at *8 (N.D. Ill. May 31, 1995) (dismissing an intrusion upon seclusion claim where the alleged harm resulted from "the publication" of the film and "not the filming itself"); *Angelo*, 2016 WL 640525, at *5 (dismissing intrusion upon seclusion claim because the plaintiffs pled that publication of allegedly private conversations caused their injury, not the prying itself).

Second, and again, Plaintiff fails to properly allege that she suffered any damages as a result of UCMC's purported intrusion. Instead, Plaintiff alleges the same three damages theories she asserts in her breach of implied duty of confidentiality claim. (*Compare* Ex. 1 ¶¶ 115(a)-(d), *with* ¶¶ 127(a)-(d).) Plaintiff's reliance on these damage theories reveals a fundamental misunderstanding of the intrusion upon seclusion claim, which requires that "the alleged damages must flow from the intrusion, not the later publication." *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 597 (N.D. Ill. 2021). Plaintiff's alleged damages here instead all tie to

UCMC's purported failure to keep Plaintiff's information confidential, and not to any *intrusion* by UCMC into Plaintiff's private affairs. *See Heffron v. Green Tree Servicing, LLC*, 2016 WL 47915, at *6 (N.D. Ill. Jan. 5, 2016) (dismissing intrusion upon seclusion claim for failure to state a claim and noting the plaintiff did not plausibly allege how intrusion caused anguish and suffering).

## VI. CONCLUSION

For all of the foregoing reasons, Defendant University of Chicago Medical Center respectfully submits that this Court should grant its Motion and dismiss Plaintiff's first amended class action complaint as to it, with prejudice.

Respectfully submitted,

UNIVERSITY OF CHICAGO MEDICAL CENTER

By: */s/ Joseph A. Strubbe*
One of Its Attorneys

Joseph A. Strubbe
Chad A. Schiefelbein
Zachary J. Watters
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

Dated: April 10, 2023

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ryan F. Stephan
James B. Zouras
Mohammed A. Rathur
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
Phone: (312)233-1550
Fax: (312)233-1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
mrathur@stephanzouras.com

Lauren R. Goldman
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Phone: (212) 351-4000
lgoldman@gibsondunn.com

Matthew L. Kutcher
Cooley LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
Phone: (312) 881-6500
Fax: (312) 881-6598
mkutcher@cooley.com

on April 10, 2023

*/s/ Joseph A. Strubbe*
Joseph A. Strubbe