**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| SOPHIA HARTLEY, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br>v.<br><br>UNIVERSITY OF CHICAGO MEDICAL CENTER and META PLATFORMS, INC.,<br><br>Defendants. | Case No. 1:22-cv-05891<br><br>The Honorable Harry D. Leinenweber |

**<u>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

Sophia Hartley ("Plaintiff") respectfully submits the following Memorandum in Opposition to the Motion to Dismiss filed by University of Chicago Medical Center ("Defendant" or "UCMC") [Doc. 39].

## I. INTRODUCTION

This case is about Defendant's astonishing breach of its patients' privacy. Despite the long-standing prohibitions against disclosing a patient's private health information to third parties, UCMC deployed an invisible tracking tool on its patient portals and other web properties to reveal its patients' identities, intercept the content of their healthcare related communications, and disclose this information to Facebook for its own commercial benefit. To remedy this patently illegal conduct, Plaintiff has filed this class action on behalf of herself and other patients who communicated with Defendant about their personal health information on Defendant's web properties. This is not a case where Plaintiff has presented threadbare allegations that leave Defendant or the Court guessing about the basis, nature, or substance of her claims. Plaintiff's First

Amended Complaint ("Am. Compl.") includes detailed, extensive factual allegations describing plausible claims for violation of the Electronic Communications Privacy Act ("ECPA") 18 U.S.C. § 2510 *et seq*., breach of fiduciary duty, and invasion of privacy. Am. Compl. ¶¶ 27-59, 70-129 [Doc. 33]. These allegations, taken together and viewed under the applicable standards, are more than adequate to survive Defendant's Motion. Accordingly, each of Defendant's arguments for dismissal of the First Amended Complaint must be rejected.

## II. RELEVANT BACKGROUND

Defendant University of Chicago Medical Center operates a non-profit hospital network and maintains various web properties for the purpose of communicating with patients. UCMC encourages its patients, which number in the thousands, to provide their protected health information ("PHI") through its web properties to communicate with their providers, schedule appointments, request information about specific conditions and treatments, and to otherwise support Defendant's provision of healthcare to patients. Am. Compl. ¶¶ 27-33. Of course, there is nothing wrong with providing a secure portal through which patients can engage in sensitive communications with medical providers about their health. But as the Amended Complaint alleges, and Defendant does not deny, UCMC secretly deploys third-party computer code from Facebook called a "Pixel" that surreptitiously discloses its patients' PHI without written consent or authorization. *Id*. ¶¶ 9, 11-15.

A Facebook Pixel is an invisible snippet of code that corporate entities like UCMC can insert on the "back end" of their websites to collect data about which pages users view, which links users click, and what content users access. *Id.* ¶¶ 13, 42-43. UCMC designed its Facebook Pixel to capture both the "characteristics" of individual patients' communications with UCMC's web properties (*i.e*., their IP addresses, Facebook ID, cookie identifiers, device identifiers and account

numbers) and the "content" of these communications (*i.e.*, the URLs, buttons, pages, and tabs they click and view). *Id*. ¶¶ 14, 42-43. All of these data points have long been considered individually identifiable health information ("IIHI")[1] as a matter of law under the Health Insurance Portability Protection Act ("HIPAA"). 45 C.F.R. § 164.514. Every time a patient communicates with Defendant's web properties by clicking links and viewing a corresponding webpage, UCMC, unbeknownst to the patient, intercepts the content of the communication, links it to the specific patient's identity, and transmits the data to Facebook to analyze for its own commercial use. Am. Compl. ¶¶ 14-15, 42-45, 49-51. Thus, UCMC discloses to Facebook the precise healthcare for which a specific, identified patient is requesting information. UCMC discloses its patients' protected health information despite its false and empty representations of confidentiality to Plaintiff and the class members, including its false claims that "[UCMC] is committed to protecting the confidentiality of your medical information," and "[UCMC] will not disclose [its patients'] health information for purposes other than your treatment without your prior written consent." Am. Compl. ¶¶ 32, 34.

