IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOPHIA HARTLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF CHICAGO MEDICAL CENTER and META PLATFORMS, INC.,<br><br>Defendants. | No. 1:22-cv-05891 |

**DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

## I. INTRODUCTION

The arguments raised in Plaintiff's Memorandum in Opposition ("Opposition" or "Opp.") to UCMC's Motion to Dismiss suffer from the same defects as the allegations in her Amended Complaint. Both disregard the plain language of statutes and authoritative caselaw that mandate dismissal of her action. UCMC's Motion to Dismiss established that Plaintiff's claims each stem from her core allegations that she voluntarily provided information directly to UCMC.[1] Recognizing that defect, Plaintiff's Opposition takes improper liberties with language and logic, seeking to change the meaning of words and phrases to convert conclusory allegations regarding the *disclosure* of information into claims regarding the improper *collection* of information. As

[1] Capitalized terms not defined have the meaning set forth in UCMC's Memorandum of Law in support of its Motion to Dismiss ("Memo.").

outlined below, Plaintiff's efforts are futile and her Amended Complaint against UCMC should be dismissed with prejudice.

## II. ARGUMENT

### A. Count I of the Amended Complaint (Wiretap Act Violation) Should Be Dismissed

Plaintiff's Opposition fails to directly address the glaring deficiencies in her amended ECPA claim.[2] Instead, Plaintiff repeatedly asserts, without support, the legal conclusion that UCMC "intercepted" the communications between Plaintiff and UCMC. (Opp. at 4–8.) Plaintiff's failure to provide any supporting analysis of her own contradictory factual allegations underscores the futility of her ECPA claim.

Conceding, as she must, that UCMC was a party to her communications (Opp. at 5), Plaintiff attempts to salvage her ECPA interception claim under 18 U.S.C. § 2511(1) by invoking a narrow exception to the general rule that a party to a communication cannot intercept that communication. In order to do so, Plaintiff ignores the plain language of the ECPA and improperly focuses on UCMC's alleged *disclosure* of her information and not, as the narrow exception requires, on the *purpose* of UCMC's supposed *interception*.

"To make out a valid interception claim under the [ECPA], a plaintiff must allege that the defendant 'acqui[red]' the contents of his or her electronic communications." *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 411 (N.D. Ill. 2012). Under Plaintiff's theory, UCMC's purported interception occurred when it acquired the contents of the electronic communications –

---

[2] In a footnote, Plaintiff states she is "at this time" abandoning her Count I claim under ECPA Section 2511(3)(a), which pertains to those who provide electronic communications service to the public. (Opp. at 4 n.2.) By failing to respond substantively to UCMC's argument seeking dismissal of this claim (Memo. at 9-11), Plaintiff has forfeited any claim under Section 2511(3)(a) and the Court should dismiss that claim with prejudice. *See Lee v. Ne. Ill. Reg'l Commuter R.R.*, 912 F.3d 1049, 1054 (7th Cir. 2019) (claims are subject to dismissal "when a party fails to develop arguments related to a discrete issue or when a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.").

e.g., the moment that UCMC either received a communication from Plaintiff or UCMC sent a communication to Plaintiff. In other words, UCMC's alleged "interception" is synonymous with the communications themselves, since UCMC was a party to the communications.

Seeking to avoid the legion of authority offered by UCMC that establishes there can be no unlawful interception by a party to the communication (Memo. at 4-6), Plaintiff attempts to squeeze her ECPA claim into a narrow exception to that rule, which could only apply if the communications between Plaintiff and UCMC were "*intercepted for the purpose* of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d) (emphasis added); *see also In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001) ("Section 2511(2)(d)'s legislative history and caselaw make clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort."); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) ("Alleged interceptions fall within the tort or crime exception only where the 'primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously.'") (quotation omitted). As a result, the only relevant issue here is identifying the *primary purpose* of UCMC communicating with Plaintiff, conduct Plaintiff characterizes as an "interception." The purpose of those communications, made abundantly clear by Plaintiff's allegations in her Amended Complaint, is UCMC's provision of medical care to Plaintiff. (Ex. 1 ¶¶ 27, 31, 33, 57.)

