IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOPHIA HARTLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF CHICAGO MEDICAL CENTER,<br><br>Defendant. | No. 1:22-cv-05891 |

**DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Ryan S. Hedges
Joseph A. Strubbe
Zachary J. Watters
Jason B. Sobelman
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

Dated: January 17, 2024

In support of its Motion to Dismiss (the "Motion") the second amended class action complaint (the "SAC") of Plaintiff Sophia Hartley ("Plaintiff"), Defendant University of Chicago Medical Center ("UCMC") states as follows:

## I. INTRODUCTION

The SAC is now Plaintiff's third attempt to allege claims against UCMC based on information that *Plaintiff voluntarily provided* to UCMC. Despite the voluntary nature of Plaintiff's disclosures, Plaintiff purports to state claims for: (i) violation of the Electronic Communications Privacy Act ("ECPA") 18 U.S.C. §§ 2510 *et seq*. (Count I) and (ii) "Breach of Implied Duty of Confidentiality" (Count II). The SAC fails entirely to cure the fatal defects of Plaintiff's prior attempts to allege these claims.

Instead, the majority of the "new" allegations contained in the SAC relate to non-party Meta Platform Inc. ("Meta") and often do not mention or reference UCMC or any alleged conduct on the part of UCMC at all. For some reason, Plaintiff simply copied and pasted the vast majority of her "new" allegations, *112 paragraphs in total*, directly from an existing complaint currently pending against Meta in a different case.[1] Scraping away Plaintiff's reproduction of the complaint against Meta, Plaintiff is left with the same three core legal deficiencies that doomed her prior complaints against UCMC.

[1] This Court previously severed Plaintiff's claims against Meta and transferred that action to the case pending against Meta in the Northern District of California, *In re: Meta Pixel Healthcare Litig.*, No. 3:22-cv-03580-WHO (N.D. Cal. Oct. 10, 2023). (Dkt. No. 30.) A comparison of the complaint filed against Meta in that action (Dkt. No. 335) (the "Meta Compl.") to Plaintiff's SAC filed against UCMC in this action (Dkt. No. 60) shows that 112 paragraphs of the SAC are either identical to allegations against Meta (*compare* Dkt. No. 60 ¶¶ 18, 20-22, 28-30, 32, 34-35, 42, 44-46, 48-49, 59, 85-86, 92, 100-01, 104, 106, 111, 123-24, 145, 184-85, 199, *with* the Meta Compl. ¶¶ 44, 46-48, 54-56, 58, 63-64, 71, 73-75, 77-80, 135, 145-46, 158, 180, 183-84, 193, 195, 226, 228-29, 258, 415-16, 430) or are substantially similar (*compare* Dkt. No. 60 ¶¶ 15, 19, 23-27, 31, 36-41, 43, 47, 51-53, 55, 58, 60-63, 64, 84, 87, 89-90, 93-94, 96-98, 102-03, 105, 107-08, 112, 125-29, 131-32, 134-40, 143, 146, 149, 151-52, 179-81, 189, 192-97, 203, 205, 208, *with* the Meta Compl. ¶¶ 41, 45, 49-53, 57, 65-70, 72, 76, 82-83, 85-86, 134, 136-39, 143-44, 147, 152-56, 160, 165, 170, 172-73, 191-92, 194, 196-97, 227, 230-34, 236-37, 239-41, 243-46, 256, 259, 264, 350-51, 365-67, 420, 423-28, 436, 441, 444).

*First*, Plaintiff's ECPA claim fails because she does not allege the *interception* of any information by UCMC, and instead relies on legally deficient allegations regarding the *disclosure* of information.

*Second*, both of Plaintiff's claims should be dismissed because she fails to allege that any of the purportedly disclosed information constitutes particular health or treatment information specific to her, as directed by this Court in its Order dismissing Plaintiff's first amended complaint.

*Finally*, Plaintiff's breach of the implied duty claim should be dismissed because no such duty exists under Illinois law.

