**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SOPHIA HARTLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>UNIVERSITY OF CHICAGO MEDICAL CENTER,<br><br>Defendant. | Case No. 1:22-cv-05891 |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Sophia Hartley ("Hartley" or "Plaintiff") respectfully submits the following Opposition to the Motion to Dismiss filed by University of Chicago Medical Center ("UCMC" or "Defendant") [Doc. 64].

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION ..... 1

II. RELEVANT BACKGROUND ..... 2

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 5

A. Plaintiff Pleads a Plausible Claim Against Defendant Under The ECPA ..... 5

1. Plaintiff Plainly Alleges That UCMC Intercepted Her Communications ..... 5

2. Plaintiff Clearly Alleges that UCMC Acted with a Criminal Purpose by Intentionally and Surreptitiously Disclosing Its Patients' Health Information to Meta ..... 6

3. Plaintiff Alleges That Her Particular Health and Treatment Information Was Disclosed to Meta. ..... 11

V. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .......... 7, 10

*Derfus v. City of Chicago*,
42 F. Supp. 3d 888 (7th Cir. 2014) .......... 4

Desnik v. American Broadcasting Companies,
44 F.3d 1345 (7th Cir. 1995) .......... 10

*Graf v. Zynga Game Network, Inc.* (*In re Zynga Privacy Litig.*),
750 F.3d 1098 (9th Cir. 2014) .......... 14

*Hartley v. Univ. of Chi. Med. Ctr.*,
2023 WL 7386060 (N.D. Ill. Mar. 3, 2023) .......... 12

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 5, 7, 14

*In re Google RTB Consumer Priv. Litig.*,
2022 WL 2165489 (N.D. Cal. June 13, 2022) .......... 14

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023) .......... 6

*In re Meta Pixel Healthcare Litig.*,
2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) .......... 13, 14

*In re Nickelodeon Consumer Priv. Litig.*,
2014 WL 3012873 (D.N.J. July 2, 2014) .......... 7

*In re Pharmatrak, Inc. Privacy Litig.*,
329 F.3d 9 (1st Cir. 2003) .......... 5

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) .......... 8

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) .......... 8, 13

*Platt v. Brown*,
872 F.3d 848 (7th Cir. 2017) .......... 4

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 8

*Sussman v. Am. Broadcasting Cos.,*
186 F.3d 1200 (9th Cir. 1999) .......... 7

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) .......... 5

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) .......... 5

**Statutes**

18 U.S.C. §§ 2511 *et seq* .......... 5, 6, 7, 14

42 U.S.C. § 1320(d)(6) .......... 7, 11, 12

**Regulations**

45 C.F.R. § 160.103 .......... 11

45 C.F.R. § 164.514 .......... 12

# I. INTRODUCTION

UCMC says it did nothing wrong when it repeatedly and surreptitiously disclosed its patients' identities and confidential HIPAA-protected medical information to the world's largest social media platform. Despite UCMC's promises to Plaintiff and its patients that this information would be viewed solely by their health care provider for medical treatment purposes, UCMC secretly deployed, for profit, third-party tracking technology which sent its patients' healthcare communications to Meta Platforms, Inc. ("Meta"). Because Defendant cannot offer a *bona fide* health-related or ethical justification for its behavior, Defendant is left trying to hide behind a series of factually-hollow and legally-irrelevant arguments, including that; Plaintiff has failed to allege UCMC intercepted any electronic communication, Def.'s Mem. at 4-5 [Doc. 65]; UCMC did not act with a criminal purpose in disclosing Plaintiff's protected health information to Meta because "the primary purpose of [Plaintiff's] communications with UCMC was medical care", *Id.* at 10; and Plaintiff has pled no facts to support her claims, *Id*. at 9-11. While Defendant is entitled to challenge whether Plaintiff has averred facts sufficient to state plausible claims, it is not entitled to create an alternate universe in which facts Plaintiff has clearly pled are somehow missing from the Second Amended Complaint ("SAC").

