IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SOPHIA HARTLEY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UNIVERSITY OF CHICAGO MEDICAL CENTER and META PLATFORMS, INC.,

Defendants.

No. 1:22-cv-05891

**DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

Ryan S. Hedges
Joseph A. Strubbe
Zachary J. Watters
Jason B. Sobelman
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

*Counsel for Defendant University of Chicago Medical Center*

## I. INTRODUCTION

The arguments raised in Plaintiff's Memorandum in Opposition ("Opposition" or "Opp.") are based on the same flawed premise as Plaintiff's "new" allegations in the SAC.[1] Plaintiff entirely fails to explain what the possible relevance could be for the *112 paragraphs* that she copied and pasted from a complaint currently pending against Meta in a different district into the SAC in this case in which Meta is not a party. There is no relevance, because those "new" allegations have nothing to do with any alleged conduct on the part of UCMC. Whatever issue Plaintiff may have with Meta, it does not provide support for her Wiretap Act claim against UCMC. Plaintiff contorts arguments and caselaw that are applicable only to Meta, an alleged unintended recipient of the communications, in a misguided attempt to apply them to UCMC, the *intended* recipient of Plaintiff's *voluntary communications*. Likely recognizing that defect, Plaintiff's Opposition improperly seeks to change the meaning of words and phrases in an effort to convert conclusory allegations regarding the *disclosure* of information into claims regarding the improper *collection* of information. Plaintiff continues trying to push a square peg through a round hole, but has failed yet again. As a result, Plaintiff's third bite at the apple is futile, and her SAC should be dismissed, with prejudice.

## II. ARGUMENT

### A. <u>Plaintiff Has Forfeited Her Breach of Implied Duty of Confidentiality Claim</u>

Plaintiff's Opposition contains no argument responding to UCMC's motion to dismiss her breach of the implied duty of confidentiality claim (Count 2). Accordingly, UCMC's motion is unopposed. Having failed to respond to any of UCMC's arguments supporting dismissal of her

[1] Capitalized terms not defined have the meanings set forth in UCMC's Memorandum of Law in Support of its Motion to Dismiss (Dkt. No. 65) ("Memo.").

implied duty of confidentiality claim (Memo. at 12-15), Plaintiff has forfeited that claim and the Court should dismiss it with prejudice. *See Lee v. Ne. Ill. Reg'l Commuter R.R.*, 912 F.3d 1049, 1054 (7th Cir. 2019) (claims are subject to dismissal "when a party fails to develop arguments related to a discrete issue or when a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Rosen v. Mystery Method, Inc.*, 2008 WL 723331, at *6 (N.D. Ill. Mar. 14, 2008) ("A litigant's failure to respond to arguments the opposing party raises in a motion to dismiss operates as a waiver or forfeiture.").

### B. UCMC's Alleged Disclosures to Meta Do Not Constitute an Interception of Plaintiff's Communications

Plaintiff's defense of her ECPA claim begins with the perplexing assertion that UCMC's alleged "interception" occurred when Plaintiff's communications were purportedly disclosed to Meta. (Opp. at 5 (the "interception" occurred when the "Meta Collection Tools [. . .] contemporaneously redirect[ed] patient communications to Meta").) Plaintiff is wrong.

The ECPA defines "intercept" as the "aural or other *acquisition* of the contents of any . . . electronic . . . communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4) (emphasis added); *see also Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 411 (N.D. Ill. 2012) ("To make out a valid interception claim under the ECPA, a plaintiff must allege that the defendant 'acqui[red]' the contents of his or her electronic communications.") (quoting 18 U.S.C. § 2510(4)). On the other hand, "disclose" connotes the *provision* of information to another, not the acquisition of it. *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "disclose" as "[t]o make (something) known or public; to show (something) after a period of inaccessibility or of being unknown; to reveal."). UCMC did not *acquire* Plaintiff's communications as a result of an alleged disclosure to Meta. UCMC acquired Plaintiff's communications because, as Plaintiff concedes, UCMC was the intended recipient of those

communications. (Opp. at 6 ("Plaintiff intended UCMC" to receive her communications).) Thus, Plaintiff's allegation of an "interception" on the part of UCMC fails.

