IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SOPHIA HARTLEY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UNIVERSITY OF CHICAGO MEDICAL CENTER,

Defendant.

No. 1:22-cv-05891

**DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Ryan S. Hedges
BAKER & HOSTETLER LLP
One North Wacker, Suite 3700
Chicago, IL 60607
(312) 416-6200

Zachary J. Watters
Jason B. Sobelman
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

*Attorneys for Defendant University of Chicago Medical Center*

Dated: June 13, 2025

In support of its Motion to Dismiss (the "Motion") the Third Amended Class Action Complaint (the "TAC") of Plaintiff Sophia Hartley ("Plaintiff"), Defendant University of Chicago Medical Center ("UCMC") states as follows:

## I. INTRODUCTION

After more than two and a half years of litigation, Plaintiff now makes her *fourth* attempt to allege a claim against UCMC. This attempt also fails.

Following the completion of discovery into certain limited topics, Plaintiff has significantly curtailed her sole remaining claim for a purported violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 *et seq*. Specifically, Plaintiff has conceded that the "Meta Collection Tools" (i.e., code deployed on a website) were never installed and therefore never operated on the UCMC MyChart patient portal (*https://mychart.uchospitals.edu/mychart*). (Dkt. No. 120 at 1.) This concession has caused Plaintiff to shift her story significantly once again. This time around, Plaintiff alleges she visited UCMC's unauthenticated public website (*www.uchicagomedcine.org*) (the "Public Website") and UCMC disclosed those visits to non-party Meta Platform Inc. ("Meta") through operation of the Meta Collection Tools. Plaintiff alleges that her visits to the Public Website were disclosed and improperly concludes that this disclosure somehow revealed her personal health information.[1] Plaintiff's factual allegations are insufficient and her flawed legal theory dooms her claim for at least *two* reasons.

[1] Remarkably, Plaintiff has voluntarily disclosed her own private medical information to the public. Specifically, in her own filing that attaches a redline comparison of the TAC against the Second Amended Class Action Complaint ("SAC"), Plaintiff revealed in allegations struck from the TAC, presumably because they referenced Plaintiff's use of MyChart, which is no longer an issue in this case: (1) the names and amounts of multiple medications she was prescribed (Dkt. No. 105-1 at 40-41); (2) specific medical tests she undertook (*id.*); and (3) specific medical tests she was seeking information about (*id*. at 42). Plaintiff's decision to publicly disclose this information impacts her ability to act as a purported class representative and her claim for damages, and stands in sharp contrast to her assertion that her "medical privacy has been violated" by UCMC. (Dkt. No. 126 ¶ 1.)

*First*, Plaintiff's ECPA claim should be dismissed because she fails to allege that any of the purportedly disclosed information constitutes particular health or treatment information specific to her, as directed by this Court in its Order dismissing Plaintiff's first amended complaint.

*Second*, Plaintiff's ECPA claim fails because she does not allege the *interception* of any information by UCMC, and instead relies on legally deficient allegations regarding the *disclosure* of information.

Plaintiff now has had four chances to state a viable claim against UCMC. She cannot. The TAC should be dismissed with prejudice and Plaintiff should not be permitted a fifth bite at the apple. *See El-Bey v. Vill. of S. Holland*, 2012 WL 1658301, at *10 (N.D. Ill. May 11, 2012) (dismissing with prejudice a second amended complaint where plaintiff "apparently paid no heed to [the] deficiencies" in the prior complaints).

## II. SUMMARY OF THE ALLEGATIONS AGAINST UCMC

Plaintiff alleges that she has been a patient of UCMC, an Illinois not-for-profit academic medical health system, since 2018. (Dkt. No. 126 ¶¶ 142-43.) According to Plaintiff, she has also been a "user" of UCMC's Public Website which allows her to "schedule appointments, request information on specific medical services, and research providers." (*Id.* ¶¶ 4, 143.)

