IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOPHIA HARTLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF CHICAGO MEDICAL CENTER,<br><br>Defendant. | No. 1:22-cv-05891 |

**DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

Ryan S. Hedges
BAKER & HOSTETLER LLP
One North Wacker, Suite 3700
Chicago, IL 60607
(312) 416-6200

Zachary J. Watters
Jason B. Sobelman
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

*Attorneys for Defendant University of Chicago Medical Center*

Dated: June 13, 2025

In support of its Motion for Summary Judgment and to Strike Plaintiff's Class Allegations (the "Motion"), Defendant University of Chicago Medical Center ("UCMC") states as follows:

## I. INTRODUCTION

Plaintiff Sophia Hartley ("Plaintiff") viewed and accepted The University of Chicago Medicine Terms of Use ("UCMC's Terms") on four separate occasions when she utilized the UCMC MyChart patient portal (*https://mychart.uchospitals.edu/mychart*). Relevant to this Motion is the most recent occasion Plaintiff accepted UCMC's Terms. On December 5, 2023, with no complaint pending and while represented by her current counsel, Plaintiff contracted with UCMC to: (i) engage in pre-litigation remedies prior to filing suit, and (ii) refrain from initiating or participating in a class action against UCMC. By later filing her Second Amended Class Action Complaint ("SAC") and then her Third Amended Class Action Complaint ("TAC"), Plaintiff has breached both of her contractual promises. Accordingly, UCMC's Motion should be granted for at least *two* reasons.

*First*, Plaintiff concedes that she ignored her obligations to notify UCMC "in writing" of her dispute and to attempt, in good faith, to resolve the dispute informally. Moreover, UCMC's Terms only permit Plaintiff to "commence a formal proceeding" by filing her complaint *after* the parties fail to resolve the dispute informally. Due to Plaintiff's failure to comply with her pre-filing contractual obligations, UCMC is entitled to summary judgment on Plaintiff's TAC.

*Second*, by accepting UCMC's Terms, Plaintiff agreed that, *after* complying with her pre-filing contractual obligations, she would *not* initiate or participate in a class action against UCMC. Plaintiff breached this contractual obligation by filing her putative class action. As a result, Plaintiff's class claim is barred and the class allegations should be stricken if the Court does not

grant summary judgment in favor of UCMC or does not grant UCMC's Motion to Dismiss filed concurrently herewith.[1]

## II. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### A. The Basis of Plaintiff's Claim

In her TAC, Plaintiff alleges that she has been a patient of UCMC, an Illinois not-for-profit academic medical health system, since 2018. (UCMC's Local Rule 56.1(a) Statement of Material Facts Not in Dispute ("SOF") ¶ 1.) According to Plaintiff, she has also been a "user" of UCMC's Public Website which allows her to "schedule appointments, request information on specific medical services, and research providers." (*Id*. at ¶ 2.) Plaintiff asserts that UCMC used various "Meta Collection Tools" on its Public Website in order to "transmit the content of [a patient and UCMC's] communications to Meta." (*Id*. at ¶ 3.) Based on these allegations, Plaintiff attempts to state a claim under the Electronic Communications Privacy Act ("ECPA"). (*Id*. at ¶ 4.)

In prior versions of her complaint, Plaintiff alleged that her personal health information was transmitted to Meta via the Meta Collection Tools operating on the UCMC MyChart patient portal (*https://mychart.uchospitals.edu/mychart*). (*Id*. at ¶ 5.) However, the parties' limited initial discovery confirmed those allegations were false, and Plaintiff has conceded that the Meta Collection Tools were never installed or operated on the UCMC MyChart patient portal. (*Id*. at ¶ 6.)

---

[1] UCMC acknowledges that the Court's May 1, 2025 Minute Order states that this Motion was expected to be a "Rule 56 motion on Threshold Topic #3." (Dkt. No. 130.) However, the remedy to redress Plaintiff's failure to abide by the class action waiver may be more appropriately requested in a motion to strike Plaintiff's class allegations. Nonetheless, UCMC has limited its arguments to Threshold Topic #3 in accordance with the Court's Orders and the parties' Joint Proposal for Discovery Schedule and Scope. (Dkt. Nos. 92–93.)

