**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SOPHIA HARTLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>UNIVERSITY OF CHICAGO MEDICAL CENTER,<br><br>Defendant. | Case No. 1:22-cv-05891 |

**PLAINTIFF'S OPPOSITION TO**
**<u>DEFENDANT'S MOTION TO DISMISS HER THIRD AMENDED COMPLAINT</u>**

Sophia Hartley ("Hartley" or "Plaintiff") respectfully submits the following Opposition to the Motion to Dismiss filed by University of Chicago Medical Center ("UCMC" or "Defendant") [Doc. 137].

## I. INTRODUCTION

Plaintiff's Third Amended Complaint ("TAC") is the product of her strict adherence to this Court's prior rulings and the facts adduced from her limited initial discovery. Hartley does not introduce any new legal theories or facts; to the contrary, she has only removed certain discrete allegations that have no bearing on the merits or her substantive ability to state a cause of action. Thus, Defendant's claim that Plaintiff is somehow advancing a "brand-new" theory is demonstrably false. *See* Dkt. 135 at 3:5-17. The allegations underlying Hartley's TAC are actually ***identical*** to those in prior iterations of her complaint. Indeed, this Court has already considered and rejected every argument UCMC now raises—arguments it literally copies word-for-word from its previous unsuccessful motion to dismiss. *Compare* Dkt. 138 at pgs. 8-15 to Dkt. 65 at pgs. 4-10 (restating six pages of argument verbatim from earlier motion). This Court should not countenance UCMC's effort to revisit arguments it already thoroughly considered and rightly rejected.

First, as in prior iterations of her complaint, Hartley again sufficiently alleges the disclosure of her particular health information, with her TAC making the identical allegations this Court previously held were adequate to plausibly state a claim under the Electronic Communications Privacy Act, 18 U.S.C. § 2511 ("ECPA"). As this Court also found, these allegations are fully supported by the factual record developed so far through limited discovery. Second, as this Court already ruled, Plaintiff continues to plausibly allege an unlawful interception by UCMC under the ECPA. Because Defendant offers no new argument, change in the governing law, or other reason for the Court to depart from its prior rulings, its motion should be denied.

## II. FACTS

UCMC, the operator of a hospital network, maintains a website, *www.uchicagomedicine.org*, (herein after the "Website") for the purpose of communicating with patients and prospective patients. TAC ¶¶ 4, 65. UCMC encourages its patients, which number in the thousands, to disclose their individually identifiable health information ("IIHI")[1] through its Website to communicate with their providers, schedule appointments, and request information about specific conditions and treatments, among other things. ¶¶ 4, 65, 142.

Despite UCMC's absolute legal duty and express promises to maintain the confidentiality of its patients' IIHI, it intentionally installed source code developed by Meta Platforms, Inc. ("Meta") (the "Meta Collection Tools") on its Web Properties to intercept and disclose its patients' IIHI to Meta. TAC ¶¶ 5-7, 71-74. The Meta Collection Tools are designed for commercial marketing and track every interaction made on UCMC's Web Properties including the information patients type into appointment forms, the pages they view, and the buttons they click. *Id*. Every time a patient communicates with Defendant's Web Properties by clicking buttons or typing in information, the Meta Collection Tools, unbeknownst to the patient, redirect the content of their communications to Meta. TAC ¶¶ 31, 57. Contemporaneously with the interception of these communications, the Meta Collection Tools also collect and transmit several identifiers that uniquely identify a given patient, including their IP address, Facebook ID, cookie identifiers, device identifiers, and account numbers. SAC ¶¶ 7, 69, 145. Meta then combines these identifiers

[1] IIHI is a subset of protected health information that HIPAA defines as: "any information, including demographic information collected from an individual, that— (A) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and— (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual". 45 C.F.R. § 160.103

with the patient's healthcare communications to use the information for its own commercial purposes that include building more fulsome profiles of its users' preferences and traits, and selling targeted advertisements based on this information. TAC ¶¶ 18-74, 100-108. Meta compiles and forwards its analysis of this data to UCMC, which in turn uses the data for its own commercial purposes that include understanding how people use its Web Properties and determining what ads people see on its websites. *Id.* ¶ 73-74.

