IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOPHIA HARTLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF CHICAGO MEDICAL CENTER and META PLATFORMS, INC.,<br><br>Defendants. | No. 1:22-cv-05891 |

**DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

Ryan S. Hedges
BAKER & HOSTETLER LLP
One North Wacker, Suite 3700
Chicago, IL 60606
(312) 416-6200

Zachary J. Watters
Jason B. Sobelman
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

*Attorneys for Defendant University of Chicago Medical Center*

Dated: July 25, 2025

## I. INTRODUCTION

Plaintiff's Opposition ("Opposition" or "Opp.") (Dkt. No. 146) hinges on her argument that the allegations in her SAC and TAC are "identical" and the Court has already ruled the allegations are sufficient to state a claim.[1] Plaintiff's position is meritless. In the SAC, Plaintiff alleged (without any factual basis) that the Meta Collection Tools operated on the UCMC MyChart patient portal and disclosed health information specific to her (e.g., her prescription medications, medical tests, medical conditions, and communications with physicians). Having been forced to concede those allegations were false, Plaintiff pivots in her TAC to allege that the Meta Collection Tools operated *only* on the Public Website. That change in position, constrained to Plaintiff's use of an unauthenticated website, required Plaintiff to delete pages of allegations detailing her specific health information that she had added to her SAC in an attempt to meet the pleading requirements imposed by law. Now, Plaintiff is literally back to square one, alleging in her TAC generic, conclusory allegations similar to those contained in her *First* Amended Complaint ("FAC"), which this Court previously ruled are not sufficiently specific to state a claim. Nor does the TAC adequately allege facts which give rise to the narrow crime-tort exception to the general ECPA rule that a party-participant to a communication may not intercept that communication. As a result, Plaintiff's *fourth* bite at the apple fails and her TAC should be dismissed, with prejudice.

[1] Capitalized terms not defined have the meanings set forth in UCMC's Memorandum of Law in Support of its Motion to Dismiss (Dkt. No. 138) ("Memorandum" or "Memo.").



https://bakerlaw-my.sharepoint.com/personal/rhedges_bakerlaw_com/Documents/UCMC/Hartley/MTD and MSJ/Reply Brief in Support of Motion to Dismiss TAC(72367578.7) TO FILE.docx

## II. ARGUMENT

### A. Plaintiff Fails to Allege Disclosure of Her Specific Health Information

Plaintiff argues, repeatedly, that the allegations contained in the TAC are "identical" to the "same" allegations this Court previously held were adequate to allege an ECPA claim. (Opp. at 1, 6-7, 11-12.) Plaintiff is wrong. As outlined in UCMC's Memorandum, the Court previously ruled that paragraphs 156, 158, 160, and 167 of the SAC sufficiently alleged that individually identifiable health information specific to Plaintiff was disclosed. (Memo at 4-6.) In her TAC, Plaintiff has stripped away all allegations pertaining to the purported disclosure of her specific health information. (*See* Dkt. No. 105-1 at 39-42 (removing allegations that Plaintiff's specific prescription medications, medical tests, medical conditions, and communications with physicians were purportedly disclosed).) All that remains are vague and conclusory allegations that unknown "individually identifiable health information" related to Plaintiff was disclosed. (Dkt. No. 126 ¶ 143.) This Court already rejected similar conclusory allegations:

| Dismissed FAC's Allegations | TAC's Allegations |
|---|---|
| "Plaintiff has used these UChicago web properties to schedule appointments, view test results, access her doctor's notes, message doctors and nurses, review medications, and make payments for medical services." (Dkt. No. 33 ¶ 24.) | "Plaintiff has used the UCMC Website to schedule appointments, request information on specific medical services and research providers." (Dkt. No. 126 ¶ 143.)<br><br>"Plaintiff used UCMC's public website [. . .] to search for a primary care physician." (*Id.* ¶ 144.) |
| "Plaintiff's personally identifiable patient information and PHI was disclosed to Facebook under the systematic process described herein." (Dkt. No. 33 ¶ 24.) | "Plaintiff's individually identifiable health information was disclosed to Meta under the systematic process described herein." (Dkt. No. 126 ¶ 143.) |
| UCMC deployed the Meta Collection Tools "that cause the contemporaneous unauthorized interception and transmission of communications containing personally identifiable patient information and PHI and the precise content of patient communications | "UCMC intercepted at least the following communications about Plaintiff's prospective healthcare providers. [. . .] https://www.uchicagomedicine.org/find-a-physician https://mychart.uchospitals.edu/mychart/" (Dkt. No. 126 ¶ 144.) |