## III. LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint, not decide the merits of the case. *Derfus v. City of Chicago*, 42 F. Supp. 3d 888, 893 (7th Cir. 2014). For purposes of a motion to dismiss, the Court accepts "as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff." *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017). Courts must deny a defendant's motion to dismiss pursuant to Rule 12(b)(6) if the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

[1] Individually identifiable health information" is explicitly included within HIPAA's definition of "protected health information." *See* 45 CFR § 160.103.

(2007)). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("plaintiff must give enough details about the subject-matter of the case to present a story that holds together").

## IV. ARGUMENT

### A. The Complaint Pleads a Plausible Claim Against Defendant Under The "Criminal Or Tortious" Exception To The ECPA.

To state a claim under the ECPA, Plaintiff must allege that UCMC: "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *In re Google Inc. Cookie Placement Consumer Priv. Litig*., 806 F.3d 125, 135 (3d Cir. 2015), *quoting In re Pharmatrak, Inc. Privacy Litig.,* 329 F.3d 9, 18 (1st Cir. 2003), *citing* 18 U.S.C. § 2511(1)(a).[2] Plaintiff has pleaded facts satisfying each of these elements.

Defendant challenges only the second element of Plaintiff's ECPA claim, (*i.e.,* that it "intercepted" the contents of covered communications). Broadly, Plaintiff's First Amended Complaint meets this challenge through clear and specific allegations that Defendant installed a Facebook Pixel on its website to intercept and disclose to Facebook the contents of electronic communications containing statutorily protected health information. Am. Compl. at ¶¶ 14-16. Although Defendant may have been an intended recipient of these communications, its knowing disclosure to Facebook of protected health information is, as expressly provided by the statute, a crime under 42 U.S.C. § 1320(d)(6), so it is liable for unlawful interception under the ECPA's

[2] Plaintiff does not intend to pursue a claim under ECPA § 2511(3)(a) at this time.

"criminal or tortious" exception. Accordingly, Plaintiff has pled facts that state a plausible ECPA claim.

Defendant emphasizes the obvious; that Plaintiff intended for UCMC to receive the communications at issue. But this unremarkable fact does not immunize it from ECPA liability. Because Plaintiff alleges that UCMC intercepted her communications for the purpose of committing a criminal act, it remains liable under the "criminal or tortious exception" of the ECPA *regardless* of whether Plaintiff intended to convey the information to Defendant. *See* 18 U.S.C. § 2511(2)(d); Am. Compl. ¶ 18. Conduct like the kind perpetrated by UCMC is exactly why the exception exists. UCMC can be prosecuted directly under the HIPAA (42 U.S.C. § 1320(d)(6)) for knowingly disclosing its patients' protected health information to Facebook by using the Facebook Pixel to intercept the contents of its patients' communications. Am. Compl. ¶¶ 9, 14-15, 35. Thus, although UCMC is a party to the communication, it is still liable under the ECPA because it intercepted communications with the purpose of committing a criminal act.

Defendant grossly misstates the pleading requirements for the "criminal or tortious purpose" exception to the ECPA. Plaintiff is not required to plead that the purpose of *her communications* was illegal or tortious.[3] Def.'s Mem. at 8. Rather, courts have correctly interpreted the "criminal or tortious purpose" provision in § 2511(2)(d) to require "sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie*

[3] Defendant cites no relevant authority to explain why the criminal or tortious exception does not apply to Plaintiff's ECPA claim. Instead, UCMC merely string-cites cases setting forth the legal standard and makes the undisputed, though irrelevant, observation that, "***[p]roviding medical care*** is neither illegal nor tortious, and Plaintiff does not (and cannot) allege otherwise." Def.'s Mem. at 8 (emphasis added).

*Placement Consumer Priv. Litig.*, 806 F.3d at 145 (emphasis in original, quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)). Plaintiff's allegations easily meet this low bar.