Because the provision of medical care is neither a crime nor a tort (nor alleged to be one), Plaintiff seeks to broaden the ECPA's narrow exception by wholly ignoring the primary purpose test and arguing that UCMC's alleged subsequent *disclosure* of her information was illegal or

tortious. (Opp. at 7–8.) While UCMC denies engaging in any illegal or tortious conduct,[3] Plaintiff's argument misses the point in *two* critical respects. First, simply, the Amended Complaint nowhere alleges that UCMC's primary purpose (or any purpose for that matter) in communicating with Plaintiff was so UCMC could then disclose those communications to commit a crime or tort against Plaintiff. Just the opposite. Plaintiff's allegations make clear that UCMC acquired the contents of the electronic communications (i.e., plaintiff's medical information) for the *primary purpose* of providing medical care. There is no basis for the Court to find that UCMC sent and received communications with Plaintiff regarding her medical appointments, test results, doctor's notes, and medications (Ex. 1 ¶ 57) for the primary purpose of committing a crime or tort by allegedly disclosing that information to Meta.

Second, because her ECPA disclosure claim requires, in the first instance, that an interception has already taken place (18 U.S.C. § 2511(1)(c)), Plaintiff argues with perfect circular illogic (Opp. at 4–5) that UCMC should be deemed to have illegally *intercepted* the communications by virtue of a subsequent *disclosure* of those communications. Plaintiff's argument simply ignores the statutory framework that sets forth separate and distinct violations for interception (18 U.S.C. § 2511(1)(a)) and disclosure after interception (18 U.S.C. § 2511(1)(c)), each of which requires the occurrence of an interception. The Court should reject Plaintiff's attempt to allege an illegal interception by pointing to an alleged illegal disclosure, for which the law requires the occurrence of an illegal interception in the first instance.

[3] Plaintiff repeatedly argues that UCMC does not dispute or contest her allegation that it disclosed patients' PHI to Facebook for commercial marketing purposes without HIPAA consent. (Opp. at 6, 7, 12 n.8.) Plaintiff's statement is factually inaccurate and legally improper. UCMC has not had an opportunity to contest any allegations. As Plaintiff should know, at the motion to dismiss stage, UCMC cannot contest Plaintiff's allegations. *See Young v. Will Cnty. Dep't. of Pub. Aid*, 1987 WL 28262, at *1 (N.D. Ill. Dec. 14, 1987) ("For purposes of [a Rule 12(b)(6) motion], the defendants cannot attempt to refute the complaint's allegations or present a different set of allegations.")

Plaintiff's repeated citation to *In re Google Inc. Cookie Placement Consumer Privacy Litig.* is odd and unavailing. (Opp. at 5-8.) In that case, the Third Circuit affirmed the district court's dismissal of an ECPA claim, holding that "the defendants were parties to any communications that they acquired." *In re Google Inc. Cookie Placement*, 806 F.3d 125, 145 (3d Cir. 2015). The Third Circuit rejected plaintiff's argument that the exception for "criminal or tortious" purpose was fulfilled by the mere act of intercepting the communications. *Id*. at 144–45. Thus, far from supporting Plaintiff's novel (and unalleged) ECPA theory, the Third Circuit's analysis undermines it.

**B. Count IV of the Amended Complaint (Breach of Implied Duty of Confidentiality) Fails under Either a Contractual or Fiduciary Theory**

There can be no doubt that, as pled in the Amended Complaint, Plaintiff's "Breach of Implied Duty of Confidentiality" claim is based on an implied contract theory. Indeed, Plaintiff plainly alleges that the "duty of confidentiality" at issue is "akin to an implied contract" (Ex. 1 ¶ 107) and that "Plaintiff and Class members performed all required conditions of their implied contracts with UChicago." (*Id*. ¶ 113.) Plaintiff even cites caselaw in her Amended Complaint, *Geisberger v. Willuhn*, in which the Illinois Appellate Court affirmed the trial court's dismissal of a breach of implied contract claim. 390 N.E.2d 945, 948 (Ill. App. Ct. 1979). Now, faced with the numerous legal and factual deficiencies outlined in UCMC's Memo that eviscerate her breach of implied contract theory, Plaintiff improperly seeks to amend her allegations to recast her breach of implied duty claim as one based on a fiduciary duty instead. (Opp. at 9.) Plaintiff's claim fails for at least *three* reasons.

First, Plaintiff has forfeited her implied breach of contract theory by wholly ignoring and failing to respond to UCMC's arguments. *See Lee*, 912 F.3d at 1054 (claims are subject to dismissal "when a party fails to develop arguments related to a discrete issue or when a litigant

effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."); *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss . . . ."). Plaintiff's breach of implied contract theory should be dismissed with prejudice on this basis alone.