Plaintiff now has had three chances to state a viable claim against UCMC. She cannot. The SAC should be dismissed with prejudice and Plaintiff should not be permitted a fourth bite at the apple. *See El-Bey v. Vill. of S. Holland*, 2012 WL 1658301, at *10 (N.D. Ill. May 11, 2012) (Leinenweber, J.) (dismissing with prejudice a second amended complaint where plaintiff "apparently paid no heed to [the] deficiencies" in the prior complaints).

## II. SUMMARY OF THE ALLEGATIONS AGAINST UCMC

Plaintiff alleges that she has been a patient of UCMC, an Illinois not-for-profit academic medical health system, since 2019. (Dkt. No. 60 ¶ 155.) According to Plaintiff, she has also been a "user" of various UCMC "web properties" which allow her to communicate with UCMC regarding her medical care. (*Id*. ¶¶ 4, 155.)

Plaintiff asserts that UCMC used various "Meta Collection Tools" on certain web properties in order to "transmit the content of [a patient and UCMC's] communications to Meta." (*Id*. ¶¶ 1, 5.) Specifically, Plaintiff alleges that the Meta Collection Tools on UCMC's web properties disclosed the following information to Meta: (1) information identifying Plaintiff (Dkt. No. 60 ¶¶ 157, 159, 161, 163, 164(g)-(i)); (2) the URLs Plaintiff visited associated with UCMC (*id*. ¶¶ 164(a), (c), 189(f)); (3) the names of the websites Plaintiff visited (*id*. ¶ 164(e)); (4) the

various button clicks Plaintiff engaged in while viewing the websites (*id*. ¶¶ 164(b), (d), 189(a)-(e)); and (5) whether Plaintiff had previously visited the website (*id*. ¶ 164(f)).

## III. PROCEDURAL BACKGROUND

On October 25, 2022, Plaintiff filed her original Complaint. (Dkt. No. 2.) On February 6, 2023, UCMC filed its motion to dismiss and supporting memorandum. (Dkt. Nos. 27-28.) On March 2, 2023, Plaintiff filed an agreed motion for leave to file her Amended Complaint. (Dkt No. 31.) On March 3, 2023, the Court granted Plaintiff's motion. (Dkt. No. 32.)

On March 3, 2023, Plaintiff filed her First Amended Complaint. (Dkt. No. 33.) On April 10, 2023, UCMC filed its motion to dismiss and supporting memorandum. (Dkt. Nos. 36, 39.) On November 8, 2023, the Court granted UCMC's motion and dismissed Plaintiff's ECPA and breach of implied duty claims, without prejudice, and Plaintiff's intrusion upon seclusion claim, with prejudice. (Dkt. No. 52.) On December 12, 2023, Plaintiff filed her SAC. (Dkt. No. 60.)

## IV. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of a complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plausibility standard is not met "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 678). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## V. ARGUMENT

### A. <u>The ECPA Count Should Be Dismissed Because UCMC Did Not Intercept Any Communications</u>

Plaintiff fails to state a violation of the ECPA, often referred to as the "Wiretap Act," which is designed to "protect against the unauthorized interception of electronic communications." *Ameritech Corp. v. McCann*, 297 F.3d 582, 583 (7th Cir. 2002) (quotation omitted). The ECPA makes it unlawful to "intentionally intercept[ ] [or] endeavor [ ] to intercept . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The ECPA also prohibits disclosure or use of the contents of an unlawfully intercepted communication. *Id*. § 2511(1)(c)-(d). Plaintiff's ECPA claim should be dismissed because she has again failed to allege that UCMC intercepted any communication.