The Court should deny Defendant's Motion because: (1) UCMC's real-time transmission of its patients' communications to Meta qualifies as an interception under the Electronic Communications Privacy Act ("ECPA"); (2) Plaintiff clearly alleges that UCMC acted with a criminal purpose by intentionally and surreptitiously disclosing its patients' health information to Meta and; (3) the SAC extensively identifies the specific protected health information of both Plaintiff and putative class members that was intercepted and disclosed to Meta. Plaintiff's allegations – taken together and viewed under the applicable standard – are more than adequate to

state a cause of action.

## I. RELEVANT BACKGROUND

UCMC, the operator of a hospital network, maintains several web properties for the purpose of communicating with patients. These web properties include Defendant's public website (*www.uchicagomedicine.org*), its student healthcare website (*wellness.uchicago.edu*), its MyChart patient portal (*mychart.uchicago.edu*), and its student patient portal, my.WellnessPortal (collectively UCMC's "Web Properties"). SAC ¶ 4. UCMC encourages its patients, which number in the thousands, to disclose their individually identifiable health information ("IIHI") through its Web Properties to communicate with their providers, schedule appointments, and request information about specific conditions and treatments, among other things. SAC ¶¶ 4, 67, 69.

Despite UCMC's absolute legal duty and express promises to maintain the confidentiality of its patients' IIHI, Defendant intentionally installed source code developed by Meta (the "Meta Collection Tools") on its Web Properties to intercept and disclose its patients' IIHI to Meta. SAC ¶¶ 9, 71-76. The Meta Collection Tools are designed for commercial marketing and track every interaction made on UCMC's Web Properties including the information patients type into appointment forms, the pages they view, and the buttons they click. SAC ¶¶ 7, 18-64, 75-76. Every time a patient communicates with Defendant's Web Properties by clicking buttons or typing in information, the Meta Collection Tools, unbeknownst to the patient, redirect the content of their communications to Meta. SAC ¶¶ 31, 57. Contemporaneously with the interception of these communications, the Meta Collection Tools also collect and transmit several identifiers that uniquely identify a given patient, including their IP address, Facebook ID, cookie identifiers, device identifiers, and account numbers. SAC ¶¶ 7, 19, 71. Meta then combines these identifiers with the patient's healthcare communications to use the information for its own commercial purposes that include building more fulsome profiles of its users' preferences and traits, and selling

targeted advertisements based on this information. SAC ¶¶ 18-53, 59-64, 75, 102-110. Meta compiles and forwards its analysis of this data to UCMC, which in turn uses the data for its own commercial purposes that include understanding how people use its Web Properties and determining what ads people see on its websites. *Id.* ¶ 76.

Plaintiff Sophia Hartley has been a patient of UCMC since at least 2019. *Id.* ¶ 155. Plaintiff has also been a *www.uchicagomedicine.org* user, *wellness.uchicago.edu* user, MyChart patient portal user and a my.WellnessPortal user since at least 2019. *Id.* During the relevant time period, Hartley used these Web Properties to schedule appointments, request information on specific medical services, view test results, access her doctor's notes, message her healthcare providers, review medications, and make payments for medical services. *Id*. When Hartley did so, her IIHI was automatically and contemporaneously disclosed to Meta under the systematic process described herein. *Id.* Plaintiff had no knowledge her sensitive medical information was shared with anyone other than her healthcare providers, much less the world's largest social media platform, or that it would be exploited for commercial purposes, and never consented or authorized UCMC to disclose her IIHI. *Id.*

UCMC has removed the Meta Collection Tools from all its Web Properties and thus, the full extent of UCMC's interception and disclosure of IIHI can only be determined through formal discovery. However, at minimum, Plaintiff has confirmed that the following descriptive URLs containing her IIHI were intercepted and disclosed to Meta when Plaintiff communicated through UCMC's Web Properties: (1) The content of the button Hartley clicked was "Sign In" to MyChart and my.Wellness, or something substantially similar and the page on which Hartley clicked the button was "Patient Portal," "Home," or something substantially similar; (SAC ¶¶156, 162, 164); (2) Links within the MyChart portal that explicitly identify the medication Plaintiff was prescribed