Moreover, Plaintiff's argument ignores the statutory framework that sets forth separate and distinct violations for interception (18 U.S.C. § 2511(1)(a)) and disclosure after an interception (18 U.S.C. § 2511(1)(c)), each of which requires the occurrence of an interception. The Court should reject Plaintiff's attempt to allege an illegal interception by pointing to an alleged illegal disclosure, for which the law requires the occurrence of an illegal interception in the first instance. *See Valentine v. WideOpen W. Fin., LLC*, 2013 WL 5423846, at *6 (N.D. Ill. Sept. 27, 2013) ("[T]here is a certain temporal sequence of events that must occur before a person can be liable for disclosure or use."). Plaintiff's Opposition simply ignores this critical legal requirement.

At best, Plaintiff's argument would apply only to an unintended recipient of the communications, such as Meta. Indeed, the caselaw Plaintiff offers only underscores this point. (Opp. at 5-6.) In *United States v. Szymuszkiewicz*, the defendant was an unintended recipient of his supervisor's emails which he intercepted by creating a "rule" that forwarded a copy of all messages directed to his supervisor to the defendant's e-mail address. 622 F.3d 701, 703 (7th Cir. 2010). Similarly, in *In re Pharmatrak, Inc. Privacy Litigation*, the interception requirement was analyzed with respect to an unintended recipient of various communications. 329 F.3d 9, 21-22 (1st Cir. 2003). The unintended recipient gained access to the contents of the communications by adding lines of code to various websites which facilitated communication between a user of the websites and the unintended recipient directly. *Id.* at 13-14. Neither case held that an intended recipient of a communication intercepted that communication for purposes of the Wiretap Act.

As a result, the holding in *In re Group Health Plan Litigation*, 2023 WL 8850243, at *6 (D. Minn. Dec. 21, 2023), is not persuasive. Without any analysis, the *Group Health Plan* court

found that the redirection and disclosure of the contents of a communication constitutes an interception by the intended recipient. *Id.* The court's ruling relied solely on citations to *Szymuszkiewicz* and *In re Pharmatrak*, which do not support its holding. The court's ruling in *Group Health Plan* ignores the plain language of the ECPA and the common sense meaning of the terms "intercept" and "disclosure," and it contains no supporting analysis. Accordingly, this Court should ignore it. *See Wootten v. Fortune Brand, Inc.*, 1999 WL 705763, at *3 (N.D. Ill. Aug. 27, 1999) (finding a case to be "unpersuasive" because the "court reached its holding with scant analysis of the facts as applied to" the relevant law); *Lukas v. McPeak*, 730 F.3d 635, 643 (6th Cir. 2013) (citation omitted) ("The limited analysis of these cases 'means they are without a great deal of value as persuasive authority.'").

### C. **<u>Plaintiff Has Not Alleged the Primary Purpose of UCMC's Alleged "Interception" Was Criminal or Tortious</u>**

Seeking to avoid the legion of authority offered by UCMC that establishes there can be no unlawful interception by a party to the communication (Memo. at 4-6), Plaintiff attempts to squeeze her ECPA claim into a narrow exception, which may apply only if the communications between Plaintiff and UCMC were "*intercepted for the purpose* of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d) (emphasis added); *see also Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) ("Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception – its intended use – was criminal or tortious. [. . .] Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere."); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001) ("Section 2511(2)(d)'s legislative history and caselaw make clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort."); *In re*

*Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) ("Alleged interceptions fall within the tort or crime exception only where the 'primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously.'") (quotation omitted). Plaintiff's arguments in support of the narrow crime/tort exception fail for at least two reasons.