Plaintiff asserts that UCMC used various "Meta Collection Tools" on its Public Website in order to "transmit the content of [a patient and UCMC's] communications to Meta." (*Id.* ¶¶ 1, 5.) Specifically, Plaintiff alleges that the Meta Collection Tools on UCMC's Public Website disclosed the following information to Meta: <u>(1)</u> information identifying Plaintiff (*Id.* ¶¶ 145, 146(g)-(i)); <u>(2)</u> the URLs Plaintiff visited associated with UCMC (*id.* ¶¶ 146(a),[2] (c), 170(q)); <u>(3)</u> the names

[2] Plaintiff alleges that the fact she was communicating with the "MyChart patient portal" was also disclosed (Dkt. No. 126 ¶ 146(a)), despite conceding that the Meta Collection Tools were never installed and therefore never operated on the UCMC MyChart patient portal (Dkt. No. 120 at 1).

of the websites Plaintiff visited (*id*. ¶ 146(e)); (4) the various button clicks Plaintiff engaged in while viewing the websites (*id*. ¶¶ 146(b), (d), 170(l)-(p)); and (5) whether Plaintiff had previously visited the website (*id*. ¶ 146(f)). Plaintiff does not allege the disclosure of Plaintiff's physicians, medical conditions, or treatments.

## III. PROCEDURAL BACKGROUND

On October 25, 2022, Plaintiff filed her original Complaint. (Dkt. No. 2.) On February 6, 2023, UCMC filed its motion to dismiss and supporting memorandum. (Dkt. Nos. 27-28.) On March 2, 2023, Plaintiff filed an agreed motion for leave to file her Amended Complaint. (Dkt No. 31.) On March 3, 2023, the Court granted Plaintiff's motion. (Dkt. No. 32.)

On March 3, 2023, Plaintiff filed her First Amended Complaint. (Dkt. No. 33.) On April 10, 2023, UCMC filed its motion to dismiss and supporting memorandum. (Dkt. Nos. 36, 39.) On November 8, 2023, the Court granted UCMC's motion and dismissed Plaintiff's ECPA and breach of implied duty claims, without prejudice, and Plaintiff's intrusion upon seclusion claim, with prejudice. (Dkt. No. 52.)

On December 12, 2023, Plaintiff filed her SAC. (Dkt. No. 60.) On January 17, 2024, UCMC filed its motion to dismiss and supporting memorandum. (Dkt. Nos. 64-65.) On April 30, 2024, the Court granted, in part, UCMC's motion and dismissed Plaintiff's breach of implied duty claim with prejudice, but permitted Plaintiff's ECPA claim to proceed. (Dkt. No. 75.) Following discovery into certain limited topics (Dkt. No. 93), Plaintiff conceded that some of the allegations in her SAC were unfounded and had to be removed. (Dkt. No. 105.) Following motion practice, on April 11, 2025, Plaintiff filed the TAC. (Dkt. No. 126.)

## IV. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of a complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plausibility standard is not met "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 678). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## V. ARGUMENT

### A. <u>The TAC Should Be Dismissed Because Plaintiff Fails to Allege Any Particular Health or Treatment Information Specific to Her Was Disclosed</u>

More than *nineteen months ago* this Court set a clear standard for Plaintiff: to state a claim for a violation of the ECPA, Plaintiff must allege that "particular health or treatment information" specific to her was disclosed. *Hartley v. Univ. of Chi. Med. Ctr.*, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023). The Court further held that the disclosure of mere "meta data" — i.e., "IP addresses, Facebook IDs, cookie identifiers, device identifiers and account numbers and the contents of the[] communications" including "URLs, buttons, pages, and tabs they click and view" is insufficient and amounts to "an absolute dearth" of what is required to be pled. *Id*. Plaintiff's TAC fails once again to meet this pleading standard.

On April 30, 2024, this Court analyzed Plaintiff's 221-paragraph SAC and found a total of *four* paragraphs which met the above-referenced pleading standard. Specifically, the Court found

that paragraphs 156,[3] 158, 160, and 167 of the SAC sufficiently alleged that individually identifiable health information specific to Plaintiff was disclosed to Meta. (Dkt. No. 75 at 5.) Since the Court's ruling, the parties' initial limited discovery has revealed that the majority of these allegations are baseless and were made without requisite factual support. As a result, Plaintiff removed the majority of these allegations, including those allegations related to her use of the UCMC MyChart patient portal. (*See* Dkt. No. 105-1 (red-line comparison of SAC to TAC).) Critically, Plaintiff did *not* add any new substantive allegations to the TAC, as compared to the SAC. (*Id.*) As a result, a comparison of the four above-referenced paragraphs in the SAC (Dkt. No. 60) to the scant remaining allegations in the TAC (Dkt. No. 126) highlights the deficiencies in Plaintiff's allegations in at least *three* critical respects.