### B. Plaintiff's First Attempts to State a Claim

On October 25, 2022, Plaintiff filed her original Complaint. (*Id*. at ¶ 7.) On February 6, 2023, UCMC filed its motion to dismiss and supporting memorandum. (*Id*. at ¶ 8.) On March 2, 2023, Plaintiff filed an agreed motion for leave to file her Amended Complaint. (*Id*. at ¶ 9.) On March 3, 2023, the Court granted Plaintiff's motion. (*Id*. at ¶ 10.)

On March 3, 2023, Plaintiff filed her First Amended Complaint ("FAC"). (*Id*. at ¶ 11.) On April 10, 2023, UCMC filed its motion to dismiss and supporting memorandum. (*Id*. at ¶ 12.) On November 8, 2023, the Court granted UCMC's motion and dismissed every claim in Plaintiff's FAC. (*Id*. at ¶ 13.) As a result, this case was "terminated." (*Id*. at ¶ 13.)

### C. Plaintiff Agrees to be Bound by UCMC's Terms

UCMC's records indicate that Plaintiff logged in to the UCMC MyChart patient portal approximately 86 times between November 2019 and December 2023. (*Id*. at ¶ 15.) As a user of the UCMC MyChart patient portal, Plaintiff was occasionally presented with a copy of UCMC's Terms while logging in. (*Id*. at ¶ 16.) At that time Plaintiff, or any user of the UCMC MyChart patient portal, had an opportunity to review UCMC's Terms and was then asked to consent to them. (*Id*. at ¶ 17.) UCMC's Terms and the options for Plaintiff (or any user) to "Accept" or "Decline" those Terms was presented to Plaintiff in substantially the following format:



AT THE FOREFRONT UChicago Medicine MyChart

**The terms and conditions for accessing MyChart have been updated. To proceed, you must agree to the following conditions governing the use of this website.**

TERMS AND CONDITIONS OF USE
The University of Chicago Medical Center ("UCMC") is pleased to offer you access to portions of your medical information and the ability to communicate with your UCMC care team via a Web-based version of our computer systems called MyChart.

We think it is important for you to know how we handle information we communicate via the Internet. This Terms & Conditions statement outlines our practices and our sensitivity to your right to privacy. We reserve the right to revoke access at any time for any reason.

**Response to Electronic Communication** - UCMC will make its best effort to provide a timely response to electronic inquiries. In some cases, the clinic staff that needs to respond to an electronic inquiry or other communication may not be immediately available so a patient should allow at least three (3) business days for a response. Accordingly, emergency situations requiring immediate attention should not be submitted electronically, and the patient should go to the nearest emergency room or contact 911 immediately.

The messages that we send you may contain information that is important to your health and medical care, and it is your responsibility to monitor these messages. UCMC will not be liable for any loss, injury or claims of any kind resulting from MyChart messages that you fail to read in a timely manner.

Furthermore, with respect to any electronic communications sent by the patient, we are only able to respond to such communications based on the information provided by the patient. If there is insufficient information provided, we will be unable to provide accurate and reliable services.

**Web Site Links** - MyChart may offer links to related medical Web sites not managed by UCMC. These Web site link(s) are for a patient's informational purposes only. UCMC does not endorse and has not verified the accuracy of the information in/on these Web sites, and the patient should not rely on any of the information found on the Web sites for purposes of treatment or diagnosis.

**Minor Eligibility** - Children under the age of 12 are not permitted to have their own individual UCMC MyChart account. Minor patients ages 12 to 17 years can request individual, full access to their own MyChart Account with the approval of their

I Accept Decline

High Contrast Theme MyChart® licensed from Epic Systems Corporation, © 1999 - 2022.

(*Id*. at ¶ 18.) UCMC's records indicate that Plaintiff reviewed and affirmatively consented to UCMC's Terms on multiple occasions, including on December 5, 2023. (*Id*. at ¶ 19.) Specifically, UCMC's records indicate that Plaintiff viewed UCMC's Terms at 9:03 a.m. (CST) and then accepted UCMC's Terms one minute later at 9:04 a.m. (CST). (*Id*. at ¶ 20.)

**D. The Content of UCMC's Terms**

The content of UCMC's Terms have changed over time. (*Id*. at ¶ 21.) The latest version of UCMC's Terms, which Plaintiff viewed and accepted on December 5, 2023, have an effective date of August 31, 2023 ("Aug. 31, 2023 Terms"). (*Id*. at ¶ 22.) The relevant provisions of that version of UCMC's Aug. 31, 2023 Terms are outlined below.