Hartley has been a patient of UCMC and a *www.uchicagomedicine.org* user since at least 2018. *Id.* ¶ 143. During the relevant time period, Hartley used the UCMC Website to schedule appointments, request information on specific medical services, and research providers. *Id*. When Hartley did so, her IIHI was automatically and contemporaneously disclosed to Meta under the systematic process described above. *Id.* Plaintiff had no knowledge her sensitive medical information was shared with anyone other than her healthcare providers, much less the world's largest social media platform, or that it would be exploited for commercial purposes, and never consented or authorized UCMC to disclose her IIHI. *Id.*

Shortly before Hartley filed this action, UCMC removed the Meta Collection Tools from all its Web Properties and thus, the full extent of UCMC's interception and disclosure of IIHI can only be determined through merits discovery. However, at minimum, Plaintiff has confirmed and alleges that the following descriptive URLs containing her IIHI were intercepted and disclosed to Meta when Plaintiff communicated through UCMC's Web Properties: (1) the content of the button Hartley clicked was "Sign In" to MyChart or something substantially similar and the URL of the page Hartley was directed to was "Patient Portal," "Home," or something substantially similar; (TAC ¶¶ 144, 146); (2) the content of the URLs Hartley viewed when she searched for specific medical specialists (TAC ¶¶ 143-144, 146, 170); and (3) the content of communications Hartley

made when viewing pages on UCMC's Website related to conditions and treatments specific to her healthcare (TAC ¶¶ 143-146). Contemporaneously with the interception and transmission of Plaintiff's communications on Defendant's Website, UCMC also disclosed to Meta Plaintiff's personal identifiers, including but not limited to her IP addresses, Facebook ID, cookie identifiers, device identifiers and account numbers. TAC ¶¶ 7, 19, 34-49, 69, 113, 145-146. UCMC disclosed its patients' IIHI despite its representations of maintaining strict confidentiality to Plaintiff and the class members, including its dishonest assurance that, "[UCMC] is committed to protecting the confidentiality of your medical information," and "[UCMC] not ***will not disclose [its patients'] health information for purposes other than your treatment without your prior written consent***." *Id.* ¶¶ 68, 70 (emphasis added).

## III. PROCEDURAL HISTORY

Hartley filed her Second Amended Complaint ("SAC") on December 12, 2023. Dkt. 60. In a comprehensive, well-reasoned opinion issued on April 30, 2024, this Court denied Defendant's motion to dismiss Plaintiff's ECPA claim. Dkt. 75. This Court ruled that Plaintiff sufficiently alleged UCMC violated the "crime-tort exception" to the ECPA by installing the Meta Collection Tools onto its Website for the purpose of violating HIPAA by intercepting and disclosing its patients' IIHI to Meta for its own financial gain. *See* Dkt. 75 at pgs. 4-5 ("the only way Plaintiff's IIHI could be disclosed to Meta is by utilizing Meta's tools. Therefore, it is plausible that Defendant could be responsible for acquiring Plaintiff's IIHI with the purpose of disclosing it to Meta for their mutual financial benefits."). This Court also found that Plaintiff plausibly alleged that the communications disclosed to Meta contained IIHI that was specific to her healthcare. *Id.* at pgs. 3-5. Finally, and most pertinent to the present motion, this Court ruled:

> Paragraph [1]56 alleges that UCMC disclosed that she was seeking specific medical specialists… ¶ 160 alleges that she was seeking information about sexually

> transmitted diseases, and ¶ 167 alleges that Meta sold this information to entities that sent her advertisements that for medications that were relevant to specific conditions for which she was being treated… The Court finds that Plaintiff has adequately alleged sufficient information that was disclosed to Meta to beat the Motion to Dismiss.