https://bakerlaw-my.sharepoint.com/personal/rhedges_bakerlaw_com/Documents/UCMC/Hartley/MTD and MSJ/Reply Brief in Support of Motion to Dismiss TAC(72367578.7) TO FILE.docx

| Dismissed FAC's Allegations | TAC's Allegations |
|---|---|
| with [UCMC] to Facebook[.]" (Dkt. No. 33 ¶ 35.) | |
| "The types of [. . .] PHI that [UCMC] causes to be intercepted and transmitted to Facebook [. . .] include, but it not limited to:" patient IP addresses; account numbers; URLs; and "[e]very communication a patient sends on [UCMC's] web properties." (Dkt. No. 33 ¶ 42.) | "[T]he Meta Collection Tools on UCMC's Website sent at least the following [. . .] patient health information to Meta:" plaintiff's IP address; "content" of button clicks; and "[d]escriptive URLs that describe the categories of the website[.]" (Dkt. No. 126 ¶ 146.) |

Far from "identical" to the allegations of the SAC, the TAC's allegations are more akin to the insufficient allegations contained in the FAC[2] which this Court previously found amounted to "an absolute dearth" of what is required to plead an ECPA claim. *Hartley v. Univ. of Chi. Med. Ctr.*, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023).

Plaintiff argues three categories of information were disclosed which purportedly contain her health information: (i) her "button" click on the Public Website which directed her to the log-in page for the UCMC MyChart patient portal (Opp. at 3); (ii) the URLs she viewed when she searched for a physician on the Public Website (*id*); and (iii) the URLs she navigated to when she viewed pages on the Public Website related to certain conditions and treatments (*id*. at 3-4). The disclosure of this information does not reveal plaintiff's health information for at least *two* reasons.

*First*, this Court has already ruled that the disclosure of "URLs, buttons, pages, and tabs [users of UCMC's websites] click and view" are not sufficient to state an ECPA claim. *Hartley*, 2023 WL 7386060, at *2; *see also In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (URLs "function[] like an 'address,'" which "Congress excluded [. . .] from the definition of

---

[2] In her Opposition, Plaintiff cites to paragraphs 143-46 and 170 of the TAC in support of her argument that she alleged the interception and disclosure of health information specific to her. (Opp. at 3-4.) However, just as with the FAC, none of those allegations identify a single physician, condition, or treatment which was allegedly intercepted or disclosed (whether in the form of a "descriptive URL" or otherwise). Every allegation in the SAC involving a "descriptive URL" that identified a particular condition or treatment was removed from the TAC since such URLs existed within the UCMC MyChart patient portal.



https://bakerlaw-my.sharepoint.com/personal/rhedges_bakerlaw_com/Documents/UCMC/Hartley/MTD and MSJ/Reply Brief in Support of Motion to Dismiss TAC(72367578.7) TO FILE.docx

'contents'" under the ECPA). Plaintiff simply ignores this Court's prior ruling and fails to explain why the TAC's alleged disclosure of a "button" click to navigate to the log-in page for the UCMC MyChart patient portal, or the URLs associated with webpages for physicians, conditions, or treatments, are not similarly insufficient under this Court's prior ruling.

*Second*, Plaintiff's theory is premised on a pair of faulty assumptions. To plausibly state a claim, Plaintiff's theory requires that every single individual who (i) clicks the "button" which navigates them to the log-in page for the UCMC MyChart patient portal is a patient of UCMC (Opp. at 9-10); and (ii) views an unauthenticated webpage related to a physician, condition, or treatment is treated by that physician, must be suffering from that condition, and is receiving that treatment (*id*. at 8-9). Plaintiff's pleading theory collapses under its own weight.