UCMC does not dispute that it disclosed its patients' PHI to Facebook for commercial marketing purposes without HIPAA consent. Nor could it, given that the Facebook Pixel it deployed on its website is designed to generate profits from commercial marketing.[4] Am. Compl. ¶¶ 13-15, 43-48, 52. UCMC's tacit admission is significant because it is a federal crime to "knowingly" disclose "individually identifiable health information" to third parties.[5] 42 U.S.C. § 1320(d)(6). Plaintiff plainly alleges that UCMC knowingly deployed the Facebook pixel to intercept and disclose its patients protected health information to benefit financially from the targeted advertising and information services that arise from use of the Pixel. Am. Compl. ¶¶ 35, 48. Further, Plaintiff has more than adequately pleaded that Defendant intercepts and discloses individually identifiable health information, and thus, violates HIPAA by disclosing such information. HIPAA defines IIHI as:

> any information, including demographic information collected from an individual, that— (A) is created or received by a health care provider . . . and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and— (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

42 U.S.C. § 1320(d)(6).

---

[4] *See* https://www.facebook.com/business/tools/meta-pixel.

[5] Notably, "covered entities . . . may be prosecuted directly under 42 U.S.C. § 1320d-6" and "the 'knowingly' element of the offense set forth in that provision requires only proof of knowledge of the facts that constitute the offense." *www.justice.gov/sites/default/files/olc/opinions/attachments /2014/11/17/-hipaa_final.htm.*

The patient health information UCMC discloses undoubtably qualifies as IIHI. Plaintiff alleges that when a patient communicates with Defendant (a health care provider), the Facebook Pixel identifies the individual, intercepts the contents of the communication (*i.e.* the links and pages the patient clicks and views), then transmits the data to Facebook. Am. Compl. ¶¶ 11-15. Thus, for example, UCMC notifies Facebook that a specific patient has viewed pages related to cancer treatments, clicked on a specific provider's profile, and scheduled an appointment. Therefore, UCMC may be prosecuted criminally because the data it discloses is received by a health care provider, identifies the individual, and is related to their past, present, or future physical or mental health or condition, their receipt of health care, and/or their payment for that care, conduct which is unequivocally a crime under 42 U.S.C. § 1320(d)(6). *Id.* at ¶ 4.

Finally, UCMC does not appear to challenge, that Plaintiff has sufficiently alleged that its criminal conduct is "independent from the intentional act of recording." *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 145. The ECPA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510 (4). HIPAA defines "disclosure" as "the release, transfer, provision of access to, or divulging in any manner of information outside the entity holding the information." 45 C.F.R. § 160.103. Defendant does not violate HIPAA by *acquiring* the contents of the communications on its web properties. Rather, UCMC violates HIPAA when it uses the Facebook Pixel to *disclose* its patients' communications to Facebook, thereby divulging its patients' protected health information for its own commercial benefit. Am. Compl. at ¶ 45. As Plaintiff alleges, when a patient communicates with Defendant's web properties by clicking links and viewing pages, Defendant "*intercepts*…communications containing personally identifiable patient information and [PHI]," then "*transmits* and *discloses*… the

contents of their communications," to Facebook. Am. Compl. at ¶ 14. Thus, while the two events (interception and disclosure) occur simultaneously, Defendant's conduct in disclosing its patients' PHI is independent from its conduct in intercepting it, and therefore, falls squarely within the ECPA's criminal exception to the party exception.

To the extent Defendant claims it cannot face liability because "UCMC cannot intercept communications to which it is a party," Defendant misrepresents Plaintiff's allegations, ignores the text of the ECPA, and disregards authority which is directly on point. Def.'s Mem. at 4. As described above, UCMC intercepts its patients' communications, as defined by the ECPA, because it acquires the contents of its patients' communications through the Facebook Pixel that UCMC installed on its web properties. Am. Compl. ¶¶ 13-15, 45. Defendant's own authority and the text of the ECPA support this interpretation. *See In re Google Inc. Cookie Placement Consumer Privacy Litigation* 806 F.3d at 144 n. 80 ("As § 2511(2)(d) contemplates that a 'party' to a communication can 'intercept' it, we are led to believe that the present version of the Wiretap Act gives 'intercept' a broader connotation than 'the ordinary meaning of 'intercept' ... [which] is 'to stop, seize, or interrupt in progress or course before arrival.' (collecting cases and authorities) … We will not, therefore, adopt the defendants' other alternative argument, which is that the plaintiffs' Wiretap Act claim should fail for want of an 'interception.').; *see also Caro v. Weintraub,* 618 F.3d 94, 97–98 (2d Cir. 2010) (finding that a party to a communication can intercept the communication if it clandestinely records a conversation with the intention to commit a tort or other crime with the intercepted communication); *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 110-111 (D. Conn. 2014), *aff'd sub nom. Williams v. Affinion Group, LLC*, 889 F.3d 116 (2d Cir. 2018) (ruling the plaintiffs had "sufficiently alleged violations of the ECPA," against a party to the communications that intercepted the contents of the communications).