Second, Plaintiff cannot amend her Amended Complaint in a brief opposing UCMC's motion to dismiss. Indeed, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 502 F. Supp. 3d 1320, 1329 (N.D. Ill. 2020) (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). The Court should reject the different legal theory Plaintiff now prefers, which improperly asks the Court to ignore the allegations and caselaw citations contained in the Amended Complaint.

Third, even if the Court were to entertain Plaintiff's breach of fiduciary duty theory (it should not), Plaintiff has still not pled a viable claim.[4] Plaintiff has not cited a single case in which a claim for breach of fiduciary duty against a physician was even alleged. Although Illinois courts have recognized the existence of a fiduciary relationship between a physician and patient in the context of medical treatment, the Illinois Supreme Court has noted that "Illinois courts have never recognized a cause of action for breach of fiduciary duty against a physician." *Neade v. Portes*, 739 N.E.2d 496, 500 (Ill. 2000); *see also Jezek v. Carecredit, LLC*, 2011 WL 2837492, at *3 (N.D. Ill. July 18, 2011) (holding same). Accordingly, based on established precedent, Plaintiff's breach of fiduciary duty theory should be rejected.

[4] Plaintiff recites only a partial list of the elements of a breach of fiduciary duty claim (Opp. at 9), omitting the critical element that the alleged "breach proximately caused the injury of which the [plaintiff] complains." *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 433 (Ill. 2012) (*citing Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000)).

However, Plaintiff's novel theory purports to go even further. Despite having no authority to support a breach of fiduciary duty claim against a *physician*, Plaintiff asserts that *UCMC*, a not-for-profit academic medical health system, owes Plaintiff a fiduciary duty and is subject to a claim for breaching that duty by engaging in an alleged "commercial" transaction with Meta. (Ex. 1 ¶ 18.) Illinois case law provides no support for this theory either. "[W]hile Illinois law does recognize a physician-patient fiduciary relationship, there is no support for the contention that this duty extends to *commercial* transactions." *See Jezek*, 2011 WL 2837492, at *3 (emphasis in original). Instead, the physician-patient fiduciary relationship is limited to medical treatment. *Id*. (finding that there is no authority which holds that "in the context of the physician-patient relationship, transactions outside of medical treatment, [. . .], are subject to the fiduciary relationship"). Plaintiff does not allege that her medical treatment was inadequate or constituted a breach of any fiduciary duty. Indeed, Plaintiff does not even allege what medical care she received or which physician(s) provided it. Instead, Plaintiff only alleges that, separate and apart from her medical care, UCMC supposedly breached a fiduciary duty that it owed to her by engaging in "commercial" transactions with Meta. (Ex. 1 ¶ 18.) Even if this theory had been alleged in the Amended Complaint, it would fail as a matter of law. *Jezek*, 2011 WL 2837492, at *3.

Plaintiff ignores all of this on-point authority and instead relies on a single inapposite case, *San Román v. Children's Heart Ctr. Ltd.*, for the proposition that disclosures made to a *physician* "are to be kept confidential to the greatest possible degree." (Opp. at 9.) The *San Román* decision addressed the irrelevant issue of whether or not the plaintiff's treating physician could testify at trial as a defense expert witness in a medical malpractice case. 954 N.E.2d 217, 218 (Ill. App. Ct. 2010). The case did not involve any claim for breach of a fiduciary duty and does not support

Plaintiff's contention that such a claim against a physician, let alone a health system such as UCMC, is viable under Illinois law.[5] Plaintiff also alleges that the legal obligations of HIPAA, as recognized on UCMC's web properties (*see* Opp. at 10-11 (citing Ex. 1 ¶ 30)) and in a Department of Health and Human Services bulletin (*id.*), creates a fiduciary duty on the part of UCMC (apparently akin to that of a physician providing medical treatment to a patient). As noted in UCMC's memorandum of law, however, these allegations are an inartful attempt to improperly "create a private right of action for violations of HIPAA by recasting [Plaintiff's] claims as common law" causes of action. *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017) (dismissing common law claims based on alleged breach of personal data by a healthcare facility). Tellingly, Plaintiff simply ignores this argument and supporting authority in her Opposition.