Plaintiff has littered the SAC with over sixty-five references to the "disclosure" of various electronic communications. (*See, e.g.*, Dkt. No. 60 ¶ 33 ("UCMC *discloses* the content of the communication to Meta while the patient is exchanging the communication with UCMC's web properties.") (emphasis added)). But Plaintiff's emphasis on the alleged disclosure of various electronic communications completely misses the mark. In order to assert any claim under Section 2511(1), Plaintiff must first allege that UCMC "intercepted" an electronic communication.[2] *See* 18 U.S.C. § 2511(1)(c) (ECPA violation for a "disclosure" requires "the interception of a wire, oral, or electronic communication"); 18 U.S.C. § 2511(1)(d) (same); *see also Jurgens v. Build.com*, 2017 WL 5277679, at *4 (E.D. Mo. Nov. 13, 2017) ("interception is a necessary element for each type of violation" of the ECPA). Put simply, "there is a certain temporal sequence of events that

[2] "A plaintiff pleads a prima facie case under the [ECPA] by showing that the defendant '(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device.'" *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 135 (3d Cir. 2015) (quoting *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 18 (1st Cir. 2003)).

must occur before a person can be liable for disclosure or use." *Valentine v. WideOpen W. Fin., LLC*, 2013 WL 5423846, at *6 (N.D. Ill. Sept. 27, 2013). Plaintiff has not alleged (and cannot allege) that UCMC "intercepted" any electronic communication.

### 1. UCMC Cannot Intercept Communications to Which It Is a Party

ECPA Section 2511(2)(d) states that it is not unlawful for a person to intercept an electronic communication "where such person is a party to the communication." "Tautologically, a communication will always consist of at least two parties: the speaker and/or sender, and at least one intended recipient." *In re Google Cookie Placement*, 806 F.3d at 143 (affirming dismissal of ECPA claim against defendant advertising businesses because tracking cookies placed by defendants rendered them the intended recipient of the electronic transmission). Here, UCMC was unquestionably a party to the communications that Plaintiff claims were intercepted, as she alleges that she knowingly communicated with UCMC via the web properties. (Dkt. No. 60 ¶ 155.) Thus, Plaintiff's own allegations that the content of the communications related to her healthcare at UCMC (*id.*), and that UCMC was Plaintiff's healthcare provider (*id.*), are fatal to her claims.

The law is clear: UCMC cannot intercept communications for which it was the intended recipient. *See Allen v. Quicken Loans Inc.*, 2018 WL 5874088, at *3 (D.N.J. Nov. 9, 2018) ("section 2511(2)(d) makes the interception lawful when the person intercepting 'is a party to the communication or where one of the parties to the communication has given prior consent to such interception'") (quotation omitted). However, Plaintiff attempts to base her claim *exclusively* on communications for which UCMC was the intended recipient. Because UCMC "acted as no more than the second party to a communication. This is not an interception as defined by the [ECPA]." *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001); *Zak v. Bose Corp.*, 2020 WL 2762552, at *2 (N.D. Ill. May 27, 2020) ("A person who takes part in a conversation or whose presence is known to other participants is a party to the communication."); *In re*

*Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (holding that the ECPA "does not make it unlawful for a person to intercept . . . [an] electronic communication if the person is a party to the communication") (internal quotations and citations omitted).

**2. Plaintiff Has Not Alleged the Primary Purpose of UCMC's Alleged "Interception" Was Criminal or Tortious**

To be sure, the ECPA exemption afforded to a party-participant to a communication is not absolute. The ECPA provides that "a person who is a party to the communication . . . may intercept that communication as long as it is not 'for the purpose of committing any criminal or tortious act.'" *Zak*, 2020 WL 2762552, at *2 (quoting 18 U.S.C. § 2511(2)(d)). In order for the ECPA to apply to Plaintiff's alleged communications with UCMC, the *primary* purpose of the *interception* must be to commit a crime or tort. *See Angelo v. Moriarty*, 2016 WL 640525, at *5 (N.D. Ill. Feb. 18, 2016) (dismissing an ECPA claim where the plaintiff could not allege that a communication was intercepted for the purpose of violating the law or committing a tort); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (quoting *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 518 (S.D.N.Y. 2001)) (denying a motion for class certification and noting that "[a]lleged interceptions fall within the tort or crime exception only where the 'primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously.'"). Indeed, "Section 2511(2)(d)'s legislative history and caselaw make clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort." *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 515; *see also Thomas v. Pearl*, 998 F.2d 447, 451 (7th Cir. 1993) (holding that the plaintiff "must show that [the defendant] either intended to break the law or commit a tort against him in order to prove a violation of the federal statute").