and links that describe Plaintiff's activities related to scheduling appointments, viewing test results, paying bills, and reviewing medications (*Id.* ¶ 158); (3) A page plaintiff viewed on UCMC's public website that indicates Plaintiff searched for a physician (*Id.* ¶ 156); (4) A page Plaintiff viewed on *wellness.uchicago.edu* that identifies the specific medical service she requested information for (*Id.* ¶ 160) and; (5) Links related to Plaintiff's interactions within the MyChart portal and My.Wellness portal concerning messages with her providers (*Id.* ¶¶ 158, 162). Contemporaneously with the interception and transmission of Plaintiff's communications on Defendant's Web Properties, UCMC also disclosed to Meta Plaintiff's personal identifiers, including but not limited to her IP addresses, Facebook ID, cookie identifiers, device identifiers and account numbers. *Id.* ¶¶ 157, 159, 161, 163. UCMC disclosed its patients' IIHI despite its representations of confidentiality to Plaintiff and the class members, including its dishonest assurance that, "[UCMC] is committed to protecting the confidentiality of your medical information," and "[UCMC] not ***will not disclose [its patients'] health information for purposes other than your treatment without your prior written consent***." *Id.* ¶¶ 68, 70 (emphasis added).

## II. LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint, not decide the merits of the case. *Derfus v. City of Chicago*, 42 F. Supp. 3d 888, 893 (7th Cir. 2014). For purposes of a motion to dismiss, the Court accepts "as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff." *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017). Courts must deny a defendant's motion to dismiss pursuant to Rule 12(b)(6) if the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d

400, 404 (7th Cir. 2010) ("plaintiff must give enough details about the subject-matter of the case to present a story that holds together").

## III. ARGUMENT

### A. Plaintiff Pleads a Plausible Claim Against Defendant Under The ECPA

To state a claim under the ECPA, a plaintiff must allege the defendant: "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *In re Google Inc. Cookie Placement Consumer Priv. Litig*., 806 F.3d 125, 135 (3d Cir. 2015), *quoting In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 18 (1st Cir. 2003), *citing* 18 U.S.C. § 2511(1)(a). Plaintiff has pleaded facts easily satisfying each of these elements.

#### 1. Plaintiff Plainly Alleges That UCMC Intercepted Her Communications

As an initial matter, Defendant cannot credibly support its claim that "Plaintiff has not alleged (and cannot allege) that UCMC 'intercepted' any electronic communication," given her clear, explicit and unambiguous allegations. Plaintiff alleges over 20 times that Defendant intentionally installed the Meta Collection Tools on its Web Properties to intercept its patient's communications and identities not for treatment purposes, but to disclose this information to Meta for commercial gain. SAC ¶¶ 1, 4, 31, 33, 56, 72, 74-75, 150, 156-165, 167, 186, 188-190. The Meta Collection Tools accomplish the interception by contemporaneously redirecting patient communications to Meta every time a patient takes an action through Defendant's Web Properties. *Id.* ¶¶ 31, 57, 188-189. Courts routinely hold that the use of source code to simultaneously redirect communications to a third party is an "interception" under the ECPA. *See e.g. United States v. Szymuszkiewicz*, 622 F.3d 701, 703–04, 706 (7th Cir. 2010) (affirming that "the duplication and forwarding" of emails to a third party is an "interception" under the ECPA); *In re Pharmatrak.,* 329 F.3d at 13, 22 (holding the defendant "intercepted" communications under the ECPA where source

code caused the surreptitious redirection of online communications to a third-party, including "the webpages a user viewed at clients' websites; how long the user spent on each webpage; the visitor's path through the site (including her points of entry and exit); [and] the visitor's IP address."); *In re Grp. Health Plan Litig.*, No. 23-CV-267 (JWB/DJF), 2023 WL 8850243, at *6 (D. Minn. Dec. 21, 2023) ("Here, Plaintiffs have plausibly pled that an interception occurred. They allege that whenever they interacted with HealthPartners' Websites, HealthPartners, through the Pixel imbedded in and run on the Websites, 'contemporaneously and intentionally' redirected and disclosed the contents of Plaintiffs' electronic communications to third parties. [] This is sufficient to allege interception at this stage."). Accordingly, Plaintiff's allegations easily satisfy the "interception" element of her ECPA claim.