*First*, Plaintiff misapplies the crime/tort exception by focusing on UCMC's alleged disclosure to Meta, as opposed to UCMC's purported "interception." Plaintiff's tortured analysis of the crime/tort exception (Opp. at 6-10) reveals the underlying reason why she resorts to the circular argument that UCMC's alleged *disclosure* constitutes an "interception." (*Id.* at 5-6.) Ultimately, Plaintiff has pled herself out of the crime/tort exception.

As outlined above, the primary purpose of the *interception*, i.e., the acquisition of the communications, controls the application of the crime/tort exception. Plaintiff concedes that UCMC acquired the contents of her communications because it was the intended recipient of those communications. (Opp. at 6.) Plaintiff also concedes, as she must, that UCMC's acquisition of Plaintiff's communications was not criminal or tortious. (Opp. at 9 ("Plaintiff does not allege that UCMC violated HIPAA by intercepting communications of which it was the intended recipient.").) Moreover, Plaintiff does not allege that UCMC had a criminal or tortious purpose in acquiring her communications. Instead, Plaintiff alleges that purpose of the communications were to facilitate medical care. (SAC ¶ 155 (the web properties allowed Plaintiff to "schedule appointments, request information on specific medical services, view test results, access her doctor's notes, message her healthcare providers, review medications, and make payments for medical services.").) As a result, the crime/tort exception does not apply.

Plaintiff's attempt to shift the focus of the analysis to UCMC's purpose in allegedly disclosing communications to Meta has been resoundingly rejected by the Seventh Circuit Court of Appeals. Contrary to Plaintiff's unsupported assertion, UCMC has not misrepresented the holding in *Desnick v. American Broadcasting Companies*, 44 F.3d 1345 (7th Cir. 1995). In both *Desnick* and this case, the defendants acquired the communications in question based on their role as intended recipients of the communications. *Id*. at 1347-48; (Opp. at 6.) Additionally, the plaintiffs in both *Desnick* and this case argued that the *disclosure following the alleged interception* was wrongful. *Desnick*, 44 F.3d at 1353 (alleging news broadcast was defamatory); (Opp. at 7 (arguing UCMC violated HIPAA by disclosing communications to Meta).) In *Desnick*, the Seventh Circuit rejected plaintiff's argument and held that the purpose of the *interception* was not criminal or tortious, *even if the resulting disclosure was*; thus, plaintiff had no Wiretap Act claim. *Desnick*, 44 F.3d at 1353. The same result is warranted here.

*Second*, even if the Court were to accept the argument that disclosing information is the same as acquiring it, a proposition that is unsupported by the law and the English language, Plaintiff still has not sufficiently alleged a criminal violation of HIPAA.[2] Plaintiff argues that UCMC violated HIPAA by disclosing her protected health information to Meta. (Opp. at 7-8.) However, a criminal HIPAA violation requires the defendant to "knowingly" disclose individually identifiable health information ("IIHI"). *See United States v. Huping Zhou*, 678 F.3d 1110, 1115 (9th Cir. 2012) (analyzing § 1320d—6(a)(2) HIPAA violation and finding under the "knowingly" requirement the defendant must "know that he obtained [IIHI] related to an individual."). Plaintiff fails to allege that UCMC "knowingly" disclosed IIHI with the requisite who, what, where, and

[2] HIPAA does not provide for a private right of action. *See Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 575 (N.D. Ill. 2020).

when. Instead, Plaintiff asserts only the bare legal conclusion that UCMC's purpose in disclosing the communications was criminal or tortious. (SAC ¶ 198.) This is not sufficient pleading. *Minard v. Wal-Mart Stores, Inc.*, 2016 WL 9211678, at *2 (N.D. Ill. Apr. 12, 2016) ("conclusory legal statements . . . do not help a complaint survive a Rule 12(b)(6) motion.").