*First*, paragraphs 158 and 160 (and the allegations contained therein) have been completely removed from the TAC. (Dkt. No. 105-1 at 40-42.) As a result, these allegations (which centered on Plaintiff's alleged use of the MyChart patient portal) are no longer at issue. *Second*, paragraph 156 of the SAC has been recast as paragraph 144 of the TAC and merely alleges that "Plaintiff used UCMC's public website [. . .] to search for a primary care physician." (Dkt. No. 126 ¶ 144.) *Finally*, paragraph 167 of the SAC has been recast as paragraph 149 of the TAC with significant revisions. Specifically, Plaintiff deleted allegations that she received ads focused on "conditions for which she was being treated, the specific medications she was prescribed, and symptoms related to these conditions[.]" (Dkt. No. 105-1 at 45.) Plaintiff now only alleges that she received ads based on "actions she performed on UCMC's [Public Website.]" (Dkt. No. 126 ¶ 149.)[4]

---

[3] The Court's April 30, 2024, Memorandum Opinion and Order references paragraph 256. (Dkt. No. 75 at 5.) However, the SAC does not contain a paragraph 256. (Dkt. No. 60.) The reference to paragraph 256 appears to be a scrivener's error that was intended to reference paragraph 156 of the SAC.

[4] By deleting these allegations from the TAC, Plaintiff tacitly admits that she did not engage in these actions (e.g., schedule appointments and tests, manage prescriptions, manage pharmacies, view test results, message her healthcare providers, review message from UCMC, review billing information, and pay bills)

In these revised paragraphs, Plaintiff does *not* allege that any of her medical symptoms, conditions, or treatments were intercepted or disclosed to Meta. Indeed, Plaintiff does not even allege that her status as a UCMC patient was intercepted or disclosed to Meta.[5] She does not make these allegations, because she cannot. The interception and disclosure of that type of information is impossible based on Plaintiff's use of UCMC's Public Website. In short, there is no way for UCMC, Meta, or any other third-party to distinguish between a non-patient visitor to UCMC's Public Website and a patient visitor to UCMC's Public Website. Courts throughout the Country have reached this same common-sense conclusion. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) ("Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes—information that unequivocally provides a window into an individual's personal medical history"); *AHA v. Becerra*, 738 F. Supp. 3d 780, 801-02 (N.D. Tex. 2024) (visits to unauthenticated public websites do not necessarily "relate" to an individual's "own medical conditions" or "their own healthcare" and thus do not constitute information protected from disclosure by HIPAA); *Kurowski v. Rush Sys. for Health*, 2023 WL 4707184, at *4 (N.D. Ill. July 24, 2023) ("*Kurowski I*") (dismissing ECPA claim where plaintiff alleged metadata from authenticated and unauthenticated websites was transmitted as such data "does not in the least bit fit into [the PHI]

---

on UCMC's Public Website. (Dkt. No. 105-1 at 40-41.) Indeed, when asked at her deposition, Plaintiff was unable to recall any specific action she took when visiting UCMC's Public Website and stated that after initially visiting the website in 2018 or 2019, she does not "remember a reason that [she] would have looked at it." (A true and correct copy of Plaintiff's deposition transcript is attached hereto as **Exhibit 1**, Ex. 1 at 57:23.)

[5] In a separate paragraph, Plaintiff makes the conclusory allegation that "her status as a UCMC patient" was disclosed to Meta. (Dkt. No. 126 ¶ 146.) Plaintiff offers no factual support for this conclusory allegation and thus it should be ignored, as it was when it was included in earlier iterations of Plaintiff's complaint. *Minard v. Wal-Mart Stores, Inc.*, 2016 WL 9211678, at *2 (N.D. Ill. Apr. 12, 2016) ("Neither conclusory legal statements nor abstract recitations of the elements of a cause of action add to the notice that Rule 8 demands, so they do not help a complaint survive a Rule 12(b)(6) motion.") (citation omitted); *Robinson v. Nayvadisu Wilburn, LLC*, 2023 WL 5509324, at *2 (N.D. Ill. Aug. 25, 2023) (holding same).

category"); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123-24 (S.D. Cal. 2023) (disclosure of plaintiff's use of unauthenticated website to "research . . . doctors" and "look for providers" is "not considered 'Protected Health Information' because nothing about [the] information relates specifically to Plaintiff's health and the information is general health information that is accessible to the public at large.") (citations omitted).