On its face, UCMC's Aug. 31, 2023 Terms apply to the use of both: (i) UCMC's unauthenticated public website (*www.uchicagomedine.org*) (the "Public Website") and (ii) UCMC's MyChart patient portal. (*Id*. at ¶ 23.) UCMC's Aug. 31, 2023 Terms refer to both the Public Website and the MyChart patient portal, collectively, as the "Digital Services." (*Id*. at ¶ 24.)

The very first page of UCMC's Aug. 31, 2023 Terms made Plaintiff aware that "**[b]y clicking 'I Accept' or by accessing our Digital Services** [. . .] **you agree to the Terms.**" (*Id*. at ¶ 25 (emphasis in original).) Plaintiff was also cautioned that if she did "**not agree to all of the Terms, including the class action waiver described below, [she] may not access or use the Digital Services.**" (*Id*. at ¶ 26 (emphasis in original).) Consistent with that representation, access to the UCMC MyChart patient portal is available only if a potential user first clicks "**I Accept**" when presented with UCMC's Terms. (*Id*. at ¶ 27.) After accepting UCMC's Aug. 31 2023 Terms on December 5, 2023 at 9:04 a.m., Plaintiff proceeded to access multiple features of the UCMC MyChart patient portal later that same day and on December 10, 2023. (*Id*. at ¶ 28.)

Additionally, the first page of UCMC's Aug. 31, 2023 Terms also includes a notice (in bold font) that by accepting UCMC's Aug. 31, 2023 Terms, Plaintiff was limiting the remedies available to her in the event a dispute arose regarding the Digital Services. (*Id*. at ¶ 30.) Specifically, UCMC's Aug. 31, 2023 Terms state: "**Section 15 of these Terms limits the remedies available to you in the event of certain disputes related to the operation or use of the Digital Services, including agreeing to file any dispute on an individual basis (and not as part of a class or collective action) and to waive a jury trial**." (*Id*. at ¶ 31 (emphasis in original).)

As indicated on the first page of UCMC's Aug. 31, 2023 Terms, Section 15 limits the remedies available to Plaintiff with respect to certain types of disputes. (*Id*. at ¶ 32.) In pertinent

part, Section 15 states: "**Please read the following sections carefully because they limit the manner in which you can seek relief from us related to certain disputes, claims, suits, actions, causes of action, demands, or proceedings against any UCMC Parties[2] that in any way arise out of or relate to the operation, or your use, of the Digital Services or Content (except for disputes that arise from Health Care Services) ("Disputes")**." (*Id.* (emphasis in original).) Section 15 contains two sub-parts which limit both Plaintiff and UCMC's rights with respect to "Disputes" and are relevant to this motion.

*First*, Section 15(C) states, in relevant part: "You and UCMC agree that each party will notify the other party in writing of any Dispute within thirty (30) days of the date it arises so that the parties can attempt in good faith to resolve the Dispute informally." (*Id.* at ¶ 35.) UCMC's Aug. 31, 2023 Terms further provide for how each party is to be provided the written notice and the required content of the written notice. (*Id.*) Critically, Section 15(C) states that if "you and UCMC cannot agree how to resolve the Dispute within thirty (30) days after the date notice is received by the receiving party" only then can either party "commence a formal proceeding." (*Id.*)[3]

*Second*, Section 15(A) states: "**You and UCMC agree that each may bring claims or otherwise resolve Disputes against the other party only on an individual basis, and you waive any right to pursue any claims as a plaintiff of class member in any purported class or**

[2] UCMC's Terms define the phrase "UCMC Parties" to mean "UCMC or any of its affiliates or any of its or their respective officers, directors, employees, agents, contractors, and other representatives[.]" (SOF ¶ 33.)

[3] Section 15(C) also contains a waiver of the right to a jury trial on Disputes for both Plaintiff and UCMC. (SOF ¶ 36.) For the reasons outlined below (*see* Section IV(B)), the jury trial waiver applies to Plaintiff's ECPA claim and Plaintiff's jury demand therefore should be stricken. *See Norhurst, Inc. v. Acclaim Sys.*, 2012 WL 473135, at *4 (N.D. Ill. Feb. 9, 2012) (granting motion to strike jury demand based on parties' jury trial waiver).