*Id.* at pg. 5.

In the wake of the Court's ruling, UCMC moved to bifurcate discovery, proposing a first phase limited to three threshold factual topics[2], which the Court allowed. Dkt. 88, 93. Following the limited discovery phase, Plaintiff, recognizing that the Meta Collection Tools were not deployed on Defendant's MyChart application and UCMC did not own two of the websites as previously alleged, sought leave to amend her complaint solely to conform to the proof. Dkt. 105. The only amendments she made were to remove specific allegations over UCMC's ownership and control of two web properties and the interception and disclosure of Hartley's IIHI from those web properties and the MyChart Portal. *See* Dkt. 60 at ¶¶ 4, 69, 155, 158-162. Plaintiff did not remove or materially amend any of her other factual allegations, including those this Court unequivocally ruled state a plausible claim under the ECPA. *See* Dkt. 60 at ¶¶ 155-157, 164-167; *Cf.* Dkt. 126 at ¶¶ 143-149. Although UCMC opposed Hartley's motion, the Court granted Plaintiff leave to file her TAC and denied Defendant's request for sanctions. *See* Dkt. 128 at 3:21-23 ("I came to the conclusion that the deposition testimony and the allegations were actually consistent with one another").

Defendant's motion, which sidesteps both the relevant procedural history and the explicit allegations of the TAC, rehashes old arguments and is, in substance, a motion to reconsider. Defendant's recycled arguments fare no better now than they did before, and its motion should be

[2] The Threshold Topics include "(1) Ownership and control of the 'Web Properties' alleged in the [SAC]; (2) Installation and Operation of any 'Meta Collection Tools'… on the MyChart Patient Portal; and (3) UCMC's Terms of Use, Plaintiff's Interactions with the 'Web Properties,' and the method UCMC utilized to purportedly provide notice and receive consent from Plaintiff with regard to the Terms of Use.

denied.

## IV. LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint, not decide the merits of the case. *Derfus v. City of Chicago*, 42 F. Supp. 3d 888, 893 (7th Cir. 2014). For purposes of a motion to dismiss, the Court accepts "as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff." *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017). Courts must deny a defendant's motion to dismiss pursuant to Rule 12(b)(6) if the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("plaintiff must give enough details about the subject-matter of the case to present a story that holds together").

## V. ARGUMENT

Plaintiff's TAC retains the same core allegations this Court has already held sufficiently state a claim under the crime/tort exception to the ECPA. As before, Plaintiff plausibly alleges the interception and disclosure of her "particular health information" and that UCMC's conduct falls within the crime/tort exception to the ECPA because it acted with the purpose of violating HIPAA for its own financial gain. *See* 18 U.S.C. § 2511(2)(d); 42 U.S.C. § 1320(d)(6). Because both the relevant facts and governing law have not changed, Defendant's renewed arguments—many of which are copied verbatim from its previous motion—offer no basis to depart from the Court's prior ruling.

### A. Consistent with this Court's Prior Ruling, Plaintiff Continues to Plausibly Allege That Her Particular Health Information Was Intercepted and Disclosed to Meta.

As this Court previously ruled, Plaintiff's allegation "that UCMC disclosed that she was seeking specific medical specialists" is sufficient to state an ECPA claim. Dkt. 75 at pg. 5. The paragraph cited by this Court from the SAC (¶ 156) is **identical** to the allegations in paragraph 144 of Hartley's TAC. *Compare* Dkt. 60 at ¶ 156 to Dkt. 125 at ¶ 144. In each paragraph, Hartley alleges she used Defendant's Website to "search for a primary care physician" and identifies the specific URL she can confirm at minimum, was disclosed to Meta when she used the UCMC's "find a physician" search function. Taken together with Plaintiff's well-pled allegations about the functionality of the Meta Collection Tools, the content they disclose, and the unique identifiers simultaneously transmitted to Meta, Hartley plausibly alleges that her intercepted communications regarding her prospective healthcare providers constitute "particular health information" that is specific to Hartley, as this Court previously held.