According to Plaintiff, the act of clicking a "button" which navigates the user to the log-in page for the UCMC MyChart patient portal was allegedly disclosed. (Opp. at 10.) Plaintiff, however, has conceded that the Meta Collection Tools were never installed and therefore never operated on the UCMC MyChart patient portal. (Dkt. No. 120 at 1.) As a result, no other actions taken by the user on the UCMC MyChart patient portal log-in page could have been intercepted or disclosed. Thus, whether or not the user actually attempted to log-in to the UCMC MyChart patient portal (by typing in a MyChart username and password) and whether or not any such attempt was successful, was never intercepted or disclosed.[3] Similarly, allegedly disclosing that a

[3] Plaintiff asserts that *In re Meta Pixel Healthcare Litig.* supports her argument that disclosing a particular individual clicked a "Log in" button constitutes the individual's health information. (Opp. at 10.) Plaintiff's analysis is misleading. In that case, the plaintiffs alleged that the Meta Collection Tools operated in the patient portals. 647 F.Supp.3d 778, 784 (N.D. Cal. Dec. 22, 2022). As a result, the plaintiffs alleged that the Meta Collection Tools sent information "revealing patient status because it intercepts data relating to patient portal logins and logouts." *Id*. at 791. Here, no such data was allegedly intercepted or disclosed since the Meta Collection Tools were *not* operating in the patient portal.

specific individual visited a webpage related to a specific medical condition does not demonstrate that the individual suffers from that particular medical condition. Plaintiff's alleged visits to the Public Website did not result in the disclosure of her status as a patient or any particular health information because she does not allege that she communicated such information when viewing the Public Website.[4] Simply put, Plaintiff has only alleged the interception and disclosure of her identity and the URLs of various web pages she viewed (or the "button" she clicked to travel to another website) on the Public Website. That is not sufficient.[5]

The *Becerra* court recognized this disconnect and found that disclosing the identity of a website user and the unauthenticated webpage the user viewed, without more, is "not enough" and that the "conclusory rationale" proposed by Plaintiff would "eviscerate the express limits of the IIHI definition." *AHA v. Becerra*, 738 F. Supp. 3d 780, 801 (N.D. Tex. 2024) (quotation omitted). Plaintiff attempts to distinguish *Becerra* by arguing that the court's analysis hinges on the purported disclosure of an IP address (a string of numbers that identify a device), as opposed to the purported disclosure of a Facebook ID (an alphanumeric designation which corresponds to a particular person). (Opp. at 11-12.) Plaintiff misses the point. While the *Becerra* court discusses the disclosure of IP addresses, the relevant portion of the analysis accepts that any purported disclosure will identify an individual, but still finds that such a disclosure is insufficient:

---

[4] Plaintiff's theory stands in sharp contrast to her deposition testimony where she testified that after an initial visit to the Public Website when she "first got to U Chicago maybe in 2018, 2019" she could not "remember a reason that [she] would have looked at" the Public Website. (Dkt. No. 112-2 at 57:16-24; 58:1.) Despite being asked the reason for her visit to the Public Website, Plaintiff never testified that she utilized it to view information about a particular physician, condition, or treatment. (*Id*. at 58:2-17.)

[5] Identical disclosures would exist if a user was viewing a web page in order to access information related to the health care of a friend or family member, or gathering information for a research paper. In those scenarios, the user of the webpage is *not* a patient, *not* suffering from the particular medical condition, and thus, the URL would *not* contain the user's health information.



https://bakerlaw-my.sharepoint.com/personal/rhedges_bakerlaw_com/Documents/UCMC/Hartley/MTD and MSJ/Reply Brief in Support of Motion to Dismiss TAC(72367578.7) TO FILE.docx

> HHS says it's 'common sense' that 'some users who visit these webpages . . . are doing so to learn information about their own medical conditions, to inquire about specific medical practices or providers for the purpose of obtaining healthcare, to actually obtain an appointment with a particular provider, or for other reasons related to their own healthcare.' [. . .] The Court does not disagree. Indeed, the Court wouldn't disagree if HHS argued *most* people visit for those reasons. But that's not what HIPAA requires.