Accordingly, Plaintiff states a viable claim under section 2511 of the ECPA and Defendant's motion should be denied.

**B. The Complaint Pleads a Plausible Breach of Defendant's Implied Duty of Confidentiality.**

UCMC has miscast Plaintiff's claim of breach of implied duty of confidentiality as a breach of an implied contract. Def.'s Mem. at 11. Throughout her First Amended Complaint, Plaintiff has repeatedly alleged UCMC, as a healthcare provider, breached its *fiduciary duty* to keep its patients' PHI confidential unless authorized to make disclosures by its patients. Am. Compl. ¶¶ 2, 9, 48, 105-116. The physician-patient duty of confidentiality is well-established in Illinois, where physicians are obligated to "safeguard patient confidences" and patient "disclosures are to be kept confidential to the greatest possible degree." *San Roman v. Children's Heart Ctr. Ltd.*, 352 Ill. Dec. 357, 361(Ill. App. Ct. 1st Dist., Dec. 23, 2010) *citing Petrillo v. Syntex Laboratories, Inc.*, 148 Ill.App. 3d 581, 499 N.E.2d 952, 102 Ill. Dec. 172 (1986). "No authority may seriously dispute that physicians owe a fiduciary duty to their patients." *Abbott v. Church*, 288 Ill. 91, 97, 123 N.E. 306, 308 (1919).

A claim for breach of fiduciary duty must allege two elements: (1) a fiduciary relationship, and (2) a breach of the duties imposed as a matter of law as a result of that relationship. *Layne v. Feda*, 2018 IL App (2d) 170924-U, at ¶ 39 *citing Miller v. Harris*, 2013 IL app (2d) 20512, ¶ 21. In addition to the established physician-patient duty, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the United States Department of Health and Human Services ("HHS") create national standards to protect the confidential patient information at issue in this case. Am. Compl. ¶ 3-4. Specifically, under 45 C.F.R. §§ 160, 164, healthcare providers are

not to "disclose personally identifiable patient information, PHI[6] … for marketing purposes without the patient's express written authorization." *Id*. Additionally, the HHS bulletin cited in Plaintiff's Amended Complaint was issued to remind covered entities, like UCMC, of their preexisting duties and obligations under HIPAA, stating that, "regulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules." *Id*. at ¶¶ 16-17. The HHS bulletin does not change any existing rule or impose any new obligation on HIPAA-covered entities. Instead, it reminds these entities of their long-standing obligations by referring to guidance and rules that have been in place for decades.[7]

Not only is UCMC engaged in the exact conduct prohibited by HIPAA and HHS, by installing the Facebook Pixel on its web properties, designing the Pixel to capture both the "characteristics" and the "content" of its patients' communications with their doctors, and transmitting the data to Facebook to analyze for its own commercial use without the knowledge or consent its patients, UCMC, at the same moment, breaches its fiduciary duty of confidentiality as a healthcare provider to its patients. Am. Compl. ¶¶ 2, 9, 14-15, 42-45, 48, 49-51, 105-116. Further, Plaintiff specifically alleges that she used UCMC's web properties (including the Student Wellness portal and MyChart) to schedule appointments, view her medical test results, access her doctor's notes, communicate her medical questions with her doctor and nurse, review medications she was

[6] Recently, a federal court found the health information at issue in this case was protected by HIPAA. *Doe v. Meta*, 2022 WL 17869218, at *8-9 (N.D. Cal. Dec. 21, 2022) (finding that HIPAA protects patient-status, rejecting application of *Smith v. Facebook*, and finding that "Meta has not established consent to the conduct at issue.").