### C. <u>Count V (Invasion of Privacy—Intrusion upon Seclusion) Is Not a Viable Cause of Action and Should Accordingly Be Dismissed</u>

Plaintiff's Opposition reveals a fundamental misstatement of the nature of an intrusion upon seclusion claim in *two* critical respects. First, Plaintiff argues that UCMC "committed an unauthorized intrusion or prying into the plaintiff's seclusion *by disclosing* her private healthcare information to Facebook." (Opp. at 12) (emphasis added). Plaintiff is wrong. It is black-letter law that an alleged disclosure of information cannot form a basis for an intrusion upon seclusion claim. *See Kurowski v. Rush Sys. for Health,* 2023 WL 2349606, at *9 (N.D. Ill. Mar. 3, 2023) ("[D]isclosures of private information do not support a claim for unauthorized intrusion.") (citations omitted); *Lovgren v. Citizens First Nat'l Bank*, 534 N.E.2d 987, 989 (Ill. 1989) ("The

[5] Plaintiff also cites to *Abbott v. Church*, 123 N.E. 306, 308 (Ill. 1919) for the holding that "[n]o authority may seriously dispute that physicians owe a fiduciary duty to their patients." (Opp. at 9.) However, the *Abbott* court made no such finding and the purported quote does not appear in the court's opinion.

basis of the tort is not publication or publicity."); *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993) ("[A] plaintiff fails to state a claim for invaded seclusion if the harm flows from publication rather than the intrusion."). Instead, as outlined in UCMC's memorandum of law, the core of this tort is an intrusion, or "the offensive prying into the private domain of another." *Lovgren*, 534 N.E.2d at 989.

Similar to her circular argument on her ECPA claim, Plaintiff seeks to avoid this well-established law by arguing that UCMC's alleged *disclosure* to a third party is the equivalent of an *intrusion* upon her seclusion. (Opp. at 12, 16–17.) This argument is a nonstarter. *Black's Law Dictionary* defines "disclosure" as "to make (something) known or public." BLACK'S LAW DICTIONARY 583 (11th ed. 2019). The definition of "intrusion" is "a person's entering without permission" or "an invasion of another's person's seclusion." *Id*. at 986. These concepts are distinct and incompatible. *Matthews v. Polar Corp.*, 2023 WL 2599871, at *9 (N.D. Ill. Mar. 22, 2023) ("Words have meaning, and the ability to stretch the meaning of words has its limits. They do not have infinite pliability."). The act of invading another person's seclusion is wholly independent from revealing information to a third-party. This distinction is highlighted in Plaintiff's own allegations regarding her purported injury. Plaintiff does not allege that UCMC's possession of Plaintiff's medical information caused her any injuries. Nor could she. Instead, Plaintiff alleges that UCMC's "conduct in allowing *access to and disclosure* of" Plaintiff's medical information "*to unauthorized third parties* is such that it would cause serious mental injury, shame or humiliation to people of ordinary sensibilities." (Ex. 1 ¶ 126) (emphasis added). However, as another court in this district recently held under essentially identical allegations, because the "actual intrusion upon patients' seclusion, via interception of their communications, is carried out

by third parties" Plaintiff cannot state a viable intrusion upon seclusion claim against UCMC. *Kurowski*, 2023 WL 2349606, at *9.

Second, Plaintiff asserts that her decision to "voluntarily and knowingly" provide her medical information to UCMC "is beside the point" and does not mandate dismissal of her claim. (Opp. at 12.) Again, Plaintiff is incorrect. The caselaw cited by UCMC in its memorandum of law is clear — it is not possible to invade or otherwise intrude upon a plaintiff's privacy when, as here, he or she voluntarily provided the information. *Johnson v. Northshore Univ. Healthsys., Healthport, Inc.*, 2011 WL 10069086, at *4–5 (Ill. App. Ct. Mar. 31, 2011) (affirming dismissal of intrusion upon seclusion claim where the plaintiff voluntarily supplied information to health care provider, which in turn disclosed health information to a third party). (*See also* Memo. at 17–18 (citing additional cases).)