According to Plaintiff, in allegedly "*disclosing* the content of Plaintiff's and the Class members' communications relating to [medical care], UCMC had a purpose that was tortious, criminal, and designed to violate state constitutional and statutory provisions." (Dkt. No. 60 ¶ 198) (emphasis added). Plaintiff makes a similar conclusory allegation with respect to UCMC's purported purpose regarding "consent provided by UCMC using the Meta Collection Tools." (*Id.* ¶ 203.)[3] Plaintiff's conclusory allegations are insufficient to trigger the narrow crime/tort exception for at least three reasons.

*First*, Plaintiff's allegations underscore a misapplication of the crime/tort exception. The SAC focuses on UCMC's alleged criminal or tortious purpose in purportedly *disclosing* certain communications. (*Id.* ¶ 198.) That is not the test. Instead, the proper test requires Plaintiff to allege UCMC's purpose in *intercepting* the communications was criminal or tortious. *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13; *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 518. In other words, Plaintiff must allege that when UCMC communicated with Plaintiff via its various web properties (the purported "interception"), UCMC's purpose was criminal or tortious. *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010) ("There is a temporal thread that runs through the fabric of the statute and the case law" which requires the defendant, at the time of the interception, to "intend to use the recording to commit a criminal or tortious act."). Plaintiff makes no such allegation.

[3] Plaintiff also alleges that the "Meta Collection Tools allow UCMC to intercept individually-identifiable health information from UCMC's web properties and monetize this information for its own financial gain." (Dkt. No. 60 ¶ 1.) To the extent Plaintiff relies on this allegation to satisfy the crime/tort exception, it is insufficient. As Plaintiff alleges, UCMC was an intended recipient of the communications at issue (Dkt. No. 60 ¶ 155) and thus did not need to utilize the Meta Collection Tools or any other instrumentality to "intercept" Plaintiff's health information. Moreover, multiple courts have held that if the purpose of a purported "interception" is financial gain, then the crime/tort exception does not apply. *See Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023).

The Seventh Circuit has explicitly rejected the argument that the crime/tort exception applies based on the criminal or tortious nature of a subsequent *disclosure* of allegedly intercepted information. In *Desnick v. American Broadcasting Companies*, the plaintiffs alleged that the defendants violated the ECPA when they dispatched undercover "test patients" equipped with concealed cameras to plaintiffs' ophthalmic clinics in order to investigate reports of plaintiffs performing unnecessary cataract surgery for money. 44 F.3d 1345, 1347-48 (7th Cir. 1995). The plaintiffs alleged that the defendants' conduct violated the ECPA, despite the defendants being parties to the recorded communications, because the result was the broadcast of an allegedly defamatory news report. *Id*. at 1353.

The *Desnick* court found the plaintiffs had adequately pled a claim for defamation, but affirmed the dismissal of the ECPA claim finding that the "defendants did not order the camera-armed testers into the Desnick Eye Center's premises in order to commit a crime or tort." *Id*. Instead, the purpose "was to see whether the [defendants'] physicians would recommend cataract surgery on the testers." *Id*. Similar to *Desnick*, UCMC did not communicate with Plaintiff in order to commit a crime or tort. Instead, according to Plaintiff's own allegations, the UCMC web properties were used for communications concerning Plaintiff's medical care. Specifically, Plaintiff alleges that the web properties allowed her to "schedule appointments, request information on specific medical services, view test results, access her doctor's notes, message her healthcare providers, review medications, and make payments for medical services." (Dkt. No. 60 ¶ 155.) Since the provision of medical care is neither criminal nor tortious, the narrow crime/tort exception does not apply.[4]