**2. Plaintiff Clearly Alleges that UCMC Acted with a Criminal Purpose by Intentionally and Surreptitiously Disclosing Its Patients' Health Information to Meta**

Notwithstanding Plaintiff's allegations, Defendant claims she can never sustain a viable cause of action under the ECPA because UCMC was the intended recipient of Hartley's communications, and therefore its conduct falls within the 18 U.S.C. § 2511(2)(d) exception for parties to the communication. Def.'s Mem. at 5. According to UCMC "Plaintiff's own allegations that the content of the communications related to her healthcare at UCMC [], and that UCMC was Plaintiff's healthcare provider [], are fatal to her claims," because "Plaintiff attempts to base her claim *exclusively* on communications for which UCMC was the intended recipient." *Id.* (emphasis in original). Of course, Plaintiff intended for UCMC (and UCMC alone) to receive her IIHI. That's the point. Defendant's unremarkable observation hardly precludes Plaintiff's claims; to the contrary, it emphasizes the unlawful (and egregious) nature of Defendant's conduct. Plaintiff intended UCMC—*and only UCMC*—to receive the extremely private, privileged and sensitive

communications at issue, exactly as UCMC falsely assured her.

If Plaintiff proves her allegations, as she fully intends, UCMC is liable under the "criminal or tortious exception" of the ECPA because it intercepted her communications for the purpose of disclosing her protected health information in violation of HIPAA. *See* 18 U.S.C. § 2511(2)(d); SAC ¶¶ 111-139, 182-203. Courts consistently interpret the crime-tort exception as requiring only, "sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie*, 806 F.3d at 145 (emphasis in original, quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)). In other words, "Under section 2511, 'the focus is not upon whether the interception itself violat[ed] another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious.'" *In re Nickelodeon Consumer Priv. Litig.*, No. CIV.A. 12-07829, 2014 WL 3012873, at *13 (D.N.J. July 2, 2014) (emphasis added) (quoting *Sussman v. Am. Broadcasting Cos.,* 186 F.3d 1200, 1202–03 (9th Cir. 1999)).

UCMC installed the Meta Collection Tools for the purpose of intercepting and disclosing its patients' IIHI to Meta for financial gain in direct violation of HIPAA. SAC ¶¶ 111-139, 182-203; *See* 42 U.S.C. § 1320(d)(6). Third-party tracking tools are not necessary to "communicate"[1] with patients, provide medical care, or even operate a website.[2] The Meta Collection Tools are used solely for commercial marketing. SAC ¶¶ 18-53, 56-64, 75-76. In fact, the <u>only way</u> UCMC benefits from using these tools is by disclosing its patients' sensitive medical communications and linking these activities to their identities. This information is used by UCMC and Meta to build

---

[1] Recasting Plaintiff's allegations, Defendant incoherently characterizes its surreptitious disclosure of Hartley's private health information to Meta <u>as its own</u> "communicat[ions] with Plaintiff." *See* Def.'s Mem. at 7, 8.

[2] UCMC recognizes as much, given that it has removed the Meta Collection Tools from its Web Properties. *See* SAC ¶ 164.

advertising profiles and to target patients with ads that relate to their healthcare. *Id.* ¶¶ 75-76, 104-110. UCMC cannot seriously dispute that when it used the Meta Collection Tools to intercept patient communications, it acted with the purpose of disclosing Hartley's IIHI for commercial gain.