### D. <u>Plaintiff Fails to Allege that Her Specific Health or Treatment Information Was Disclosed</u>

As this Court previously held, Plaintiff's allegations regarding the information allegedly disclosed to Meta are insufficient "generalizations." *Hartley v. Univ. of Chi. Med. Ctr.*, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023). Despite the clear instruction that something more than "IP addresses, Facebook IDs, cookie identifiers, device identifiers and account numbers and the contents of the communications, i.e., 'URLs, buttons, pages, and tabs they click and view'" is necessary (*id.*), Plaintiff has failed to provide it. Instead, Plaintiff's Opposition unapologetically reverts back to the same arguments this Court previously rejected. (*See* Opp. at 11-12 (summarizing allegations that the following information was allegedly disclosed: "the contents of patient communications with UCMC Web Properties (i.e., the URLs, buttons, links, pages, and tabs patients click and view) and identifiers that can uniquely identify the patient (i.e. the patients' IP addresses, Facebook ID, cookie identifiers, device identifiers and account numbers)").) Plaintiff's defense of her insufficient allegations fails for at least five reasons.

*First*, Plaintiff's argument largely ignores the controlling standard this Court previously articulated and re-asserts prior rejected arguments that Plaintiff has sufficiently alleged IIHI was disclosed to Meta under HIPAA or guidance from HHS or the FTC. (Opp. at 11-16.) Arguments based on HIPAA HHS guidance were included in Plaintiff's opposition to the motion to dismiss the First Amended Complaint. (Dkt. No. 48 at 9-10), and deemed insufficient. As a result, these rehashed arguments are simply an improper request that the Court reconsider its prior ruling. *See*

*Cuff v. Trans States Holdings, Inc.*, 2013 WL 140607, at *1 (N.D. Ill. Jan. 11, 2013) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments.") (Leinenweber, J.).

*Second*, Plaintiff relies heavily on allegations regarding the disclosure of "descriptive URLs" and the purported IIHI contained therein. (Dkt. No. 60 ¶¶ 164(a), (c), 189(f).) Whether "descriptive" or not, URLs do not contain sufficient information regarding a specific individual to connote a privacy violation. *See, e.g., In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (holding that URLs "function[] like an 'address,'" not "contents" of a communication, even if they disclose that a person viewed the "page of a gay support group"). The same is true with respect to IIHI – a URL is simply an insufficient basis to constitute disclosure.

This is so, because an individual's visit to a webpage related to a particular health issue, treatment, or medication cannot establish that the visitor suffers from a specific health issue, is in need of a certain treatment, or has been prescribed a certain medication. By way of example, an individual may visit a health webpage in order to access information related to the health care of a friend or family member. In such a scenario, the user of the webpage is *not* a patient, *not* suffering from the particular medical condition, and thus, the URL would *not* contain the user's IIHI. Moreover, a user may visit a particular health webpage for a host of reasons that are *wholly unrelated* to any individual's health. For example, the user could be: <u>(i)</u> a student or researcher studying a medical issues; <u>(ii)</u> hospital employees confirming the webpages' accuracy; <u>(iii)</u> employees of another hospital scoping out the competition's offerings; <u>(iv)</u> webpage designers searching for inspiration; <u>(v)</u> lawyers testing whether the pages comply with various statutory provisions; <u>(vi)</u> hackers probing for vulnerabilities; <u>(vii)</u> people curious about certain topics utilizing the webpage as a free encyclopedia; or <u>(viii)</u> a web surfer who inadvertently clicks on the

wrong link. Plaintiff's theory assumes, with no valid basis, that each and every one of these individuals had their IIHI disclosed if the URLs associated with a health care website were disclosed. But in reality, there was no disclosure of any IIHI in any of these examples.