The deficiencies in Plaintiff's allegations become clear when compared to an adequately pled ECPA claim. A brief analysis of the allegations in the *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ("*Kurowski II*"), decision is instructive. Just as here, in *Kurowski I*, the plaintiff's prior versions of her complaint "plausibly alleged only the transmission of metadata to third parties" which the court found was not particular health or treatment information sufficient to state a claim. *Kurowski II*, at *2. However, the later amended pleading in *Kurowski II* alleged that the defendant "transmitted the name and location of [plaintiff's] personal physician, as well as her physician's specialty." *Id*. at *3. The *Kurowski II* court found this level of detail sufficient to state a claim under the ECPA. *Id*. Here, however, Plaintiff makes no such allegations *despite now having made four attempts to do so*.

Plaintiff's alleged use of UCMC's Public Website cannot result in the interception and disclosure of the requisite personal health information because, like most unauthenticated websites, UCMC's Public Website "does not have access to individuals' PHI" and thus use of tracking technologies on such websites "is not regulated by the HIPAA Rules." U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, dated June 26, 2024, *available at: https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html*. Even if Plaintiff were to allege (and she has not) that she used UCMC's Public Website to view

content related to a specific medical condition or treatment and that her viewing of that content was intercepted and disclosed, such allegations would not be sufficient. In such a hypothetical, there is no connection between the content of the Public Website that Plaintiff viewed and Plaintiff's own medical conditions or treatments. UCMC cannot intercept or disclose information that was never communicated, and Plaintiff did not (and could not) communicate to UCMC via its Public Website that she was suffering from a medical condition or was receiving medical treatment. As a result, Plaintiff's allegations, which are now limited to her use of UCMC's Public Website, fail to state an ECPA claim, and the TAC should therefore be dismissed. *Hartley*, 2023 WL 7386060, at *2; *see also Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2023 WL 7017734, at *3 (E.D. Pa. Oct. 10, 2023) (dismissing an ECPA claim where plaintiff failed to allege "that any specific test results, diagnoses, or sensitive messages were intercepted or improperly disclosed").

### B. **The TAC Should Be Dismissed Because UCMC Did Not Intercept Any Communications**

The ECPA, often referred to as the "Wiretap Act," is designed to "protect against the unauthorized interception of electronic communications." *Ameritech Corp. v. McCann*, 297 F.3d 582, 583 (7th Cir. 2002) (quotation omitted). The ECPA makes it unlawful to "intentionally intercept[ ] [or] endeavor [ ] to intercept . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The ECPA also prohibits disclosure or use of the contents of an unlawfully intercepted communication. *Id.* § 2511(1)(c)-(d). Plaintiff's ECPA claim should be dismissed because she has again failed to allege that UCMC intercepted any communication.

Plaintiff has littered the TAC with dozens of references to the "disclosure" of various electronic communications. (*See, e.g.*, Dkt. No. 126 ¶ 14 (alleging UCMC obtained "unearned revenues derived from its unauthorized *disclosure* of patient information.") (emphasis added)). But Plaintiff's emphasis on the alleged disclosure of various electronic communications misses

the mark. In order to assert any claim under Section 2511(1), Plaintiff must first allege that UCMC "intercepted" an electronic communication.[6] *See* 18 U.S.C. § 2511(1)(c) (ECPA violation for a "disclosure" requires "the interception of a wire, oral, or electronic communication"); 18 U.S.C. § 2511(1)(d) (same); *see also Jurgens v. Build.com*, 2017 WL 5277679, at *4 (E.D. Mo. Nov. 13, 2017) ("interception is a necessary element for each type of violation" of the ECPA). Put simply, "there is a certain temporal sequence of events that must occur before a person can be liable for disclosure or use." *Valentine v. WideOpen W. Fin., LLC*, 2013 WL 5423846, at *6 (N.D. Ill. Sept. 27, 2013). Plaintiff has not alleged (and cannot allege) that UCMC "intercepted" any electronic communication.

**1. UCMC Cannot Intercept Communications to Which It Is a Party**

ECPA Section 2511(2)(d) states that it is not unlawful for a person to intercept an electronic communication "where such person is a party to the communication." "Tautologically, a communication will always consist of at least two parties: the speaker and/or sender, and at least one intended recipient." *In re Google Cookie Placement*, 806 F.3d at 143 (affirming dismissal of an ECPA claim where the defendants were the intended recipients of the electronic transmissions). Here, UCMC was unquestionably a party to the communications that Plaintiff claims were intercepted, as she alleges that she knowingly communicated with UCMC via its Public Website. (Dkt. No. 126 ¶ 143.) Thus, Plaintiff's own allegations that the content of the communications related to her healthcare at UCMC (*id.*), and that UCMC was Plaintiff's healthcare provider (*id.*), are fatal to her claims.