**representative action or proceeding**, whether on behalf of you or any other individual or group of individuals." (*Id*. at ¶ 37 (emphasis in original).)

### E. Plaintiff's Violations of UCMC's Aug. 31, 2023 Terms

After agreeing to be bound by UCMC's Aug. 31, 2023 Terms, Plaintiff accessed the UCMC MyChart patient portal numerous times on December 5 and December 10, 2023. (*Id*. at ¶ 28.) Plaintiff never accessed the UCMC MyChart patient portal after December 10, 2023. (*Id*. at ¶ 29.) On December 12, 2023, Plaintiff filed her SAC. (*Id*. at ¶ 39.) On January 17, 2024, UCMC filed its motion to dismiss and supporting memorandum. (*Id*. at ¶ 40.) On April 30, 2024, the Court granted, in part, UCMC's motion and dismissed Plaintiff's breach of implied duty claim with prejudice, but permitted Plaintiff's ECPA claim to proceed. (*Id*. at ¶ 41.) Following discovery into certain limited topics (*Id*. at ¶ 42), Plaintiff conceded that some of the allegations in her SAC were unfounded and had to be removed. (*Id*.) Following motion practice, on April 11, 2025, Plaintiff filed the TAC. (*Id*. at ¶ 43.) Plaintiff concedes that she never attempted to comply with Section 15(C) and never submitted a written notice to UCMC. (*Id*. at ¶ 44.) Moreover, Plaintiff has styled her TAC and all prior iterations of her complaint as putative class actions. (*Id*. at ¶ 45.)

## III. LEGAL STANDARD

Summary judgment is proper where a moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(a), (c). Because summary judgment is the "put up or shut up" moment in a lawsuit, a non-moving party

must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial" to resist summary judgment. *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). Further, "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a summary judgment motion]; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

Under Federal Rule of Civil Procedure 12(f), Rule 23(c)(1)(A), and Rule 23(d)(1)(D), the Court has the authority to strike all class allegations once it becomes apparent a class action cannot be maintained. *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) (the court "[a]t an early practicable time [. . .], must determine by order whether to certify the action as a class action"). A motion to strike class allegations, made pursuant to these provisions, is an appropriate device to determine whether the case will proceed as a class action. *Id.* at *2. Numerous courts agree. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2009) (collecting cases).

## IV. ARGUMENT

### A. <u>UCMC's Aug. 31, 2023 Terms Are a Valid and Enforceable Contract</u>

Courts generally analyze the enforceability of a website's terms of use under state contract law. *See Lee v. Ticketmaster L.L.C.*, 817 Fed. App'x 393, 394 (9th Cir. 2020) (referring to "website's terms of use" as being analyzed like "Internet contracts"); *Fitzpatrick v. Lens.com, Inc.*, 2024 WL 4555337, at *3 (N.D. Ill. Oct. 23, 2024) (analyzing website terms of use as a contract formation issue); *Gorny v. Wayfair Inc.*, 2019 WL 2409595, at *5 (N.D. Ill. June 7, 2019) (holding

same). Under Illinois law,[4] contract formation is evaluated under an objective theory. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 711 (7th Cir. 2019) (citations omitted); *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (citations omitted). "Under the objective theory, intent to manifest assent in Illinois is revealed by 'outward expressions such as words and acts.'" *Sgouros*, 817 F.3d at 1034 (quotation omitted).

"In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." *Gupta*, 934 F.3d at 712 (quotation omitted). Here, all three ingredients are present. *First,* there can be no credible dispute that UCMC's Aug. 31, 2023 Terms constitute an offer which was made to Plaintiff and to any other person who accessed and utilized the Digital Services (as defined in UCMC's Aug. 31, 2023 Terms). (SOF ¶¶ 22–24.)