UCMC effectively asks this Court to reconsider its earlier decision. But when a Court makes a ruling of law with respect to allegations that have not changed from the original complaint, the "law of the case doctrine" dictates that those rulings should not be disturbed. And the happenstance of a new presiding judge does not give rise to an exception. "In situations where a different member of the same court re-examines a prior ruling, 'the law of the case doctrine ... reflects the rightful expectation of litigants that a change of judges midway through a case will not mean going back to square one.'" *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005) (quoting *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997)). "Although the second judge may alter previous rulings if he is convinced they are incorrect, 'he is not free to do so . . . merely because he has a different view of the law or facts from the first judge.'" *Best*, 107 F.3d at 546 (quoting *Williams v. C.I.R.*, 1 F.3d 502, 503 (7th Cir. 1993)). *See also Fletcher v. OneWest*

*Bank, FSB*, 2012 WL 5199632, at *2 (N.D. Ill. Oct. 22, 2012) (quoting *Brengettcy v. Horton,* 423 F.3d 674, 680 (7th Cir.2005) ("A judge should not reconsider a preceding judge's rulings when presented with 'precisely the same question in precisely the same way' as the preceding judge."); *Seeks v. Boeing Co.*, 752 F. Supp. 3d 992, 1013 (N.D. Ill. 2024) ("with respect to allegations that did not change from the original complaint . . . the Court should generally, consistent with the law of the case, stick to those prior rulings"). Plaintiff's allegations in paragraph 144 of the TAC—that her particular health information was disclosed to Meta—are the exact same allegations this Court unambiguously ruled state a viable claim under the ECPA. Because there is no material change in the law or Plaintiff's allegations, there is no basis for this Court to disturb its previous ruling.

UCMC, while not denying it is a HIPAA-covered entity, also contends that Plaintiff's communications, which include her medical conditions, perspective treatments, and providers cannot qualify as IIHI solely because they were disclosed from unauthenticated webpages of its Website. Dkt. 138 at pgs. 6-7. This Court previously rejected this very argument when UCMC made it before,[3] as have the vast majority of courts in analogous ECPA cases, which all held that communications on a healthcare provider's unauthenticated webpage can contain IIHI as defined by HIPAA. *See Mayer et al. v. Midwest Physician Adm. Serv., LLC*, 2025 WL 963779, at *1-3 (N.D. Ill. Mar. 31, 2025); *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *5-6 (N.D. Ill. July 9, 2024); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *9 (N.D. Ill. Feb. 21, 2025); *Kurowski v. Rush Sys. For Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023); *Kane v. University of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. 2024); *In re Grp. Health Plan Litig.*, 709 F.

[3] While Plaintiff has removed allegations concerning the disclosure of her communications seeking information about diseases from the unauthenticated webpages on *wellness.uchicago.edu* (Dkt. 60 at ¶ 160), this Court's previous order cited this paragraph when it made its finding that the information contained in this communication from the unauthenticated webpage plausibly qualifies as IIHI. *See* Dkt. 75 at pg. 5.

Supp. 3d 707, 712-713, 720 (D. Minn. 2023); *Strong v. LifeStance Health Grp. Inc.*, No. CV-23-00682-PHX-KML, 2025 WL 317552, at *4-*5 (D. Ariz. Jan. 28, 2025); *Gay v. Garnet Health*, No. 23-CV-06950 (NSR), 2024 WL 4203263, at *1-*3 (S.D.N.Y. Sept. 16, 2024).