*Becerra*, 738 F. Supp. 3d at 801 (emphasis in original). Plaintiff further attempts to distinguish *Becerra* by relying on inapposite caselaw which involves the alleged disclosure of information from an authenticated patient portal (e.g., an iteration of MyChart) as opposed to the disclosure of information exclusively from an unauthenticated public website. (Opp. at 6-12.) Indeed, Plaintiff fails to cite a single case where a court found that tracking technologies operating exclusively on an unauthenticated website intercepted and disclosed an individual's health information.[6] *See In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d at 784 (healthcare providers "allegedly installed the Meta Pixel on their patient portals").[7]

### B. <u>Plaintiff Has Not Alleged the Primary Purpose of UCMC's Alleged "Interception" Was Criminal or Tortious</u>

[6] Plaintiff cites to *Jarrell v. Adena Health Sys.*, 2025 WL 81305 (S.D. Ohio Jan. 13, 2025) (Opp. at 14 n.9) where the plaintiff alleged that tracking technologies were only present on the defendant's unauthenticated website. *Id.* at *1. However, because the defendant never challenged plaintiff's conclusory assertion that the communications pertained to the plaintiff's health, the Court never analyzed the issue. *Id.* at *1 n.3.

[7] *See also see also Mayer et al v. Midwest Physician Adm. Serv., LLC*, 2025 WL 963779, at *1 (N.D. Ill. Mar. 31, 2025) (tracking technology on public website and MyChart patient portal); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *2 (N.D. Ill. Feb. 21, 2025) (same); *Strong v. LifeStance Health Grp. Inc.*, 2025 WL 317552, at *2 (D. Ariz. Jan. 28, 2025) (authenticated website used to "communicate with healthcare providers, research particular medical concerns and treatments, fill out forms, [and] schedule and attend appointments"); *Gay v. Garnet Health*, 2024 WL 4203263, at *1 (S.D.N.Y. Sept. 16, 2024) (unauthenticated website and authenticated MyChart portal); *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *1 (N.D. Ill. July 9, 2024) (authenticated healthcare website which allows scheduling of surgery, viewing test results and prescriptions); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *3 (W.D.N.Y. Mar. 19, 2024) (unauthenticated website and authenticated MyChart portal); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *1 (N.D. Ill. Dec. 11, 2023) (same); *In re Grp. Heal Plan Litig.*, 709 F. Supp. 3d 707, 713 (D. Minn. 2023) (same).

Plaintiff's Opposition confirms that she is attempting to squeeze her ECPA claim into the narrow crime-tort exception (Opp. at 14) to the general rule that a party-participant to a communication may not intercept that communication.[8] *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (holding that the ECPA "does not make it unlawful for a person to intercept . . . [an] electronic communication if the person is a party to the communication"). In order for this exception to apply, Plaintiff must allege that the communications between Plaintiff and UCMC were "*intercepted for the purpose* of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d) (emphasis added); *see also Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) ("Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception – its intended use – was criminal or tortious. [. . .] Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere."); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001) ("the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort."). Plaintiff's arguments in support of the narrow crime/tort exception fail for at least *four* reasons.

*First*, Plaintiff argues, without citation, that "this Court has already explicitly rejected [UCMC's] argument that its alleged conduct does not fall within the crime/tort exception." (Opp. at 14.) Not so. In its earlier ruling, the Court did not analyze whether or not Plaintiff sufficiently alleged UCMC intended to violate HIPAA by allegedly utilizing the Meta Collection Tools

[8] Plaintiff asserts that this Court "already ruled" that "Plaintiff continues to plausibly allege an unlawful interception[.]" (Opp. at 1.) But the Court has made no such ruling or finding that the TAC states a claim or adequately alleges an interception. Plaintiff appears to be misconstruing the Court's sufficiency analysis under Rule 11 (Dkt. No. 112) in order to support her inaccurate statement. (*See* Opp. at 5.)



https://bakerlaw-my.sharepoint.com/personal/rhedges_bakerlaw_com/Documents/UCMC/Hartley/MTD and MSJ/Reply Brief in Support of Motion to Dismiss TAC(72367578.7) TO FILE.docx

exclusively on its Public Website. (Dkt. No. 75.) The Court made no such analysis because Plaintiff has never before made this argument. Every prior iteration of Plaintiff's claim has been centered on the alleged disclosure of information communicated through UCMC's MyChart patient portal. (Dkt. No. 2 at ¶ 24; Dkt. No. 33 at ¶ 31; Dkt. No. 61 at ¶¶ 158-59.)