[7] *See.* HHS.gov, *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html ("it has always been true that regulated entities may not impermissibly disclose PHI to tracking technology vendors").

prescribed, and make payments for such medical services. *Id*. at ¶ 57. UCMC intercepts and discloses the contents of all these communications to Facebook. *Id.* at ¶ 11.

What's more, UCMC knew of its responsibility to maintain its patients' confidentiality and even made express promises to Plaintiff and its other patients, which have now been revealed to be a sham, to uphold its duty of confidentiality in its different web properties:

- UCMC states, "it will not disclose [its patients'] health information for purposes other than your treatment without prior written consent." Am. Compl. ¶ 34.
- UCMC states it, "is committed to protecting the confidentiality of your medical information" and "[UCMC] has taken steps to make all information received from our online visitors as secure as possible against unauthorized access and use." *Id*. at ¶ 32.
- UCMC states, "by law, [UCMC] must keep [its patients'] PHI private and secure" and that UCMC "will get [its patients'] written permission before [UCMC] shares [its patients'] Highly Confidential (private) information." *Id*. at ¶ 30.

As such, UCMC, as a healthcare provider, unquestionably was aware that it owes a fiduciary duty to Plaintiff and its patients to keep their medical information and PHI secure. UCMC breached this fiduciary duty by knowingly deploying the Facebook Pixel and other third-party web beacons and tracking pixels on its web properties that caused the contemporaneous unauthorized interception and transmission of communications containing PHI and the precise content of patient communications with UCMC to Facebook whenever a patient uses UCMC's web properties. Am. Compl. ¶ 35. In other words, UCMC understood and acknowledged its duty to keep its patients' PHI confidential, yet it still knowingly gave that PHI to Facebook without its patients' written permission in breach of its fiduciary duty of confidentiality.

### C. The Complaint Pleads a Plausible Invasion of Privacy Claim.

Under Illinois law, a plaintiff may sue for an intrusion upon seclusion by pleading the following four elements: "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a

reasonable person;[8] (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Spiegel v. McClintic*, 916 F.3d 611, 619 (7th Cir. 2019), *citing Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 1st Dist. Jun. 22, 2004).[9] Defendant offers three arguments against this claim. Def.'s Mem. at pp. 17-19.

**i. Plaintiff Voluntarily Disclosed Her PHI to UCMC, Not Facebook.**

Plaintiff had a reasonable expectation of privacy that her healthcare provider would keep her PHI confidential. *Id*. ¶¶ 8, 24, 55-57, 119. Defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion by disclosing her private healthcare information to Facebook. That Plaintiff voluntarily and knowingly provided her PHI to UCMC is beside the point.

UCMC, a hospital, provided Plaintiff, a patient, with medical treatment since at least 2019. Am. Comp. ¶¶ 24, 55-57. Further, UCMC created and offered its various web properties—-including MyChart and Student Wellness—to provide Plaintiff and its other patients a convenient method to communicate with UCMC health professionals regarding their medical treatment,

[8] UCMC does not contest the "highly-offensive or objectional" nature of its conduct because it cannot. Plaintiff has brought this action to redress Defendant's highly-offensive practice of: 1) placing the Facebook Pixel code on its web properties that intercepts both the characteristics and contents of communications about Plaintiff and other patients' medical conditions, concerns, symptoms, appointments, treatments, medications, bills; 2) disclosing this data to Facebook; and 3) putting this data to commercial uses financially benefitting both UCMC and Facebook without providing any notice to, or receiving consent from Plaintiff and other patients of UCMC. Am. Compl. ¶¶ 9, 11-15, 28-29, 34, 42-43, 49-51.