Plaintiff attempts to distinguish UCMC's caselaw by relying on immaterial factual distinctions and citing to *Johnson v. K Mart Corp*. and *Burns v. Masterbrand Cabinets, Inc.* for the dubious proposition that "highly offensive" prying can still occur even if a plaintiff voluntarily provides the information.[6] (Opp. at 13–16.) However, the *Johnson* and *Burns* decisions are

[6] Plaintiff also cites to numerous foreign cases for the misleading contention that "wiretap violations give rise to intrusion upon seclusion claims." (Opp. at 12 n.9.) As an initial matter, not a single one of Plaintiff's cases includes an ECPA claim, and, as shown, she has failed to state an ECPA claim here. Moreover, all of the cases were based on an actual intrusion into the plaintiffs' affairs, not voluntary communications between the plaintiffs and defendants which were allegedly disclosed. *See LeCrone v. Ohio Bell Tel. Co.*, 201 N.E.2d 533 (Oh. Ct. App. 1963) (husband spied on wife's telephone calls); *Hoskins v. Howard*, 971 P.2d 1135 (Idaho 1998) (deputy sheriff used police scanner to spy on neighbors); *Clayton v. Richards*, 47 S.W.3d 149 (Tex. App. 2001) (private investigator installed video cameras in husband's bedroom); *Nader v. Gen. Motors Corp.*, 255 N.E.2d 765 (N.Y. App. 1970) (defendant eavesdropped on private telephone conversation between plaintiff and third-party); *Souder v. Pendleton Detectives*, 88 So.2d 716 (La. Ct. App. 1956) (defendant private investigator trespassed to look into the windows of plaintiff's home); *Latture v. Emmerling*, 2013 WL 5225243 (Mich. Ct. App. Sept. 17, 2013) (defendants obtained unauthorized access to plaintiffs' private and password protected email account); *Billings v. Atkinson*, 489 S.W.2d 858 (Tex. 1973) (repairman placed wiretap to eavesdrop on private conversations to which he was not a party); *Ruzicka Elec. & Sons v. IBEW*, 427 F.3d 511 (8th Cir. 2005) (defendant investigator trespassed on plaintiffs' property to perform visual surveillance); *Harkey v. Abate*, 346 N.W. 74 (Mich. App. 1873) (defendant

limited to a narrow set of factual circumstances which are inapposite. In both cases the plaintiff was *deceived* into providing information to the defendants. *See Johnson*, 732 N.E.2d 1192, 1196 (Ill. App. Ct. 2000) (intrusion upon seclusion claim based on "placing private detectives, posing as employees, in the workplace to solicit highly personal information"); *Burns*, 874 N.E.2d 72, 74 (Ill. App. Ct. 2007) (claim based on entering into plaintiff's "home under the false pretense that [defendant] was looking for a missing juvenile."). As a result, in both cases there was a factual question as to whether the plaintiffs had actually provided information voluntarily, since the information was provided under false pretenses. Here, there are no similar allegations. Plaintiff alleges that she intentionally communicated with UCMC regarding her healthcare (Ex. 1 ¶ 57), because UCMC was Plaintiff's healthcare provider. (*Id*. ¶ 55; *see also* ¶ 57 (alleging that Plaintiff used UCMC's web properties "to schedule appointments, view test results, access her doctor's notes, message doctors and nurses, review medications, and make payments for medical services").) Whatever Plaintiff's vague, unsupported allusions to the "surreptitious nature of UCMC's conduct" may mean (Opp. at 15), it has nothing to do with UCMC improperly *obtaining* Plaintiff's medical information. At most, it can only refer to UCMC's alleged *disclosure* of Plaintiff's medical information, which cannot form the basis of an intrusion upon seclusion claim. *See, e.g., Kurowski*, 2023 WL 2349606, at *9.

## III. CONCLUSION

For all of the foregoing reasons, Defendant University of Chicago Medical Center respectfully submits that this Court should grant its Motion and dismiss Plaintiff's First Amended Class Action Complaint with prejudice.

---

premises-owner placed see through ceiling in women's restroom and utilized ceiling to observe plaintiff in restroom without her knowledge).

Respectfully submitted,

UNIVERSITY OF CHICAGO MEDICAL CENTER

By: * /s/ Joseph A. Strubbe*
One of Its Attorneys

Joseph A. Strubbe
Ryan S. Hedges
Zachary J. Watters
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

Dated: June 15, 2023

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ryan F. Stephan
James B. Zouras
Mohammed A. Rathur
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
Phone: (312) 233-1550
Fax: (312) 233-1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
mrathur@stephanzouras.com

Lauren R. Goldman
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Phone: (212) 351-4000
lgoldman@gibsondunn.com

Matthew L. Kutcher
Cooley LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
Phone: (312) 881-6500
Fax: (312) 881-6598
mkutcher@cooley.com

on June 15, 2023

*/s/ Joseph A. Strubbe*
Joseph A. Strubbe