[4] This Court's ruling dismissing Plaintiff's first amended complaint, *Hartley v. Univ. of Chi. Med. Ctr.*, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023), relied, in part, on the holding in *Kurowski v. Rush System for Health*, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023). Since that time, the *Kurowski* court issued a new ruling which permitted the plaintiff to re-plead the ECPA claim. *See Kurowski v. Rush Sys. for Health*, 2023 WL

*Second*, even if Plaintiff's allegations regarding UCMC's "purpose" in allegedly *disclosing* the communications was the correct test for the crime/tort exception (it is not), her allegations are still insufficient. Plaintiff offers no factual support for her lone conclusory allegation that UCMC's "purpose" in disclosing the communications was criminal or tortious. (Dkt. No. 60 ¶ 198.) Bare legal conclusions are not entitled to the presumption of truth when weighing a motion to dismiss. *Minard v. Wal-Mart Stores, Inc.*, 2016 WL 9211678, at *2 (N.D. Ill. Apr. 12, 2016) ("Neither conclusory legal statements nor abstract recitations of the elements of a cause of action add to the notice that Rule 8 demands, so they do not help a complaint survive a Rule 12(b)(6) motion.").

*Third*, Plaintiff's allegations regarding specific statutes or common laws that were allegedly violated as a result of the disclosure are not relevant. (Dkt. No. 60 ¶¶ 198(a)-(g).) "[W]hether a tort was committed is irrelevant — the test is whether [the defendant] intended to commit a tort." *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018); *see also In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 519 (refusing to apply crime/tort exception and finding that "a culpable mind does not accompany every tortious act"). Put simply, even if a subsequent disclosure constituted a crime or tort (an allegation UCMC strongly disputes), more is required. *Cohen*, 2018 WL 3392877, at *4 (The "[plaintiff] fails to demonstrate that [defendants'] primary purpose *was to commit* a tort. Instead, he claims that [defendants'] conduct *amounted to* a tort.") (emphasis in original).

Plaintiff has failed to state a claim for an interception under the ECPA. Her allegations assert that UCMC was a party to the communications at issue. Those same allegations fail to show that UCMC's participation as a party to the communications was for any criminal or tortious

---

8544084 (N.D. Ill. Dec. 11, 2023). In reaching that outcome, the latest *Kurowski* ruling devotes a scant two paragraphs to the analysis of the crime/tort exception. *Id*. at *3. In that limited analysis, the *Kurowski* court failed to follow the binding Seventh Circuit holding in *Desnick*, and misapplied the crime/tort exception in any event. *Id*. (finding subsequent transmission of data for financial gain satisfies the crime/tort exception).

purpose. To the contrary, Plaintiff has alleged that the primary purpose of her communications with UCMC was medical care. Accordingly, Plaintiff's claim for violation of the ECPA fails.

### B. Both Counts Should Be Dismissed as Plaintiff Fails to Allege Any Particular Health or Treatment Information Specific to Plaintiff Was Disclosed

This Court's prior ruling set a clear standard for Plaintiff's third bite at the apple: to supply factual support for any claimed violation of the ECPA or breach of implied duty, Plaintiff must allege that "particular health or treatment information" specific to her was disclosed. *Hartley*, 2023 WL 7386060, at *2. The Court further held that the disclosure of mere "meta data" — i.e. "IP addresses, Facebook IDs, cookie identifiers, device identifiers and account numbers and the contents of the[] communications" including "URLs, buttons, pages, and tabs they click and view" is not sufficient and amounts to "an absolute dearth" of what is required. *Id*. Plaintiff's SAC fails to meet this standard.