Faced with this reality, Defendant, in a footnote, makes the bizarre assertion that its motive to gain financially is "insufficient" to satisfy the crime-tort exception. Def.'s Mem. at 7. This argument overlooks the obvious. Plaintiff has pled that Defendant committed a federal crime by knowingly sharing the class members' IIHI with Meta. SAC at ¶¶ 111-139, 198, 203. That Defendant's crime eventually provided it (and Meta) with a commercial benefit cannot possibly preclude a finding of criminal motivation. If that were true, proving criminal intent for any successful bank robbery, embezzlement, or other crime involving theft would be impossible. Likewise, all of Defendant's authorities are inapposite because the data at issue in those cases was not protected health information and the defendants were not HIPAA-covered entities. *See* Def.'s Mem. at 7. *See Rodriguez v. Google LLC*, 2021 WL 2026726, at *4 (N.D. Cal. May 21, 2021) (alleging unlawful disclosure of "an individual's activity on… apps… that use Google services"); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *1 (N.D. Cal. Apr. 6, 2023) (alleging Oracle America, Inc.'s unlawful disclosure of "web browsing and other activity"). Moreover, in an indistinguishable case involving a hospital's use of the Meta Collection Tools, Judge Kennelly expressly ruled that "financial gain" ***is*** a sufficient motive to satisfy the crime-tort exception of the ECPA when the underlying conduct violates HIPAA. *See Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023). at 6 ("*Kurowski III*") ("Kurowski alleges that Rush knowingly transmits this data and that it does so for the purpose of financial gain. [] All of these allegations, taken together, are sufficient to invoke the HIPAA exception-to-the-party-exception

quoted earlier."). As such, Plaintiff has plausibly alleged that UCMC's conduct satisfies the crime-tort exception because it intercepted Plaintiff's communications for the purpose of violating HIPAA.

Relying on two erroneous interpretations of the ECPA, Defendant argues that the crime-tort exception cannot apply. Defendant first claims that, "[t]he SAC focuses on UCMC's alleged criminal or tortious purpose in purportedly disclosing certain communications. [] That is not the test. Instead, the test requires Plaintiff to allege UCMC's purpose in *intercepting* the communications was criminal or tortious…. In other words, Plaintiff must allege that when UCMC communicated with Plaintiff via its various web properties (the purported 'interception'), UCMC's purpose was criminal or tortious." Def.'s Mem. at 7 (emphasis in original). Defendant concludes by arguing "Plaintiff has alleged that the primary purpose of her communications with UCMC was medical care. Accordingly, Plaintiff's claim for violation of the ECPA fails." *Id.* at 10.

But ***Plaintiff's purpose***, "primary" or otherwise, in communicating with UCMC is irrelevant. Again, "the focus is not upon whether the interception itself violat[ed] another law; it is upon whether the purpose ***for the interception***—its intended use—was criminal or tortious." *Sussman,* 186 F.3d at 1202–03 (emphasis added). Plaintiff does not allege that UCMC violated HIPAA by intercepting communications of which it was the intended recipient. Rather, it is UCMC's intended use of the intercepted communications – to disclose private health information to Meta – that violates HIPAA and thus, satisfies the crime-tort exception.

Finally, Defendant blatantly misrepresents the holding in *Desnik v. American Broadcasting Companies* to support its claim that, "[t]he Seventh Circuit has explicitly rejected the argument that the crime/tort exception applies based on the criminal or tortious nature of a subsequent *disclosure* of allegedly intercepted information." Def.'s Mem. at 8. In *Desnick*, there was no

dispute that the defendant's intended purpose in recording the plaintiffs was "to see whether the Center's physicians would recommend cataract surgery on the testers." 44 F.3d 1345, 1353 (7th Cir. 1995). That is, the plaintiffs' ECPA claim did not rely on a tortious purpose *at the time of the recording*, which is required for the exception to apply. *Id.*; *see Caro*, 618 F.3d at 99 ("At the time of the recording the offender must intend to use the recording to commit a criminal or tortious act."). Instead, the plaintiffs in *Desnick* tried to work backwards by claiming that because the defendants made the decision to use the recording for an alleged defamation after the recording was made, the crime-tort exception applied. The Court rejected this argument because the pleadings failed to allege a tortious intent at the time of the recording:

> But there is no suggestion that the defendants sent the testers into the Wisconsin and Illinois offices for the purpose of defaming the plaintiffs by charging tampering with the glare machine. The purpose, by the plaintiffs' own account, was to see whether the Center's physicians would recommend cataract surgery on the testers.

*Desnick*, at 44 F.3d at 1353.