Moreover, Plaintiff's own cherry-picked allegations from the SAC highlight the inadequacy of her theory. Plaintiff asserts that her IIHI was disclosed because a "descriptive URL" which "reveal[ed] the name of the medication Hartley was prescribed" was disclosed. (Opp. at 15.) In support, Plaintiff cites to paragraph 158 of the SAC, "ninth bullet point from the top." (*Id.*) Remarkably the "descriptive URL" Plaintiff alleges was disclosed is *not* a URL belonging to or under the control of UCMC. Instead, it is a URL for an "official website of the United States Government" as indicated by the .gov portion of the URL. Without providing any factual support, Plaintiff's allegation that UCMC was somehow involved in the disclosure of Plaintiff's alleged visit to a public, government website is nonsensical. More importantly, the government website provides no indication that Plaintiff was prescribed any particular medication. It merely contains information about a particular medication that is available to anyone. However, as outlined above, there are numerous reasons, both health related and non-health related, for Plaintiff or anyone else to visit this website. Simply put, viewing a webpage about a particular medication cannot be sufficient to conclude that the webpage visitor was ever prescribed that medication.

*Third*, Plaintiff elevates form over substance when she relies on the latest holding in *Kurowski v. Rush System for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023), to argue that disclosure of a "descriptive URL" alone is sufficient to state a claim. (Opp. at 14.) As explained in UCMC's Memo, the *Kurowski* court found the alleged disclosure of "the name and location of [plaintiff's] personal physician, as well as her physician's specialty" to be sufficient to state a claim under the ECPA. *Id.* at *3. While UCMC respectfully disagrees, for the reasons stated above, that

the disclosure of a "descriptive URL" is sufficient to state an ECPA claim, this Court need not decide the issue here. Plaintiff does not allege, whether contained in a descriptive URL or otherwise, that the name, location, and specialty of her personal physician was ever disclosed. Thus, far from supporting Plaintiff's ECPA claim, the *Kurowski* ruling undermines it.

*Fourth*, Plaintiff's vague allegation that "information that a patient types into an appointment form" was also disclosed is not sufficient. (Opp. at 15.) Plaintiff not only fails to allege what specific information she input into an appointment form that was allegedly later disclosed, but also fails to include even a conclusory allegation that the information was IIHI. Again, the Court's prior ruling is controlling – Plaintiff has again failed to allege what "information specific to Plaintiff" was supposedly disclosed. *Hartley*, 2023 WL 7386060, at *2.

*Finally*, in a last ditch effort to save her claim, Plaintiff asserts that "the Court can infer" that additional information, specific to Plaintiff, was disclosed to Meta. (Opp. at 15.) In other words, despite being provided three attempts to state a claim and Court instruction requiring specific allegations, Plaintiff argues that generic allegations are adequate so long as the Court will fill in the gaps with unknown specific information that she has not provided. This is not sufficient. Plaintiff "is the master of [her] complaint – [she] can choose what claims to bring and must adequately plead the claims [she] brings in order to survive a 12(b)(6) motion to dismiss." *Serv. Corp. Int'l v. Stericycle, Inc.*, 2021 WL 5232731, at *4 (N.D. Ill. Nov. 10, 2021).

## III. CONCLUSION

For all of the foregoing reasons, Defendant University of Chicago Medical Center respectfully submits that this Court should grant its Motion, and dismiss Plaintiff's second amended class action complaint, with prejudice.

Respectfully submitted,

UNIVERSITY OF CHICAGO MEDICAL CENTER

By: *\/s\/ Ryan S. Hedges*
One of Its Attorneys

Ryan S. Hedges
Joseph A. Strubbe
Zachary J. Watters
Jason B. Sobelman
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

Dated: March 8, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ryan F. Stephan
James B. Zouras
Mohammed A. Rathur
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
Phone: (312) 233-1550
Fax: (312) 233-1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
mrathur@stephanzouras.com

Lauren R. Goldman
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Phone: (212) 351-4000
lgoldman@gibsondunn.com

Matthew L. Kutcher
Cooley LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
Phone: (312) 881-6500
Fax: (312) 881-6598
mkutcher@cooley.com

on March 8, 2024.

*/s/ Ryan S. Hedges*
Ryan S. Hedges