---

[6] "A plaintiff pleads a prima facie case under the [ECPA] by showing that the defendant '(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device.'" *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 135 (3d Cir. 2015) (quoting *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 18 (1st Cir. 2003)).

The law is clear: UCMC cannot intercept communications for which it was the intended recipient. *See Allen v. Quicken Loans Inc.*, 2018 WL 5874088, at *3 (D.N.J. Nov. 9, 2018) ("[S]ection 2511(2)(d) makes the interception lawful when the person intercepting 'is a party to the communication or where one of the parties to the communication has given prior consent to such interception.'") (quotation omitted). However, Plaintiff attempts to base her claim *exclusively* on communications for which UCMC was the intended recipient. Put another way, UCMC "acted as no more than the second party to a communication. This is not an interception as defined by the [ECPA]." *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001); *Zak v. Bose Corp.*, 2020 WL 2762552, at *2 (N.D. Ill. May 27, 2020) ("A person who takes part in a conversation or whose presence is known to other participants is a party to the communication."); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (holding that the ECPA "does not make it unlawful for a person to intercept . . . [an] electronic communication if the person is a party to the communication") (internal quotations and citations omitted).

### 2. Plaintiff Has Not Alleged the Primary Purpose of UCMC's Alleged "Interception" Was Criminal or Tortious

To be sure, the ECPA exemption afforded to a party-participant to a communication is not absolute. The ECPA provides that "a person who is a party to the communication . . . may intercept that communication as long as it is not 'for the purpose of committing any criminal or tortious act.'" *Zak*, 2020 WL 2762552, at *2 (quoting 18 U.S.C. § 2511(2)(d)). In order for the ECPA to apply to Plaintiff's alleged communications with UCMC, *the primary purpose of the interception* must have been to commit a crime or tort. *See Angelo v. Moriarty*, 2016 WL 640525, at *5 (N.D. Ill. Feb. 18, 2016) (dismissing an ECPA claim where the plaintiff could not allege that a communication was intercepted for the purpose of violating the law or committing a tort); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (quoting *In re*

*DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 518 (S.D.N.Y. 2001)) (denying a motion for class certification and noting that "[a]lleged interceptions fall within the tort or crime exception only where the 'primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously.'"). Indeed, "Section 2511(2)(d)'s legislative history and caselaw make clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a *specific contemporary intention* to commit a crime or tort." *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 515 (emphasis added); *see also Thomas v. Pearl*, 998 F.2d 447, 451 (7th Cir. 1993) (holding that the plaintiff "must show that [the defendant] either intended to break the law or commit a tort against him in order to prove a violation of the federal statute").

According to Plaintiff, in allegedly "*disclosing* the content of Plaintiff's and the Class members' communications relating to [medical care], UCMC had a purpose that was tortious, criminal, and designed to violate state constitutional and statutory provisions." (Dkt. No. 126 ¶ 179) (emphasis added). Plaintiff makes a similar conclusory allegation with respect to UCMC's purported purpose regarding "consent provided by UCMC using the Meta Collection Tools." (*Id.* ¶ 184.)[7] Plaintiff's conclusory allegations are insufficient to trigger the narrow crime/tort exception for at least *five* reasons.

[7] Plaintiff also vaguely alleges that the "Meta Collection Tools allow UCMC to intercept individually-identifiable health information from UCMC's website and monetize this information for its own financial gain." (Dkt. No. 126 ¶ 1.) To the extent Plaintiff relies on this unsupported allegation to satisfy the crime/tort exception, it is insufficient. As Plaintiff alleges, UCMC was an intended recipient of the communications at issue (*id*. ¶ 143) and thus did not need to utilize the Meta Collection Tools or any other instrumentality to "intercept" Plaintiff's health information. Moreover, multiple courts have held that if the purpose of a purported "interception" is financial gain, then the crime/tort exception does not apply. *See Nienaber v. Overlake Hospital Medical Center*, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (allegation that defendant utilized data to "increase its own profits through sophisticated and targeted advertising" fail to satisfy the crime/tort exception); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp.3d 928, 945 (N.D. Cal. 2023); *Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (plaintiffs' own allegations that "[d]efendant used these technologies 'to obtain valuable personal data about visitors to its Website, ... to increase its own