*Second*, Plaintiff cannot reasonably argue that she did not accept UCMC's offer. "Courts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract" and that "[t]here is nothing automatically offensive about such agreements, as long as the layout and the language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Sgouros*, 817 F.3d at 1033–34 (collecting cases). In "regularly uphold[ing]" the validity of "clickwrap" agreements (*Van Tassell v. United Marketing Group, LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011)), courts have concluded that terms within a frame and a radio button outside and below that frame that must be checked to proceed – as UCMC did here (SOF ¶ 18) – constitutes reasonable notice. *See, e.g.*, *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, 2018 WL 2933608, at *5 (N.D. Ill. June 12, 2018) (enforcing website

[4] UCMC's Terms are to be "governed by and construed in accordance with the laws of the State of Illinois, without regard to its conflict-of-law provisions." (SOF ¶ 38.)

user agreement and finding that "[t]o complete that process, [non-movants] had to affirmatively check a box, or click a button, indicating that they accepted the user agreement"). Because UCMC's Aug. 31, 2023 Terms "contained a clear and conspicuous statement [. . .] that a user agreed to" UCMC's Aug. 31, 2023 Terms "**[b]y clicking 'I Accept'**" (SOF ¶ 25 (emphasis in original)), a reasonable user who completes that process would understand that they have manifested assent to UCMC's Aug. 31, 2023 Terms. *Johnson v. Uber Techs., Inc.*, 2018 WL 4503938, at *4–5 (N.D. Ill. Sept. 20, 2018).

Moreover, Plaintiff also assented to UCMC's Aug. 31, 2023 Terms by accessing the Digital Services after being presented with UCMC's Aug. 31, 2023 Terms. In Illinois, acceptance by "conduct" is a valid method of "indicat[ing one's] assent" to a contract. *Bauer v. Qwest Commc'ns Co.*, 743 F.3d 221, 227 (7th Cir. 2014) (quotation omitted); *see also* Restatement (Second) of Contracts § 69(1) (1981) (an offeree's "silence and inaction operate as an acceptance" when "because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept"). Having viewed (or at least being presented the opportunity to view) the bolded text on the first page of UCMC's Aug. 31, 2023 Terms which states that "**by accessing our Digital Services** [. . .] **you agree to the Terms**" (SOF ¶ 25 (emphasis in original)) and then continuing to access the Digital Services (*id.* at ¶ 28), Plaintiff validly accepted UCMC's Aug. 31, 2023 Terms through conduct. *See, e.g.*, *Gupta*, 934 F.3d at 713–14 (silence amounted to acceptance of arbitration provision in contract terms); *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002) (same); *Ragan v. AT&T Corp.*, 824 N.E.2d 1183, 1188–89 (Ill. App. Ct. 2005) (same).

*Finally*, Plaintiff received consideration in exchange for accepting UCMC's Aug. 31, 2023 Terms. Specifically, Plaintiff was permitted to access and use the Digital Services in exchange for agreeing to UCMC's Aug. 31, 2023 Terms. (SOF ¶¶ 26–27.) Absent Plaintiff's acceptance, she would not have been permitted to access or use the Digital Services per the plain language of UCMC's Aug. 31, 2023 Terms or by operation of the UCMC MyChart patient portal. (*Id.*)

### B. Plaintiff's Claim Falls Within the Scope of "Disputes" Under UCMC's Aug. 31, 2023 Terms

The definition of "Dispute" in UCMC's Aug. 31, 2023 Terms encompasses "disputes, claims [. . .] against any UCMC Parties that in any way arise out of or relate to the operation, or your use, of the Digital Services[.]" (*Id.* at ¶ 32 (emphasis removed).) This language has been broadly interpreted by courts. As the Seventh Circuit has observed with respect to similar language requiring arbitration of "any claim or dispute [. . .] relating to" the contract or the parties' relationship, "[i]t would be hard to draft a broader [arbitration] clause." *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 904–05 (7th Cir. 2004); *see also Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1036 (7th Cir. 2012) ("Given our broad reading of 'arising out of and relating to,' we are confident that these claims fall within the scope of the arbitration clause."). Plaintiff's ECPA claim not only "arise[s] out of or relate[s]" to her use of UCMC's Public Website, it also is based solely on her purported visits to UCMC's Public Website and communications made there. (SOF ¶¶ 1–4.)