Plaintiff respectfully submits that the two cases relied on by Defendant were outliers, wrongly decided, and deviate from an unbroken line of authority from this district.[4] Inexplicably, Defendant cites to two Northern District of Illinois cases, *Kurowski v. Rush Sys. For Health*, 2023 WL 4707184 (N.D. Ill. July 24, 2023) ("*Kurowski II*") and *Kurowski v. Rush Sys. For Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*")[5], claiming they stand for the proposition that communications on an unauthenticated webpage cannot contain IIHI. Dkt. 138 at pgs. 6-7. However, as Plaintiff already pointed out when Defendant previously made this assertion, these cases reached the opposite conclusion. *See* Dkt. 70 at pg. 8. Judge Kennelly actually held that the disclosure of descriptive URLs from a hospital's unauthenticated website *do contain IIHI and established the basis for the alleged HIPAA violation*. *Kurowski III*, 2023 WL 8544084 at *3. Defendant's request to that the Court revisit issues already decided should be rejected.

Plaintiff also alleges that Defendant disclosed Plaintiff's status as a patient by contemporaneously disclosing her unique identifiers and clicking the "Sign In" buttons to the MyChart Portal on Defendant's Website. TAC ¶¶ 144-146. HIPAA protects the disclosure of patient status. TAC ¶¶ 118-121. In the consolidated lawsuit brought against Meta for installing its tracking tools on hospital websites across the country, the Court ruled that disclosing a patient's act of clicking the "Login" to a patient portal reveals their status as a patient, thus violating HIPAA.

[4] *See* Dkt. 138 at pgs. 6-7 (discussing *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) and *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123-24 (S.D. Cal. 2023)).

[5] Defendant attributes the incorrect citations for these cases. Dkt. 138 at pgs. 6-7. *Kurowski I* is *Kurowski v. Rush Sys. For Health*, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023).

*See In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, *7-8 (N.D. Cal. Dec. 22, 2022):

> I conclude that the Pixel transmits information showing patient status. That is, the act of clicking the "Log in" button, when coupled with the MedStar Health patient portal URL and the other information transmitted by the Pixel, sufficiently identifies the website user as a patient… The Pixel captures information that connects a particular user to a particular healthcare provider—*i.e.*, patient status—which falls within the ambit of information protected under HIPAA.

Here, Hartley alleges that when she clicked on the UCMC MyChart Patient Portal login link from UCMC's Website to access the portal, the Meta Collection Tools intercepted and disclosed to Meta several types of information, which taken together, qualify as IIHI. This includes the content of the button she clicked on UCMC's Website was "Sign In" to MyChart, the MyChart portal URL, and Hartley's IP address, Facebook ID, cookie identifiers, device identifiers and account numbers. TAC ¶¶ 144-146. Accordingly, Plaintiff more than adequately alleges that UCMC violated HIPAA by disclosing her status as a patient to Meta, and thus, UCMC's conduct falls within the crime-tort exception of the ECPA.

Defendant's remaining arguments fare no better. For instance, Defendant cherry-picks a quote from the U.S. Dept. of Health and Human Services ("HHS") bulletin referenced in Plaintiff's TAC to claim that Plaintiff's use of the Website can never "result in the interception and disclosure of the requisite personal health information". Dkt. 138 at 7-8. Yet the sentence immediately following the one Defendant quotes (but omits) states, "[**h]owever**, in some cases, tracking technologies on unauthenticated webpages may have access to PHI, in which case the HIPAA Rules apply to the regulated entities' use of tracking technologies and disclosures to the tracking technology vendors." <u>Exhibit A</u> at pg. 6 (emphasis in original). The Bulletin goes on to provide examples for how unauthenticated webpages may have access to PHI including pages that allow patients to schedule appointments, pages where patients can search for information about their symptoms, and login pages to a patient portal (when personally identifiable information is

conveyed, such as the Facebook ID), all of which are activities Plaintiff alleges she performed on UCMC's Website. *Id* at pgs. 6-8; *see also* TAC at ¶¶ 143-145.