*Second*, Plaintiff misapplies the crime/tort exception by focusing on UCMC's alleged disclosure to Meta, as opposed to UCMC's purported "interception." As outlined above, the primary purpose of the *interception*, i.e., the acquisition of the communications, controls the application of the crime/tort exception. However, Plaintiff does not allege that UCMC had a criminal or tortious purpose in acquiring her communications. Instead, Plaintiff alleges that the purpose of the communications, for which UCMC was the intended recipient, was to facilitate medical care. (Dkt. No. 126 ¶ 143 (Plaintiff used the Public Website to "schedule appointments, request information on specific medical services, and research providers.").) As a result, the crime/tort exception does not apply.

Plaintiff's attempt to shift the focus of the analysis to UCMC's purpose in allegedly *disclosing* communications to Meta has been rejected by the Seventh Circuit Court of Appeals. *See Desnick v. American Broadcasting Companies*, 44 F.3d 1345 (7th Cir. 1995). In both *Desnick* and this case, the defendants acquired the communications in question based on their role as intended recipients of the communications. *Id*. at 1347-48; (Dkt. No. 126 ¶ 143.) Additionally, the plaintiffs in both *Desnick* and this case argued that the *disclosure following the alleged interception* was wrongful. *Desnick*, 44 F.3d at 1353 (alleging news broadcast was defamatory); (Opp. at 13 (arguing UCMC violated HIPAA by disclosing communications to Meta).) In *Desnick*, the Seventh Circuit rejected the plaintiff's argument and held that the purpose of the *interception* was



https://bakerlaw-my.sharepoint.com/personal/rhedges_bakerlaw_com/Documents/UCMC/Hartley/MTD and MSJ/Reply Brief in Support of Motion to Dismiss TAC(72367578.7) TO FILE.docx

not criminal or tortious, *even if the resulting disclosure was*; thus, the plaintiff had no Wiretap Act claim. *Desnick*, 44 F.3d at 1353. The same result is warranted here.

*Third*, Plaintiff's argument that "UCMC installed the Meta Collection Tools for the purpose of intercepting and disclosing its patients' IIHI to Meta for financial gain in direct violation of HIPAA" (Opp. at 13) has been rejected by numerous courts. Analyzing similar allegations regarding the alleged interception and disclosure of IIHI to third-parties, the court in *Goulart v. Cape Cod Healthcare, Inc.*, rejected Plaintiff's argument and held that it was "unconvinced that the Complaint sufficiently alleges an independent crime or tort beyond the alleged interception itself." 2025 WL 1745732, at *4 n.3 (D. Mass. June 24, 2025). As the *Goulart* court explained, an alleged violation of HIPAA which is based entirely on the purported interception and disclosure of information "does not constitute an act 'secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits.'" *Id*. (citing *Caro v. Weintraub*, 618 F.3d 94, 98 (2d Cir. 20210)); *see also Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) (dismissing ECPA claim because plaintiff alleged the trackers were used by defendant to benefit its marketing and advertising purposes, not for the purpose of knowingly committing a violation of HIPAA); *Okash v. Essentia Health*, 2025 WL 642913, at *3 (D. Minn. Feb. 27, 2025) (granting motion to dismiss ECPA claim with prejudice and finding where, as here, allegations of a HIPAA violation comprised of "the initial interception itself" is not sufficient and does not allege "that the data is independently used in a crime or tort.")