[9] Courts around the country have found that wiretap violations give rise to intrusion upon seclusion claims. *See LeCrone v. Ohio Bell Tel. Co.*, 201 N.E.2d 533 (Oh. App. 1963) (telephone co. liable for invasion of privacy by assisting husband by placing tap on wife's phone); *Hoskins v. Howard*, 971 P.2d 1135 (Id. 1998) (violation of state wiretap law gave rise to intrusion claim); *Clayton v. Richards*, 47 S.W.3d 149 (Tex. App. 2001) (finding actionable intrusion where unlawful wiretap alleged); *Nader v. Gen. Motors Corp.*, 25 N.Y.2d 560 (1970) ("[T]o the extent the two challenged counts charge it with wiretapping and eavesdropping, an actionable invasion of privacy has been stated."); *Souder v. Pendleton Detectives*, 88 So.2d 716 (La. App. 1956) (actionable invasion of privacy where trespass alleged); *Latture v. Emmerling* (Mich. App. 2013) (actionable intrusion where defendant obtained access to email by "illegally" accessing school computer system); *Billings v. Atkinson*, 489 S.W.2d 858 (Tex. 1973) (adopting tort of intrusion in a wiretap case); *Ruzicka Elec. & Sons v. IBEW*, 427 F.3d 511 (8th Cir. 2005) (trespass gives rise to intrusion claim); *Harkey v. Abate*, 346 N.W. 74 (Mich. App. 1983) (installation of viewing device actionable).

diagnoses, prescriptions, or any other confidential health information. *Id*. ¶¶ 8, 24, 55-57. UCMC, as a healthcare provider, acknowledged and explicitly promised that it would keep its patients' PHI "private and secure," represented that its MyChart patient portal "provides secure online access to portions of your medical records," stated that "[UCMC] is committed to protecting the confidentiality of [its patients'] medical information," and further promised that it "will not disclose [its patients'] health information for purposes other than your treatment without your prior written consent." *Id*. ¶¶ 27-35.

At no point did Plaintiff ever provide permission in any form, let alone written informed consent, to allow UCMC to collect and disclose her PHI to third parties such as Facebook. When UCMC installed the Facebook Pixel on its web properties, thus permitting Facebook to intercept *every communication* Plaintiff made with her health care providers, it unquestionably invaded the secluded, virtual space that Plaintiff understood she had to communicate her private PHI. UCMC invited Facebook into this space and facilitated its eavesdropping into Plaintiff's communications without Plaintiff's knowledge or consent. UCMC's suggestion that Plaintiff consented to the disclosure of her PHI to Facebook by "voluntarily" communicating with UCMC is akin to suggesting that if you invite a handyman into your home, and unknown to you, he plants a listening device while there, you have therefore consented to the installation of that listening device. The Court must reject Defendant's absurd reasoning.

Defendant's authority is readily distinguishable. In *Kurowski v. Rush Sys. for Health*, the Court viewed the plaintiff's intrusion upon seclusion allegations as intrusions "made by third parties" and that the "voluntary communications with defendant" could not be intrusions by Rush because the plaintiff intended those communications to reach Rush. 22CV5380, 2023 WL 2349606, at *26 (N.D. Ill. Mar. 2, 2023). Here, Plaintiff has specifically pleaded that she intended

and reasonably believed her communications were private and directed *only* to UCMC– not to other third parties. Further, and as detailed below, Plaintiff repeatedly alleged UCMC's *contemporaneous* interception and disclosure of Plaintiff's private communications to Facebook – are what constitute the *intrusion* upon her seclusion. Am. Compl. ¶¶ 9, 11, 35, 45-46. Nowhere in her Amended Complaint does Plaintiff allege she "volunteered" to share her information with Facebook or other third parties.

Despite a specific prohibition against citing it[10], Defendant relies upon an unpublished Illinois Appellate Court opinion, *Johnson v. Northshore Univ. Healthsys.* In any event, this case is wholly inapposite and actually supports Plaintiff. In *Johnson*, the Court dismissed the intrusion upon seclusion claim because it determined the hospital's production of all the plaintiff's medical records, outside of the scope of the plaintiff's release, "was an inadvertent error," and therefore was not an offensive prying. No. 1-10-0399, 2011 WL 10069086, at *12 (Ill. App. Ct. 1st Dist. Mar. 31, 2011). Here, there is no "inadvertent" or "erroneous" interception or disclosure of Plaintiff's PHI. Rather, Plaintiff alleges that UCMC intentionally and knowingly intercepted and disclosed the contents of her communication to Facebook. Am. Compl. ¶¶ 14-15, 42-45, 49-51, 59, 71-72, 80-85, 125.