In a superficial attempt to address this Court's prior ruling, the SAC pleads allegations of the manner in which Plaintiff used UCMC's web properties; her medical conditions, diagnoses and treatments; and certain of her prescribed medications. (Dkt. No. 60 ¶¶ 156-62.) However, Plaintiff *never* alleges that any of this information was disclosed. (*Id*.) As a result, none of these allegations are relevant. Instead, Plaintiff only alleges that five categories of information were disclosed: (1) information identifying Plaintiff (i.e. Plaintiff's IP address, Facebooks IDs, browser information, cookie identifiers, and device numbers) (Dkt. No. 60 ¶¶ 157, 159, 161, 163, 164(g)-(i)); (2) the URLs Plaintiff visited associated with UCMC (*id*. ¶¶ 164(a), (c), 189(f)); (3) the names of the websites Plaintiff visited (e.g. "Home") (*id*. ¶ 164(e)); (4) the various button clicks Plaintiff engaged in while viewing the websites (i.e. the "content" of the websites) (*id*. ¶¶ 164(b), (d), 189(a)-(e)); and (5) whether Plaintiff had previously visited the website (*id*. ¶ 164(f)). These allegations are just a very lengthy re-packaging of the same deficient allegations this Court

previously dismissed.[5] The SAC includes no allegations regarding disclosure of any "particular health or treatment information" of Plaintiff.

A brief analysis of the latest *Kurowski* decision (issued *before* the filing of the SAC) is instructive. Just as here, in *Kurowski*, the plaintiffs' prior versions of her complaint "plausibly alleged only the transmission of metadata to third parties" which the court found was not particular health or treatment information sufficient to state a claim. *Kurowski*, 2023 WL 8544084, at *2. However, the latest amended pleading in that case alleges that the defendant "transmitted the name and location of [plaintiff's] personal physician, as well as her physician's specialty." *Id*. at *3. The *Kurowski* court found this level of detail sufficient to state a claim under the ECPA. *Id*. Here, however, Plaintiff makes no such allegations *despite now having made three attempts to do so*. Plaintiff's deficient allegations regarding the alleged disclosure of her own medical information doom both Counts of the SAC. *Hartley*, 2023 WL 7386060, at *2; *see also Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2023 WL 7017734, at *3 (E.D. Pa. Oct. 10, 2023) (dismissing an ECPA claim where plaintiff failed to allege "that any specific test results, diagnoses, or sensitive messages were intercepted or improperly disclosed").

To the extent Plaintiff intends to argue that the disclosure of certain URLs is sufficient to constitute disclosure of "particular health or treatment information" of Plaintiff based on purported guidance from the Department of Health and Human Services ("HHS") and the Federal Trade Commission ("FTC"), this argument fails for at least three reasons. *First*, this Court has already

[5] Any argument that Plaintiff is entitled to conduct discovery with regard to any alleged disclosure of information should be rejected. Plaintiff has already conducted an investigation and now cannot credibly assert, after *three* deficient attempts to state a claim, that she requires discovery. "*Twombly* discourages correcting perceived informational asymmetry through discovery, which is the approach advocated by [Plaintiff]." *Padron v. Wal-Mart Stores, Inc.*, 783 F. Supp. 2d 1042, 1048 (N.D. Ill. 2011) (citation omitted); *see also TBS Grp., LLC v. City of Zion, Illinois*, 2017 WL 5129008, at *5 (N.D. Ill. Nov. 6, 2017) (conclusory allegations do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

ruled that the alleged disclosure of URLs is not sufficient to state a viable claim because any such purported disclosure does not include health or treatment information specific to Plaintiff. *Second*, the allegations regarding the statements made by HHS and the FTC (Dkt. No. 60 ¶¶ 134-40) can only be applied, at best, prospectively. *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979)); *see also Lincoln v. Vigil*, 508 U.S. 182, 197 (1993) (holding that general statements of policy are "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power") (internal quotations omitted). *Finally*, general policy statements, such as the statements by HHS and the FTC, "do not have the force and effect of law." *Chrysler Corp.*, 441 U.S. at 302 n.31.