The facts in the present case are easily distinguishable. Plaintiff alleges UCMC intentionally installed the Meta Collection Tools for the purpose of intercepting and disclosing its patients' IIHI to Meta. SAC ¶¶ 9, 71-76. Thus, once the tracking tools were installed and began intercepting patient communications, Defendant had already established the requisite criminal purpose of sharing the intercepted IIHI to Meta. Defendant's argument that "[s]ince the provision of medical care is neither criminal nor tortious, the narrow crime/tort exception does not apply," is not supported by the holding in *Desnick* and completely ignores the substance of Plaintiff's allegations. Def.'s Mem. at 8. Plaintiff plainly alleges facts supporting application of the crime-tort exception, and Defendant's motion should be denied.

### 3. Plaintiff Alleges That Her Particular Health and Treatment Information Was Disclosed to Meta.

Defendant challenges the sufficiency of Plaintiff's ECPA claim by arguing a factual component is missing; namely, that "[Plaintiff] fails to allege that any of the purportedly disclosed information constitutes particular health or treatment information specific to her." Def.'s Mem. at 2. This argument ignores Plaintiff's allegations, as the SAC extensively pleads that specific and extensive protected health information of both Plaintiff and putative class members was intercepted and disclosed to Meta.

HIPAA provides civil and criminal penalties to any covered entity that "knowingly… discloses individually identifiable health information to another person." 42 U.S.C. § 1320(d)(6). IIHI is a subset of protected health information and is defined as:

> any information, including demographic information collected from an individual, that— (A) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and— (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

45 C.F.R. § 160.103.

The communications UCMC intercepted and disclosed to Meta undeniably contain protected IIHI. Plaintiff alleges that the Meta Collection Tools intercept both the contents of patient communications with UCMC Web Properties (*i.e.*, the URLs, buttons, links, pages, and tabs patients click and view) and identifiers that can uniquely identify the patient (*i.e.* the patients' IP addresses, Facebook ID, cookie identifiers, device identifiers and account numbers). SAC ¶¶ 7, 71, 189. The Meta Collection Tools also intercept and disclose the communications patients make when they click the "Login" button to UCMC's patient portals, and the information patients type

into appointment forms. *Id.* ¶¶ 54, 189. Thus, for example, UCMC reveals to Meta that a specific, identified patient has viewed pages related to cancer treatments, clicked on a specific provider's profile, and scheduled an appointment. Therefore, UCMC may be prosecuted under 43 U.S.C. § 1320(d)(6) because the data it discloses is received by a health care provider, identifies the individual, and is related to their past, present, or future physical or mental health or condition, their receipt of health care, and/or their payment for that care.

Defendant's view is that "mere 'meta data' — *i.e.* 'IP addresses, Facebook IDs, cookie identifiers, device identifiers and account numbers and the contents of the[] communications' including 'URLs, buttons, pages, and tabs they click and view' is not sufficient and amounts to 'an absolute dearth' of what is required," but that is not what the HIPAA regulations state. Def.'s Mem. at 10 (citing *Hartley v. Univ. of Chi. Med. Ctr.*, 2023 WL 7386060, at *2 (N.D. Ill. Mar. 3, 2023)).[3] As Plaintiff explains in the SAC, under the HIPAA de-identification rule:

> health information is not individually-identifiable only if… the following identifiers of the individual or of relatives, employers, or household members of the individual are removed:
>
> (a) Names; (b) Medical record numbers; (c) Account numbers; (d) Device identifiers and serial numbers; (e) Web Universal Resource Locators (URLs); (f) Internet Protocol (IP) address numbers;… and (g) Any other unique identifying number, characteristic, or code.

SAC ¶ 125; *See* 45 C.F.R. § 164.514.