*First*, Plaintiff's allegations underscore a misapplication of the crime/tort exception. The TAC focuses on UCMC's alleged criminal or tortious purpose in purportedly *disclosing* certain communications. (*Id.* ¶ 179.) That is not the test. Instead, the proper test requires Plaintiff to allege UCMC's purpose in *intercepting* the communications was criminal or tortious. *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13; *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 518. In other words, Plaintiff must allege that when UCMC communicated with Plaintiff via its Public Website (the purported "interception"), UCMC's purpose was criminal or tortious. *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010) ("There is a temporal thread that runs through the fabric of the statute and the case law" which requires the defendant, at the time of the interception, to "intend to use the recording to commit a criminal or tortious act."). Plaintiff makes no such allegation.

The Seventh Circuit has explicitly rejected the argument that the crime/tort exception applies based on the criminal or tortious nature of a subsequent *disclosure* of allegedly intercepted information. In *Desnick v. American Broadcasting Companies*, the plaintiffs alleged that the defendants violated the ECPA when they dispatched undercover "test patients" equipped with concealed cameras to plaintiffs' ophthalmic clinics in order to investigate reports of plaintiffs performing unnecessary cataract surgery for money. 44 F.3d 1345, 1347-48 (7th Cir. 1995). The plaintiffs alleged that the defendants' conduct violated the ECPA, despite the defendants being parties to the recorded communications, because the result was the broadcast of an allegedly defamatory news report. *Id.* at 1353.

profits through sophisticated and targeted advertising[,] and to improve its website analytics'" pointed to "a noncriminal, non-tortious purpose" under the ECPA.) (internal citation omitted).

The *Desnick* court found the plaintiffs had adequately pled a claim for defamation, but affirmed the dismissal of the ECPA claim, finding that the "defendants did not order the camera-armed testers into the Desnick Eye Center's premises in order to commit a crime or tort." *Id*. Instead, the purpose "was to see whether the [defendants'] physicians would recommend cataract surgery on the testers." *Id*. Similar to *Desnick*, UCMC did not communicate with Plaintiff in order to commit a crime or tort. Instead, according to Plaintiff, she used UCMC's Public Website for communications concerning her medical care. (Dkt. No. 126 ¶ 143.) Since the provision of medical care is neither criminal nor tortious, the narrow crime/tort exception does not apply.[8]

*Second*, even if the correct test for the crime/tort exception related to UCMC's "purpose" in allegedly *disclosing* the communications (it does not), Plaintiff's allegations are still insufficient. Despite having the opportunity to conduct limited discovery (Dkt. No. 93), Plaintiff offers no factual support for her lone conclusory allegation that UCMC's "purpose" in disclosing the communications was criminal or tortious. (Dkt. No. 126 ¶ 179.) Bare legal conclusions are not entitled to the presumption of truth when weighing a motion to dismiss. *Minard v. Wal-Mart Stores, Inc.*, 2016 WL 9211678, at *2 (N.D. Ill. Apr. 12, 2016) ("Neither conclusory legal statements nor abstract recitations of the elements of a cause of action add to the notice that Rule 8 demands, so they do not help a complaint survive a Rule 12(b)(6) motion.").

*Third*, even if Plaintiff identified the correct test for the crime/tort exception, Plaintiff must allege that UCMC intercepted the communications for the purpose of a tortious or criminal act that

[8] Judge Leinenweber's ruling dismissing Plaintiff's first amended complaint, *Hartley*, 2023 WL 7386060, relied, in part, on the holding in *Kurowski I*. Since that time, the *Kurowski II* decision permitted the plaintiff to re-plead the ECPA claim. In reaching that outcome, the *Kurowski II* ruling devotes a scant two paragraphs to the analysis of the crime/tort exception. *See Kurowski II* at *3. In that limited analysis, the *Kurowski II* court failed to follow the binding Seventh Circuit holding in *Desnick*, and misapplied the crime/tort exception in any event. *Id*. (finding subsequent transmission of data for financial gain satisfies the crime/tort exception).