Plaintiff may argue that her claim is based on her visits to UCMC's Public Website *prior* to December 5, 2023 and thus UCMC's Aug. 31, 2023 Terms are not applicable. That argument will fail. Many courts have held that an arbitration agreement applies to claims that accrued *prior* to the parties entering into the arbitration agreement. For example, in *Kristian v. Comcast Corp.*,

the First Circuit Court of Appeals held that the district court erred in declining to retroactively apply an arbitration agreement that covered "*any claim or dispute related to or arising out of* this agreement or *the services provided*." 446 F.3d 25, 31–36 (1st Cir. 2006) (emphasis added). The Court compared this language to that used in arbitration agreements previously held to specifically exclude retroactive effect by "unmistakably limit[ing] arbitration to what is covered by the agreements—e.g., 'pursuant to *this Agreement*.'" *Id*. at 33 (emphasis added) (citing cases precluding retroactivity where the issues covered were tied to those stemming from "this Agreement"). Notably, the Court found that, in cases where retroactivity was denied, the arbitration clauses "d[id] not contain the additional language found in the clauses at issue here—'any claim or dispute arising out of this agreement *or the services provided*.'" *Id*. (emphasis in original). Under the "most natural[]" reading, the Court held that retroactive application was proper because "the phrase 'or the services provided' covers claims or disputes that do not arise 'out of this agreement' and hence are not limited by the time frame of the agreements." *Id*.

Here, as in *Kristian*, the relevant contractual language is not limited to disputes tied only to a particular agreement. Instead, UCMC's Aug. 31, 2023 Terms explicitly encompasses claims "that in any way arise out of or relate to the operation, or your use, of the Digital Services[.]" (SOF ¶ 32 (emphasis removed).) This broad scope is nearly identical to language courts throughout the country have found to be sufficient to apply arbitration agreements retroactively. *See, e.g. Pambakian v. Blatt*, 859 F. App'x 808, 809 (9th Cir. 2021) (compelling arbitration for claims before arbitration agreement where its "express scope . . . is broad and not temporally limited"); *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 268–69 (4th Cir. 2011) ("broad scope of . . . arbitration clause applying to 'any dispute' between the parties" was "applicable retroactively" to preexisting

disputes); *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649–52 (6th Cir. 2008) ("arbitration agreement applied retroactively"); *Austin Freight Sys., Inc. v. W. Wind Logistics, Inc.*, 2019 WL 2088056, at *3–4 (N.D. Ill. May 13, 2019) (explaining that "arbitration clauses" that cover "all claims arising out of [the parties'] commercial relationship" are retroactive and "have been interpreted to apply to disputes concerning prior business dealings"); *Freund v. UBS Fin. Servs., Inc.*, 141 F. Supp. 3d 797, 807, 809 (N.D. Ill. 2015) (agreement to arbitrate "any dispute, claim or controversy that may arise" is retroactive).

### C. UCMC's Aug. 31, 2023 Terms Necessitate Summary Judgment in UCMC's Favor *or*, in the Alternative, Striking Plaintiff's Class Claim

UCMC is entitled to summary judgment on Plaintiff's claim because Plaintiff admits she failed to comply with contractual conditions necessary to file her TAC. UCMC's Aug. 31, 2023 Terms mandate that both parties engage in pre-litigation contractual remedies prior to filing suit. Such terms are enforceable under Illinois law. *See Illinois Bell Tel. Co. v. Glob. NAPS Illinois, Inc.*, 749 F. Supp. 2d 819, 829 (N.D. Ill. 2010) ("Global failed to comply with the contractual prerequisites to filing a formal claim in federal court. Thus, Global is contractually barred from pursuing this claim until it has exhausted its contractual dispute-resolution obligations; and AT&T is entitled to summary judgment."); *Stoll v. United Way of Champaign Cty., Illinois, Inc.*, 883 N.E.2d 575, 580–81 (Ill. App. Ct. 2008) (requiring exhaustion of mandatory grievance procedure).

UCMC's Aug. 31, 2023 Terms require that any "Dispute" first proceed through contractual dispute resolution before it can be litigated in court. Specifically, UCMC's Aug. 31, 2023 Terms require that either party "notify the other party in writing of any Dispute within thirty (30) days of the date it arises so that the parties can attempt in good faith to resolve the Dispute informally." (SOF ¶ 35.) Plaintiff does not dispute that she failed to provide UCMC with written notice of this

Dispute, and certainly not within the thirty day time period required by UCMC's Aug. 31, 2023 Terms. (*Id*. at ¶ 44.) It is only after the required written notice is provided and the parties fail to resolve the Dispute that Plaintiff was contractually permitted to "commence a formal proceeding." (*Id*. at ¶ 35.) Plaintiff cannot skip the mandatory dispute resolution process and take her claim straight to court.