Additionally, Defendant makes passing reference to *AHA v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024), to support its claim that "[c]ourts throughout the Country" have found that unauthenticated webpages do not collect IIHI from patients. Dkt. 138 at 6. But *AHA* only addressed a single discrete issue that has no bearing on Hartley's claims. Specifically, the *AHA* court held that HHS exceeded its authority by issuing guidance prohibiting healthcare providers from utilizing "an online technology" that discloses (i) an individual's IP address along with (ii) a visit to an unauthenticated public webpage addressing specific health conditions or healthcare providers. *AHA*, 738 F. Supp. 3d at 789. The court labeled this "new rule" as the "Proscribed Combination." *Id*. An example of the "Proscribed Combination" would be technology that disclosed an IP address along with the fact that someone visited a webpage about cancer treatment. According to the *AHA* court, the Proscribed Combination fails to reveal the visitor's subjective intent because the disclosure of only an IP address (*i.e.* a string of numbers that identify a device) was not sufficient to serve as a unique identifier for IIHI purposes, and therefore, HIPAA obligations are not triggered. *Id.*at 801-015.

The facts of our case are different. Hartley alleges that UCMC's Meta Collection Tools transmit several unique identifiers in addition to a patients' IP addresses, including cookie identifiers, account numbers, and the Facebook ID, which very specifically identifies an actual individual, and not a device. TAC ¶¶ 7, 19, 34-49, 69, 113, 145-146. No guesswork is needed to connect an individual to their Facebook ID. In fact, several courts from around the country have held that *AHA* is not controlling, and allegations of the disclosure of a Facebook ID with healthcare communications on an unauthenticated webpage are sufficient to state claims for privacy

violations.[6] Accordingly, the HHS Bulletin and *AHA* have little bearing on the present case and if anything support, the viability of Plaintiff's ECPA claim. Defendant's motion should be denied.

**B. Consistent with this Court's Prior Ruling, Plaintiff Continues to Plausibly Allege That UCMC Intercepted Her Communications.**

The remainder of Defendant's brief simply reiterates—nearly verbatim—the same arguments this Court already considered and rejected in its order denying UCMC's prior motion to dismiss. Notwithstanding Defendant's characterization, Plaintiff has not rolled out any "new theories", claims or allegations. Defendant's argument, that its alleged conduct does not constitute an unlawful interception under the ECPA, takes issue with the same allegations the Court previously held were sufficient to plausibly allege that UCMC intercepted her communications. *See* Dkt. 75 at pgs. 4-5:

> Plaintiff's SAC has now added over ninety (90) new paragraphs which she alleges constitute violations of HIPAA… In essence, Defendant's position is that it acquired information legally from Plaintiff; and that her complaint in the SAC is that, at most, Defendant disclosed information to Meta that it had legally acquired. Defendant asks Court to distinguish the verbs "to acquire" and "to disclose," the former a requirement for an ECPA violation, but not the latter. However, the allegations in the SAC include charges that UCMC utilized Meta's "tools" in order to "acquire" the information that was allegedly disclosed to Meta. *See*, *e.g*., SAC, ¶¶ 51, 54 and 56, which allege that the only way Plaintiff's IIHI could be disclosed to Meta is by utilizing Meta's tools. Therefore, it is plausible that Defendant could be responsible for acquiring Plaintiff's IIHI with the purpose of disclosing it to Meta for their mutual financial benefits.

The material allegations supporting Plaintiff's claim have not changed. If Plaintiff proves her allegations, as she fully intends, UCMC is liable under the "criminal or tortious exception" of the ECPA because it intercepted her communications for the purpose of disclosing her protected

[6] *See J.C. v. Catholic Health System, Inc.*, 2024 WL 5136236 at *14 (report and recommendation adopted, No. 23-CV-796 (JLS) (JJM), 2025 WL 351043 (W.D.N.Y. Jan. 31, 2025) ("I do not find the court's reasoning in [*AHA*] persuasive or controlling."); *Doe v. Bayhealth Med. Ctr., Inc.*, No. N24C-09-002 FJJ, 2025 WL 1011508, at *6-7 (Del. Super. Apr. 2, 2025); *Gaige v. Exer Holding Co., LLC*, No. 2:24-CV-06099-AH-(AJRX), 2025 WL 559719, at *4 (C.D. Cal. Mar. 2, 2025).