*Finally*, Plaintiff has not sufficiently alleged a criminal violation of HIPAA. Plaintiff argues that UCMC violated HIPAA by disclosing her protected health information to Meta. (Opp. at 13.) However, a criminal HIPAA violation requires the defendant to "knowingly" disclose individually identifiable health information ("IIHI"). *See United States v. Huping Zhou*, 678 F.3d

1110, 1115 (9th Cir. 2012) (under the "knowingly" requirement the defendant must "know that he obtained [IIHI] related to an individual."). Plaintiff fails to allege that UCMC "knowingly" disclosed IIHI with the requisite who, what, where, and when. Instead, Plaintiff asserts only the bare legal conclusion that UCMC's purpose in disclosing the communications was criminal or tortious. (Dkt. No. 126 ¶ 179.) That is not sufficient. *Minard v. Wal-Mart Stores, Inc.*, 2016 WL 9211678, at *2 (N.D. Ill. Apr. 12, 2016) ("conclusory legal statements . . . do not help a complaint survive a Rule 12(b)(6) motion."); *Goulart*, 2025 WL 1745732, at *3 n.2 (alleged interception and disclosure "for the purpose of committing [. . .] crimes and torts" [i.e. criminal violation of HIPAA] is "prototypical example of the type of conclusory pleading the *Twombly-Iqbal* standard rejects.").

### C. <u>The Law of the Case Doctrine Does Not Apply</u>

Plaintiff's argument that the law of the case doctrine precludes this Court from addressing UCMC's arguments (Opp. at 7-8, 14) is flawed in at least *two* respects. *First*, the law of the case doctrine "does not apply at all where the precise issue presented differs from the one decided earlier." *Flynn*, 39 F.4th at 954 (citing *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010)). Here, contrary to Plaintiff's unsupported assertions, the precise issue differs significantly. In previous iterations of her complaint, Plaintiff alleged that the Meta Collection Tools were installed and operating on *both* the Public Website and the UCMC MyChart patient portal. Plaintiff has now conceded that those allegations are false. (Dkt. No. 120 at 1.) Plaintiff's current version of events is limited to the Public Website and the much more narrow and generic range of information communicated therein. The Court has never analyzed the sufficiency of those allegations, and Plaintiff's pejorative recharacterization of UCMC's motion as a "motion to reconsider" falls flat. (Opp. at 5.)



https://bakerlaw-my.sharepoint.com/personal/rhedges_bakerlaw_com/Documents/UCMC/Hartley/MTD and MSJ/Reply Brief in Support of Motion to Dismiss TAC(72367578.7) TO FILE.docx

*Second*, the law of the case doctrine "is a discretionary doctrine, not a rigid bar." *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022) (citing *Pepper v. United States*, 562 U.S. 476, 506 (2011)). A court may apply the law of the case doctrine when "there are no significant differences in the legal landscape since the prior ruling." *Flynn*, 39 F.4th at 953. However, that is not the case here. Since the Court's last ruling on April 30, 2024, numerous decisions regarding similar allegations have been issued. *See Okash*, 2025 WL 642913, at *4 (noting that this area of the law includes "rapidly developing caselaw"). As a result, it is reasonable for this Court not to apply the law of the case doctrine given this evolving area of the law.

## III. CONCLUSION

For all of the foregoing reasons, Defendant University of Chicago Medical Center respectfully submits that this Court should grant its Motion, and dismiss Plaintiff's third amended class action complaint, with prejudice.

Respectfully submitted,

UNIVERSITY OF CHICAGO MEDICAL CENTER

By: */s/ Ryan S. Hedges*
One of Its Attorneys

Ryan S. Hedges
BAKER & HOSTETLER LLP
One North Wacker, Suite 3700
Chicago, IL 60606

Zachary J. Watters
Jason B. Sobelman
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

Dated: July 25, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ryan F. Stephan
James B. Zouras
Mohammed A. Rathur
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
Phone: (312) 233-1550
Fax: (312) 233-1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
mrathur@stephanzouras.com

Lauren R. Goldman
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Phone: (212) 351-4000
lgoldman@gibsondunn.com

Matthew L. Kutcher
Cooley LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
Phone: (312) 881-6500
Fax: (312) 881-6598
mkutcher@cooley.com

on July 25, 2025.

*/s/ Ryan S. Hedges*
Ryan S. Hedges



https://bakerlaw-my.sharepoint.com/personal/rhedges_bakerlaw_com/Documents/UCMC/Hartley/MTD and MSJ/Reply Brief in Support of Motion to Dismiss TAC(72367578.7) TO FILE.docx