In *Harman v. Gist*, the plaintiff—a tenured professor that was on probation for repeatedly harassing and threatening his colleagues—filed a complaint alleging various privacy violations against his former employer and others. 02CV6112, 2003 WL 22053591, at *1 (N.D. Ill. Sept. 2, 2003). The court dismissed the plaintiff's intrusion upon seclusion claim because it determined the recording of the plaintiff's voicemail message left on the defendant's phone was not unauthorized because it was made voluntarily and there was not enough of a "discomfort caused by the intrusion

[10] "An order entered under subpart (b) or (c) of this rule is not precedential except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case …" Ill. S. Ct. R. 23.

itself." *Id*. at *19-20, *citing Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993). Unlike the plaintiff's allegations in *Harman*, UCMC's decision to install computer code on its various web properties to collect and disclose its patients' PHI was made without their knowledge or consent and unquestionably caused significant discomfort. The surreptitious nature of UCMC's conduct constitutes "highly offensive" prying under Illinois law. *See Johnson v. K Mart Corp.*, 311 Ill. App. 3d 573, 578 (1st Dist. 2000) (holding the defendant intruded upon the employees' seclusion, even though they willingly provided personal details to the investigators …"); *Burns v. Masterbrand Cabinets, Inc.*, 369 Ill. App. 3d 1006, 1012 (4th Dist. 2007) (private investigator investigating the plaintiff's workers' compensation claim intruded upon the plaintiff's seclusion when he entered the plaintiff's home under false pretenses and used a hidden camera to record him). Here, Plaintiff alleged UCMC encouraged her and other patients to use their supposedly secure web properties to communicate their PHI to UCMC, yet UCMC failed to inform or receive written authorization from Plaintiff before intercepting and disclosing their PHI to Facebook. Am. Compl. ¶¶ 10, 25, 58, 118-125.

In *Dwyer v. Am. Express Co.,* the dispute concerned credit card companies that used cardholder information to "create a list of cardholders who have certain shopping tendencies" to sell to advertisers. 273 Ill. App. 3d 742, 747 (1st Dist. 1995). The court affirmed the dismissal of the plaintiffs' intrusion upon seclusion claim only because the credit card companies did *not* give the advertisers the cardholder information they used to make the lists. *Id*. However, the court implied that if the credit card companies *had disclosed cardholders' sensitive information*, they would have intruded upon the cardholders' seclusion. *Id*. ("Defendants rent names and addresses after they create a list of cardholders who have certain shopping tendences; they are not disclosing financial information about particular cardholders … Thus, we hold that the alleged actions do not

constitute unreasonable intrusion into the seclusion of another."). Here, Plaintiff *has* alleged that UCMC intercepted and disclosed its patients' sensitive personal health information, not health "tendencies" or even aggregated data. Specifically, Plaintiff has alleged UCMC intercepted and disclosed to Facebook anytime Plaintiff scheduled appointments, viewed her test results, accessed her doctor's notes, messaged her doctors and nurses, reviewed medications, and even made payments for medical services which constitute sensitive information sufficient for an intrusion upon seclusion claim. Am. Compl. ¶¶ 24, 27-28, 35.

Finally, in *Miller v. Motorola, Inc.*, the court dismissed an employer's (not a healthcare provider's) disclosure to the plaintiff's co-workers that the plaintiff had a mastectomy because she had "voluntarily" provided information to her employer. 202 Ill. App. 3d 976, 981 (1st Dist. 1990) As discussed more fully above, healthcare providers owe a strict fiduciary duty of confidentiality to their patients not to disclose any sensitive health information without their patients' express written authorization. *See* 45 C.F.R. §§ 160, 164. As such, *Miller*'s holding has no relevance to the present case as UCMC is held to a higher standard than a simple employer-employee relationship.