### C. The Breach of Implied Duty of Confidentiality Claim Fails Because No Fiduciary Duty Exists with Regard to Commercial Transactions

Plaintiff's breach of confidentiality claim should be dismissed for at least two reasons. *First*, Plaintiff fails to adequately allege that "any particular health or treatment information disclosure specific as to" her has occurred (*see* § V(B) *supra*). That failure alone is fatal to her claim. *Second*, and more fundamentally, Plaintiff's recast "Implied Duty of Confidentiality" claim still fails because its foundation—an alleged fiduciary duty—is not recognized in Illinois law.

As an initial matter, despite making three attempts to state this claim, Plaintiff's legal theory supporting the purported "implied duty" remains unclear. Plaintiff has consistently alleged that "Plaintiff and Class members performed all required conditions of their implied contracts with UCMC." (Dkt. No. 60 ¶ 219; *see also* Dkt. No. 33 ¶ 113; Dkt. No. 2 ¶ 107.) However, Plaintiff entirely failed to address UCMC's previous arguments supporting dismissal of any implied contract claim, made in its motion to dismiss Plaintiff's first amended complaint, thereby waiving any contest of UCMC's arguments. (Dkt. No. 50 pp. 5-6.) Instead, Plaintiff attempted to amend her complaint in her response brief and asserted that her claim was actually based on a fiduciary

duty. (Dkt. No. 39 pp. 11-16; Dkt. No. 48 p. 9.) Plaintiff's SAC continues the confusion by also alleging, albeit exclusively in Plaintiff's deficient ECPA claim, that UCMC's conduct related to the use of the Meta Collection Tools constitutes a "breach of fiduciary duty." (Dkt. No. 60 ¶ 203(d).) Just as with Plaintiff's legally flawed implied contract theory,[6] Plaintiff's alternative confidentiality theory is not recognized under Illinois law.

"Illinois courts have not recognized a cause of action for breach of confidentiality for the unauthorized disclosure of a patient's medical information." *Kurowski v. Rush Sys. for Health*, 2023 WL 4707184, at *4 (N.D. Ill. July 24, 2023); *see also Kurowski*, 2023 WL 8544084, at *4 (holding same); *Dinerstein v. Google, LLC*, 73 F.4th 502, 516 n.4 (7th Cir. 2023) (affirming decision "not to recognize a novel claim for breach of medical confidentiality" under Illinois law). On this basis alone, Plaintiff's claim should be rejected. Illinois law has also refused to extend the concept of fiduciary duties in the medical context to create a right of action for disclosure of medical information.

Although Illinois courts have recognized the existence of a fiduciary relationship between a physician and patient in the context of medical treatment, the Illinois Supreme Court has noted that "Illinois courts have never recognized a cause of action for breach of fiduciary duty against a physician." *Neade v. Portes*, 739 N.E.2d 496, 500 (Ill. 2000); *see also Jezek v. Carecredit, LLC*, 2011 WL 2837492, at *3 (N.D. Ill. July 18, 2011) (holding same).

Despite having no authority to support a breach of fiduciary duty claim against a *physician*, Plaintiff goes even farther to assert that *UCMC*, a not-for-profit academic medical health system, owes Plaintiff a fiduciary duty and is subject to a claim for breaching that duty by engaging in an

[6] A fulsome analysis of the legal deficiencies contained Plaintiff's claims under an implied contract theory was previously provided to the Court in UCMC's prior motion to dismiss. (Dkt. No. 39 pp. 11-16.) To the extent Plaintiff attempts to flip-flop and revert back to her original implied contract theory, the prior arguments are equally applicable to the current version of Plaintiff's claim.