Plaintiff alleges that UCMC's Meta Collection Tools disclosed at least five of these

---

[3] Repeatably misrepresenting this Court's prior ruling, Defendant wrongly claims, "this Court has already ruled that the alleged disclosure of URLs is not sufficient to state a viable claim because any such purported disclosure does not include health information or treatment information specific to Plaintiff." Def.'s Mem. at 11-12. That is simply not true. This Court held that "Plaintiff's allegations in her Complaint are [] generalizations as to what UCMC was communicating to Facebook… there is an absolute dearth of information specific to Plaintiff." [Doc. 52, at 4]. As she explains at length in the instant opposition, Hartley's SAC addresses the Court's concern with allegations setting forth the exact identifiers and URLs specific to Plaintiff's healthcare that were disclosed to Meta (SAC ¶¶ 156-167), along with facts that explain precisely why these disclosures violate HIPAA (SAC ¶¶ 111-139).

identifiers that were specific to Plaintiff, including her Facebook ID which qualifies as a "unique identifying number." SAC ¶¶ 7, 34-49, 71, 154, 159, 161, 163-164. These identifiers are not "mere meta data," as Defendant suggests, they are valuable data points, protected by HIPAA, that Meta uses to uniquely identify a patient when they communicate with UCMC.

Plaintiff also alleges that Defendant disclosed Plaintiff's status as a patient by contemporaneously pairing her identifiers with her action of clicking the "Login" buttons to the MyChart Portal and My.Wellness Portal. *Id.* ¶ 156, 162, 164. HIPAA protects the disclosure of patient status. *Id.* 130-133. Notably, in the consolidated lawsuit brought against Meta for installing its tracking tools on hospital websites across the country, the Northern District of California ruled that disclosing the act of a patient clicking the "Login" to a patient portal reveals their status as a patient and violates HIPAA. *See In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, *7-8 (N.D. Cal. Dec. 22, 2022):

> I conclude that the Pixel transmits information showing patient status. That is, the act of clicking the "Log in" button, when coupled with the MedStar Health patient portal URL and the other information transmitted by the Pixel, sufficiently identifies the website user as a patient… The Pixel captures information that connects a particular user to a particular healthcare provider—*i.e.*, patient status—which falls within the ambit of information protected under HIPAA.

Accordingly, Plaintiff has more than adequately alleged that UCMC violated HIPAA by disclosing her status as a patient to Meta.

Next, Defendant claims that "the disclosure of certain URLs is [not] sufficient to constitute disclosure of 'particular health or treatment information.'" Def.'s Mem. at 11. Ironically, Defendant relies on Judge Kennelly's opinion in *Kurowski III,* in which he ruled that the plaintiffs' amended complaint stated a viable ECPA claim because it alleged the defendant "transmitted the name and location of [plaintiff's] personal physician, as well as her physician's specialty." *Id.* (citing *Kurowski III*, 2023 WL 8544084, at *3). Defendant goes on to claim, "Plaintiff makes no

such allegations… the alleged disclosure of URLs is not sufficient to state a viable claim because any such purported disclosure does not include health or treatment information specific to Plaintiff." Def.'s Mem. at 11-12.

Even a cursory review of the language Defendant quotes from *Kurowski III*, however, reveals that the court was citing to the plaintiffs' proposed second amended complaint. The complaint explicitly alleges that these categories of information were disclosed to Meta via the detailed URLs that the plaintiffs viewed. *See* Exhibit A, *Kurowski v. Rush* 2nd Am. Compl. at ¶¶ 36, 79. Thus, *Kurowski III* did not hold that descriptive URLs do not contain protected health information, rather, the disclosure of these URLs established the basis for the alleged HIPAA violation. Indeed, Judge Kennelly's holding is consistent with ECPA precedent that has held such URLs qualify as "content" under the ECPA because they convey "information concerning the substance, purport, or meaning of [the] communication." *See* 18 U.S. Code § 2510 (8); *In re Meta Pixel*, 2022 WL 17869218, *11:

> [T]he kinds of descriptive URLs identified in the Smith Decl. are "contents" within the meaning of the statute. Unlike in *Zynga*, the URLs at issue here would not merely reveal the name of a Facebook user or group—as Smith explained, the transmitted URLs include both the "path" and the "query string." [citations omitted] (showing hardfordhospital.org/services/digestive-health/conditions-we-treat/colorectal-small-boweldisorders/ulcerative-colitis URL). These items are content because they concern the substance of a communication. *See Zynga*, 750 F.3d at 1107; *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) ("If an address, phone number, or URL is ... part of the substantive information conveyed to the recipient, then by definition it is 'content.' "); *see also In re Google RTB Consumer Priv. Litig.*, 2022 WL 2165489, *10 (N.D. Cal. June 13, 2022) (finding that categories of the website, categories that describe the current section of the website, and referrer URL that caused navigation to the current page constituted "content").