is *independent* of the intentional act of recording or intercepting the communication. Despite having four attempts to do so, Plaintiff still fails to make this required allegation. The recent decision in *Nienaber* is instructive. In *Nienaber*, the plaintiff alleged a nearly identical ECPA claim based on her purported use of the defendant's websites to "search for healthcare providers, pay bills, research and identify treatment options, and log into [defendant's] patient portal." 2025 WL 692097, at *1. According to plaintiff, the defendant utilized certain "plugins in order to track and enable the transmission and disclosure of information from visitors" to third-parties. *Id*. The *Nienaber* court dismissed, with prejudice, plaintiff's ECPA claim finding that plaintiff's amended pleadings had only alleged "that the technologies installed by Defendant contemporaneously transmit Plaintiff's communications to third parties . . . . [a]nd Plaintiff's own argument demonstrates that the alleged tortious or criminal use of the acquired communications is the disclosure itself." *Id*. at *13. Similarly here, Plaintiff fails to allege any criminal or tortious purpose or action on the part of UCMC that is separate from the recording, interception or transmission of communications to which it was a party.

*Fourth*, Plaintiff's allegations regarding specific statutes or common laws that were allegedly violated as a result of the disclosure are not relevant. (Dkt. No. 126 ¶¶ 179(a)-(g).) "[W]hether a tort was committed is irrelevant — the test is whether [the defendant] intended to commit a tort." *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018); *see also In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 519 (refusing to apply crime/tort exception and finding that "a culpable mind does not accompany every tortious act"). Put simply, even if a subsequent disclosure constituted a crime or tort (an allegation UCMC strongly disputes), more is required. *Cohen*, 2018 WL 3392877, at *4 (The "[plaintiff] fails to demonstrate that

[defendants'] primary purpose *was to commit* a tort. Instead, he claims that [defendants'] conduct *amounted to* a tort.") (emphasis in original).

*Finally*, Plaintiff's conclusory allegation that UCMC intended to commit a crime or tort is nonsensical in the face of the undisputed facts established during the parties' limited initial discovery. It is undisputed that patients can utilize the UCMC MyChart patient portal to communicate with UCMC regarding their personal medical care. However, Plaintiff has conceded that the Meta Collection Tools were never installed or operated on the UCMC MyChart patient portal. (Dkt. No. 120 at 1.) Instead, according to Plaintiff, the installation and operation of the Meta Collection Tools was limited to UCMC's Public Website. If UCMC's purpose in installing and operating the Meta Collection Tools was to engage in an intentional criminal and/or tortious plot to intercept and disclose patients' personal medical information (a conclusory allegation UCMC completely and forcefully denies) there is no conceivable reason to limit the installation and operation of the Meta Collection Tools solely to UCMC's Public Website, where no personal medical information is communicated. *See Smith*, 745 F. App'x at 9; *Becerra*, 738 F. Supp. 3d at 801-02; *Cousin*, 681 F. Supp. 3d at 1123-24.

Plaintiff has failed to state a claim for an interception under the ECPA. Her allegations assert that UCMC was a party to the communications at issue. Those same allegations fail to show that UCMC's participation as a party to the communications was for any criminal or tortious purpose. To the contrary, Plaintiff has alleged that the primary purpose of her communications with UCMC was medical care. Accordingly, Plaintiff's claim for violation of the ECPA fails.

## VI. CONCLUSION

For all of the foregoing reasons, Defendant University of Chicago Medical Center respectfully submits that this Court should grant its Motion, and dismiss Plaintiff's third amended class action complaint, with prejudice.

Respectfully submitted,

UNIVERSITY OF CHICAGO MEDICAL CENTER

By: */s/ Ryan S. Hedges*
One of Its Attorneys

Ryan S. Hedges
BAKER & HOSTETLER LLP
One North Wacker, Suite 3700
Chicago, IL 60607

Zachary J. Watters
Jason B. Sobelman
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

Dated: June 13, 2025

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ryan F. Stephan
James B. Zouras
Mohammed A. Rathur
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
Phone: (312)233-1550
Fax: (312)233-1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
mrathur@stephanzouras.com

Lauren R. Goldman
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Phone: (212) 351-4000
lgoldman@gibsondunn.com

Matthew L. Kutcher
Cooley LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
Phone: (312) 881-6500
Fax: (312) 881-6598
mkutcher@cooley.com

on June 13, 2025

*/s/ Ryan S. Hedges*
Ryan S. Hedges