*Alternatively*, Plaintiff's class action claim should be stricken since both Plaintiff and UCMC have contractually agreed to bring any claims against one another "**only on an individual basis**[.]" (*Id*. at ¶ 37.). There is no dispute that Plaintiff's TAC purports to state a claim on behalf of a putative class. (*Id*. at ¶ 45.) This district has routinely enforced class and collective action waivers. *See Hanus v. Harting, Inc. of N. Am.*, 2024 WL 4894283, at *5–6 (N.D. Ill. Nov. 26, 2024) (J. Alexakis) (finding class action waiver enforceable); *Hewitt v. Cap. One, N.A.*, 2025 WL 964086, at *6 (N.D. Ill. Mar. 31, 2025) (finding class action waiver enforceable "even if class-action arbitration is the only avenue worth the expense involved in proving a claim") (citation and quotation omitted); *Trejo v. Advance Am. Cash Advance Centers of Illinois, Inc.*, 2009 WL 10713823, at *6 (N.D. Ill. June 23, 2009) (finding class action waiver enforceable).

*Finally*, enforcement of UCMC's Aug. 31, 2023 Terms is necessary given the sequence of events that has been established by the parties' initial limited discovery in this matter, including Plaintiff's interactions with the UCMC MyChart patient portal. Plaintiff graduated from the University of Chicago in December 2022 and eventually relocated to the Boston area in August 2023 to attend graduate school. (SOF ¶ 46.) Before she moved to Boston, Plaintiff logged into the UCMC MyChart patient portal on a monthly basis between April 2023 and August 2023. (*Id*. at ¶ 47.) After her move, Plaintiff's visits to the UCMC MyChart patient portal ceased for several

months. (*Id*. at ¶ 48.) This is not surprising given that Plaintiff was receiving her medical care from a Boston area physician at that time. (*Id*. at ¶ 49.)

Despite moving to Boston several months earlier and no longer being a patient of UCMC, Plaintiff visited the UCMC MyChart patient portal numerous times during December 2023, after agreeing to be bound by UCMC's Aug. 31, 2023 Terms. Plaintiff accessed the UCMC MyChart patient portal numerous times on December 5 and December 10, 2023, but never again. (*Id*. at ¶¶ 28–29.) When asked at her deposition, Plaintiff could not provide an answer as to why she accessed the UCMC MyChart patient portal numerous times while no longer a patient of UCMC. (*Id*. at ¶ 50.) But the answer seems obvious. Plaintiff filed her SAC on December 12, 2023, two days after her last visit to the UCMC MyChart Patient portal. (*Id*. at ¶¶ 28–29, 39.) This was no coincidence. Plaintiff was not seeking medical care from UCMC in December 2023, but instead likely visiting the UCMC MyChart patient portal to assist her counsel in complying with the pleading standard set forth by this Court. *See Hartley v. Univ. of Chi. Med. Ctr.*, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023). In doing so, Plaintiff sought support for a class action claim that she had agreed in her contract with UCMC not to assert, then subsequently filed anyway without abiding by her agreement to first go through the contractual dispute-resolution process. Plaintiff's opportunistic conduct should not now be rewarded by permitting her to avoid her contractual obligations.

## V. CONCLUSION

For all of the foregoing reasons, Defendant University of Chicago Medical Center respectfully submits that this Court should grant its Motion, and grant summary judgment in favor of UCMC. If this Court does not grant summary judgment in favor of UCMC or does not grant

UCMC's Motion to Dismiss filed concurrently herewith, UCMC requests that this Court strike Plaintiff's class allegations.

Respectfully submitted,

UNIVERSITY OF CHICAGO MEDICAL CENTER

By: *_/s/ Ryan S. Hedges_*
One of Its Attorneys

Ryan S. Hedges
BAKER & HOSTETLER LLP
One North Wacker, Suite 3700
Chicago, IL 60607

Zachary J. Watters
Jason B. Sobelman
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

Dated: June 13, 2025

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ryan F. Stephan
James B. Zouras
Mohammed A. Rathur
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
Phone: (312)233-1550
Fax: (312)233-1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
mrathur@stephanzouras.com

Lauren R. Goldman
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Phone: (212) 351-4000
lgoldman@gibsondunn.com

Matthew L. Kutcher
Cooley LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
Phone: (312) 881-6500
Fax: (312) 881-6598
mkutcher@cooley.com

on June 13, 2025

*/s/ Ryan S. Hedges*
Ryan S. Hedges