health information in violation of HIPAA. *See* 18 U.S.C. § 2511(2)(d); TAC ¶¶ 109-127; 166-184. Courts consistently interpret the crime-tort exception as requiring only "sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie*, 806 F.3d at 145 (emphasis in original, quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)). In other words, "Under section 2511, 'the focus is not upon whether the interception itself violat[ed] another law; it is upon whether the purpose for the interception—***its intended use***—was criminal or tortious.'" *In re Nickelodeon Consumer Priv. Litig.*, No. CIV.A. 12-07829, 2014 WL 3012873, at *13 (D.N.J. July 2, 2014) (emphasis added) (quoting *Sussman v. Am. Broadcasting Cos.,* 186 F.3d 1200, 1202–03 (9th Cir. 1999)).

UCMC installed the Meta Collection Tools for the purpose of intercepting and disclosing its patients' IIHI to Meta for financial gain in direct violation of HIPAA. TAC ¶¶ 69-74; 109-127; *See* 42 U.S.C. § 1320(d)(6). Third-party tracking tools are not necessary to "communicate"[7] with patients, provide medical care, or even operate a website.[8] The Meta Collection Tools are used solely for commercial marketing. TAC ¶¶ 18-74, 100-108. In fact, the <u>only way</u> UCMC benefits from using these tools is by disclosing its patients' sensitive medical communications and linking these activities to their identities. This information is used by UCMC and Meta to build advertising profiles and to target patients with ads that relate to their healthcare. *Id.* UCMC cannot seriously dispute that when it used the Meta Collection Tools to intercept patient communications, it acted

[7] Recasting Plaintiff's allegations, just as it did last time, Defendant incoherently characterizes its surreptitious disclosure of Hartley's private health information to Meta <u>as its own</u> "communicat[ions] with Plaintiff." *See* Dkt. 138 at pg. 12.

[8] UCMC recognizes as much, given that it has removed the Meta Collection Tools from its Web Properties. *See* TAC ¶ 146 n. 36.

with the purpose of disclosing Hartley's IIHI for commercial gain.

Nevertheless, this Court has already explicitly rejected Defendant's argument that its alleged conduct does not fall within the crime/tort exception to the ECPA. Accordingly, Defendant's copied and pasted arguments do not provide a basis for the Court to depart from the law of the case. *See Creek v. Vill. of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998) ("law of the case doctrine . . . recites that, when an issue is once litigated and decided, that should be the end of the matter."); *Brengettcy*, 423 F.3d at 680 ("[a] judge should not reconsider a preceding judge's rulings when presented with precisely the same question in precisely the same way as the preceding judge").

UCMC offers a few new arguments, but none come close to helping it meet its considerable burden to show the Court's prior ruling should be disturbed.[9] First, UCMC claims that "[d]espite having the opportunity to conduct limited discovery", she fails to provide factual support for her allegation that UCMC's "purpose" in disclosing her communications was criminal or tortious. Dkt. 138 at pg. 13. But Defendant fails to mention that none of the three court-ordered topics on which,