**ii. Plaintiff Alleged the Contemporaneous Unauthorized Interception and Transmission of Her PHI.**

UCMC argues that Plaintiff's claim fails because Plaintiff's allegations of UCMC's conduct amount to "mere alleged disclosure of her personal information." Def.'s Mem. at 18. Not so. A cursory reading of the First Amended Complaint indicates Plaintiff has alleged UCMC's *contemporaneous unauthorized interception and transmission* of her PHI to Facebook, not just disclosure. Am. Compl. ¶¶ 9, 11, 17, 35, 45, 80-84.

The cases Defendant cites are unavailing as they all involved allegations that the *publication* of private information was what caused the injury, and not the prying itself. *See*

*Kurowski*, 2023 WL 2349606 at *9; *Lovgren v. Citizens First Nat'l Bank*, 126 Ill. 2d 411, 417 (Ill. 1989); *Thomas*, 998 F.2d at 452; *Russell v. Am. Broad. Co., Inc.*, 94CV5768, 1995 WL 330920, at *8 (N.D. Ill. May 31, 1995); *Angelo v. Moriarty*, 15CV8065, 2016 WL 640525 (N.D. Ill. Feb. 18, 2016). This is not what Plaintiff has alleged. Here, whenever Plaintiff asked her doctor a question related to her health through UCMC's web properties, UCMC simultaneously intruded on and disclosed that information to Facebook. As such, Plaintiff has clearly alleged more than just mere disclosure constituting an invasion upon her seclusion.

**iii. Plaintiff Has Adequately Pleaded Damages.**

Finally, UCMC argues that Plaintiff has failed to properly allege she suffered any damages as a result of UCMC's conduct because Plaintiff's alleged damages "all tie to UCMC's purported failure to keep Plaintiff's information confidential." Def.'s Mem. at 18-19. Defendant's argument only tells half the story. Plaintiff alleged she suffered damages resulting from UCMC's willful and reckless decision to deploy tracking pixels on its web properties which caused the simultaneous interception and transmission of Plaintiff's sensitive PHI to Facebook and other third parties. Am. Compl. ¶¶ 115(d), 122-128. As such, Plaintiff's damages flow from UCMC's *intrusion* into its confidential communications with Plaintiff and *simultaneous disclosure* to Facebook without Plaintiff's knowledge or written authorization.

"Under Illinois law, a plaintiff must prove actual injury in the form of, for example, medical care, an inability to sleep or work, or a loss of reputation and integrity in the community in order to recover damages for torts such as intrusion upon seclusion." *Spiegel v. McClintic*, 916 F.3d 611, 619 (7th Cir. 2019), *citing Schmidt v. Ameritech Ill.*, 329 Ill. App. 3d 1020 (Ill. App. Ct. 1st Dist. Mar. 29, 2002). Here, Plaintiff alleged she has suffered actual injury as a direct and proximate result of UCMC's intrusion upon her seclusion in that: UCMC used Plaintiff's PHI for its own

commercial and financial benefit without providing the value of these benefits to Plaintiff; UCMC failed to provide Plaintiff with the full value of its medical services for which Plaintiff paid which included the duty to maintain the confidentiality of her PHI; and finally, UCMC's conduct has exposed Plaintiff's personal, private healthcare information that Plaintiff intended to keep private which has caused Plaintiff embarrassment, humiliation, emotional harm, and distress. Am. Compl. ¶ 127.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss must be denied. In the alternative, Plaintiff respectfully requests leave to file an amended complaint, curing any deficiencies this Court so identifies.

Date: May 25, 2023

Respectfully Submitted,

*<u>/s/ Mohammed A. Rathur</u>*
Ryan F. Stephan
James B. Zouras
Teresa M. Becvar
Mohammed A. Rathur
Michael J. Casas
**STEPHAN ZOURAS, LLP**
222 W. Adams Street, Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
tbecvar@stephanzouras.com
mrathur@stephanzouras.com
mcasas@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on May 25, 2023, I filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

*/s/ Mohammed A. Rathur*