alleged "commercial" transaction with Meta. (Dkt. No. 60 ¶¶ 75-76, 221(i).) Illinois case law provides no support for this theory either. "[W]hile Illinois law does recognize a physician-patient fiduciary relationship, there is no support for the contention that this duty extends to *commercial* transactions." *See Jezek*, 2011 WL 2837492, at *3 (emphasis in original). Instead, the physician-patient fiduciary relationship is limited to medical treatment. *Id*. (finding that there is no authority which holds that "in the context of the physician-patient relationship, transactions outside of medical treatment, [. . .], are subject to the fiduciary relationship"). Plaintiff does not allege that her medical treatment was inadequate or constituted a breach of any fiduciary duty. Indeed, Plaintiff does not even allege which physician(s) provided her medical care. Instead, Plaintiff makes passing reference to various tests and medications she was allegedly prescribed (Dkt. No. 60 ¶¶ 158, 162) and, separate and apart from her medical care, Plaintiff alleges that UCMC supposedly breached a fiduciary duty that it owed to her by engaging in "commercial" transactions with Meta. (Dkt. No. 60 ¶¶ 75-76, 203(d), 221(i).) This theory fails as a matter of law. *Jezek*, 2011 WL 2837492, at *3.

In an attempt to invent a viable fiduciary duty claim, Plaintiff cites two cases, *Miles v. Farrell*, 549 F. Supp. 82 (N.D. Ill. 1982) and *Punski v. Karbal*, 2009 WL 196317 (N.D. Ill. Jan. 28, 2009) in the SAC for the flawed proposition that an action can be maintained for an alleged breach of the implied duty of confidentiality in every healthcare provider and patient relationship. (Dkt. No. 60 ¶ 212.) Plaintiff's reliance on *Miles* and *Punski* is misplaced. In *Miles* there was no claim for breach of fiduciary duty. Instead, consistent with the Illinois Supreme Court's holding in *Neade*, the *Miles* court merely found that the plaintiff's former treating physician could not be allowed to testify as an expert witness for the defense. 549 F. Supp. at 84-85 (finding physician had a "clear conflict of interest" which was not disclosed to his patient and prevented the physician

from testifying, but declining to analyze any alleged breach of the fiduciary duty of loyalty). In *Punski*, the court applied *New York law* and found that an allegedly unlicensed clinical professional counselor may have breached a fiduciary duty owed to a patient by disclosing treatment-related information to a third-party. 2009 WL 196317, at *5-6. However, as noted above, *Illinois law* does not recognize any such claim and thus, Plaintiff's reliance on *Punski* is misplaced. Neither case supports Plaintiff's contention that a claim for breach of fiduciary duty against a physician, let alone a health system such as UCMC, is viable under Illinois law.

Plaintiff also alleges that the legal obligations of Health Insurance Portability and Accountability Act ("HIPAA") and the Medical Patient Rights Act ("MPRA"), as recognized in UCMC's privacy policies (Dkt. No. 60 ¶¶ 213-17), create a fiduciary duty on the part of UCMC (apparently akin to that of a physician providing medical treatment to a patient). These allegations are an inartful and improper attempt to "create a private right of action for violations of HIPAA by recasting [Plaintiff's] claims as common law" causes of action. *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017) (dismissing common law claims based on alleged breach of personal data by a healthcare facility); *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 575 (N.D. Ill. 2020) (noting that neither HIPAA nor the MPRA "provide a private right of action").

## VI. CONCLUSION

For all of the foregoing reasons, Defendant University of Chicago Medical Center respectfully submits that this Court should grant its Motion, and dismiss Plaintiff's second amended class action complaint, with prejudice.

Respectfully submitted,

UNIVERSITY OF CHICAGO MEDICAL CENTER

By: */s/ Ryan S. Hedges*
One of Its Attorneys

Ryan S. Hedges
Joseph A. Strubbe
Zachary J. Watters
Jason B. Sobelman
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

Dated: January 17, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ryan F. Stephan
James B. Zouras
Mohammed A. Rathur
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
Phone: (312)233-1550
Fax: (312)233-1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
mrathur@stephanzouras.com

Lauren R. Goldman
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Phone: (212) 351-4000
lgoldman@gibsondunn.com

Matthew L. Kutcher
Cooley LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
Phone: (312) 881-6500
Fax: (312) 881-6598
mkutcher@cooley.com

on January 17, 2024

*/s/ Ryan S. Hedges*
Ryan S. Hedges