Here, Plaintiff's SAC includes extensive allegations of the specific descriptive URLs Hartley viewed that were disclosed to Meta, including: (1) URLs from UCMC's public website (*www.uchicagomedicine.org*) that reveal Hartley searched for a physician and logged into the

MyChart portal (SAC ¶ 156); (2) URLs from the MyChart Portal that reveal the name of the medication Hartley was prescribed (*Id.* ¶ 158, ninth bullet point from the top), and URLs related to Hartley's communications related to scheduling appointments, viewing test results, messaging providers, and reviewing insurance information (*Id.* ¶ 158); URLs from UCMC's student website (*wellness.uchicago.edu*) that reveal the specific medical service for which Harley requested information (*Id.* ¶ 160) and; URLs from the my.Wellness Portal that reveal Hartley logged into the portal and a link associated with messages she exchanged with a provider (*Id.* ¶ 160).

Plaintiff also alleges that UCMC intercepted and disclosed all the actions she took on each of Defendant's Web Properties, identifying the specific health care treatment she was seeking through these actions. *Id.* ¶¶ 155-165. Plaintiff further alleges that her IIHI "was disclosed to Meta under the systematic process described herein." *Id.* ¶ 155. This would include, for example, all the information Hartley communicated to UCMC when setting up an appointment. Logically, the Court can infer that such information includes the date, time, and location of the appointment, the type of appointment, and the name of her provider. Plaintiff specifically alleges that she used Defendant's Web Properties to schedule appointments, and that the Meta Collection Tools intercepted and transmitted all this information, including "information that a patient types into an appointment form." *Id.* ¶¶ 7, 54, 155-165.

Plaintiff's allegations that the information disclosed by UCMC is protected health information align perfectly with the HHS Bulletin, which represents the federal government's best and most current guidance on the perils of tracking technology used in the healthcare context. *See* SAC at ¶¶ 134-139. This HHS Bulletin expressly warns that tracking technologies, such as the Meta Collection Tools, can access, and routinely do access, protected health information. *Id.* Contrary to UCMC's assertions (Def.'s Mem. at 11-12), the HHS guidance is not new, "[I]t has

always been true that regulated entities may not impermissibly disclose PHI to tracking technology vendors."[4] Instead, the Bulletin reflects the application of the plain text of the HIPAA Privacy Rule and its underlying statute. Moreover, to support the Bulletin, HHS relied on 78 FR 5566, 5598, a rulemaking notice from January 25, 2013, which stated "protected health information . . . may not necessarily include diagnosis-specific information. . . . If the information is tied to a covered entity, then it is protected health information by definition since it is indicative that the individual received health care services or benefits from the covered entity, and therefore it must be protected . . . in accordance with the HIPAA rules."[5]

All these facts, taken together and accepted as true, state a plausible claim that UCMC used the Meta Collection Tools to intercept and disclose statutorily protected health information from its patients' communications. As such, Plaintiff states a viable claim under the ECPA and Defendant's motion should be denied.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully asks this Court to deny Defendant's Motion to Dismiss.

Date: February 23, 2024

Respectfully Submitted,

*<u>/s/ Michael J. Casas</u>*
Ryan F. Stephan
James B. Zouras
Teresa M. Becvar
Michael J. Casas
**STEPHAN ZOURAS, LLP**
222 W. Adams Street, Suite 2020
Chicago, Illinois 60606

[4] Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates, available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.

[5] *Id.*

312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
tbecvar@stephanzouras.com
mcasas@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I caused a true and correct copy of the foregoing pleading to be served on all record counsel through the Court's electronic filing system.

Dated: February 23, 2024

/s/ *Michael J. Casas*