---

[9] UCMC cites a single new case to support its previously rejected argument that Plaintiff has not adequately alleged a violation of the crime/tort exception to the ECPA. *See* Dkt. 128 at pgs. 13-14 (citing *Nienaber v. Overlake Hospital Medical Center*, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025). Plaintiff respectfully submits that *Nienaber* incorrectly applied the crime/tort exception standard contrary to the weight of authority (including from this Court and this District) that reached the opposite conclusion on similar facts. *See Stein, et al., v. Edward-Elmhurst Health*, 2025 WL580556 (N.D. Ill. Feb. 21, 2025); *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719 (C.D. Cal. Jan. 30, 2025); *Strong, et al., v. LifeStance Health Grp. Inc*., 2025WL 317552 (D. Ariz. Jan.28, 2025); *Jarrell v. Adena Health Sys*., 2025 WL 81305, (S.D. Ohio Jan. 13, 2025); *R.S. v. Prime Healthcare Servs*., Inc., 2025 WL 103488 (C.D. Cal. Jan. 13, 2025); *Smith v. Loyola Univ. Med. Ctr*., 2024 WL 3338941(N.D. Ill. July 9, 2024) ; *A.D. v. Aspen Dental Mgmt., Inc*., 2024 WL 4119153, (N.D. Ill. Sept. 9, 2024); *K.L. v. Legacy Health*, 2024 WL4794657 (D. Or. Nov. 14, 2024); *Castillo, et al., v. Costco Wholesale Corp*., 2024 WL4785136 (W.D. Wash. Nov.14, 2024); *A.J. v. LMND Med. Grp., Inc*., 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024); *Murphy, et al., v. Thomas Jefferson University Hospitals*, 2024 WL 4350328 (E.D. Pa. Sept. 30, 2024); *A.D., et al., v. Aspen Dental Management, Inc*., 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024); *Cooper v. Mount Sinai Health Sys., Inc*., 2024 WL3586357 (S.D.N.Y. July 30,2024); *Sweat v. Houston Methodist Hosp*., 2024 WL 3070184 (S.D. Tex. June 20, 2024); *R.C. v. Walgreen Co*., 2024 WL 2263395 (C.D. Cal. May 9, 2024).

at UCMC's insistence, the parties engaged in limited discovery, relate in any way to UCMC's "purpose" in using the Meta Collection Tools on its Website. Dkts. 92, 93. Regardless, Plaintiff's TAC includes dozens of paragraphs explaining the mutual financial benefit both UCMC and Meta receive from Defendant's use of Meta's tracking technology, and specific explanations about how this use violates HIPAA (allegations which remain unchanged from the SAC); *See* Dkt. 126 at ¶¶ 7, 9, 34-64, 74-81, 100-127, 139-141, 149.

Likewise, Defendant's assertion that "there is no conceivable reason to limit the installation and operation of the Meta Collection Tools solely to UCMC's Public Website, where no medical information is communicated" not only invites the court to ponder purported facts from outside the complaint, but it is directly contradicted by Defendant's own current "Website Privacy Policy". *See* [https://www.uchicagomedicine.org/website-privacy-policy](https://www.uchicagomedicine.org/website-privacy-policy) (last visited, July 7, 2025). UCMC admits that "[w]e may also collect certain sensitive categories of information, including your protected health information." *Id.* The Privacy Policy also still identifies the use of "Advertising cookies" which UCMC describes as cookies that "will display advertising on the Website and on third-party websites and services. Some of these advertisements may be interest-based, meaning that they are tailored to your interests or behaviors on the Website or on other websites" *i.e.* Hartley's browsing activity related to her visits to UCMC's webpages regarding her providers, conditions and treatments. Again, the Meta Collection Tools are used solely for commercial marketing. TAC ¶¶ 18-53, 56-64, 73-74. UCMC's claim that Plaintiff has only made a "lone conclusory allegation" rings hollow.

## VI. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully asks this Court to deny Defendant's Motion to Dismiss.

Date: July 11, 2025

Respectfully Submitted,

*<u>/s/ Michael J. Casas</u>*
Ryan F. Stephan
James B. Zouras
Teresa M. Becvar
Michael J. Casas
**STEPHAN ZOURAS, LLC**
222 W. Adams Street, Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
tbecvar@stephanzouras.com
mcasas@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I caused a true and correct copy of the attached to be served on all record counsel through the Court's electronic filing system.

Dated: July 11, 2025 /s/ *Michael J. Casas*